# EXHIBIT A

Case 1:26-cv-00166-JLR    Document 1-1    Filed 01/08/26    Page 2 of 31

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF  New York

-----------------------------------------

ANNA SURMAN, by and through the Administrators of her Estate, GREGORY SURMAN and KAREN CONNOLLY; and KAREN CONNOLLY, in her individual capacity,

Plaintiff(s),

-against-

MongoDB, Inc.

Defendant(s).

-----------------------------------------

Index No.

**Summons**

Date Index No. Purchased:

To the above named Defendant(s)

MongoDB, Inc.
C/O Corporation Service Company
80 State Street
Albany, NY 12207

You are hereby summoned to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's attorney within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

The basis of venue is  New York County

which is  where MongoDB, Inc. maintains its national headquarters and where Plaintiff Anna Surman lived at all times relevant to this Complaint.

Dated:  December 18, 2025

Sanford Heisler Sharp McKnight, LLP

by _Kate MacMullin_

Kate MacMullin

Attorneys for Plaintiff

Anna Surman, Gregory Surman, and Karen Connolly

Sanford Heisler Sharp McKnight, LLP
17 State Street, 37th Floor
New York, NY 10004
(646) 768-7054

**SUPREME COURT OF THE STATE OF NEW YORK**
**NEW YORK COUNTY**

| | |
|---|---|
| ANNA SURMAN, by and through the Administrators of her Estate, GREGORY SURMAN and KAREN CONNOLLY; and KAREN CONNOLLY, in her individual capacity, | ) ) ) ) ) ) |
| *Plaintiffs,* | ) ) **COMPLAINT** |
| v. | ) ) **JURY TRIAL DEMANDED** |
| MONGODB, INC. | ) **Index No.** |
| *Defendant.* | ) ) ) |

Plaintiffs Gregory Surman and Karen Connolly, by and through their undersigned counsel, hereby bring suit against Defendant MongoDB, Inc. ("MongoDB" or the "Company"), in their individual capacities and on behalf of their late daughter, Anna R. Surman ("Annie"), in their capacities as administrators of Annie's estate, and in support thereof, state as follows:

## INTRODUCTION

1. Annie Surman was a magnetic and engaging young woman, someone who built a community of friends during every stage of her short life. At a celebration of Annie's life, one friend publicly described Annie as "*incandescent . . . she was the spotlight, and she saw it as anathema to her entire being, to the point of life, not to let that light shine on you. How easy it was to feel like the best version of yourself when you were with Annie.*"

2. Tragically, Annie's light was forever extinguished on September 13, 2024, when she took her own life, at the age of 28, after MongoDB callously and unlawfully fired her, despite knowing the dire consequences that would result from their actions.

1

3. Annie began working as a Technical Program Manager at MongoDB in August 2021.

4. In April 2024, after years of high-stress work and service to the Company, Annie took medical leave due to mental health challenges related to work stress, including severe anxiety and depression.

5. As of mid-July 2024, Annie reasonably understood that MongoDB would allow her to extend her medical leave through September 2024, so that she could complete potentially lifesaving treatment. But then, on July 31, 2024, despite clear notice of the severity of Annie's disability, MongoDB abruptly demanded that Annie return to work by August 8, 2024, or face termination. Further, without telling Annie, MongoDB cancelled her health insurance more than a week before terminating her employment.

6. MongoDB terminated Annie because of her disability on August 8, 2024, despite pleas from her parents and her providers to allow them more time to stabilize Annie's condition and save her life. Annie attempted suicide that very night. Annie was hospitalized the next day and ultimately took her own life on September 13, 2024.

7. MongoDB's decision to terminate Annie on August 8, 2024, came at a critical inflection point in Annie's care. Annie's mother made it clear to MongoDB that Annie's situation was dire; in a vain effort to avoid tragedy, she pleaded with MongoDB to extend Annie's medical leave. She made it as easy as possible for MongoDB to agree to an extension by communicating that it would be on an unpaid basis and without any expectation that Annie could return to her job. But MongoDB refused to do so, even though it would have cost them nothing. MongoDB failed Annie and has continued to harm her parents, Gregory Surman and Karen Connolly, through

callous misleading statements and deliberate inaction, causing further emotional distress as they mourn the tragic loss of their daughter.

8. Gregory Surman and Karen Connolly bring this lawsuit to seek recovery for the immense harm that MongoDB caused them and Annie. They hope that holding MongoDB accountable will prevent this powerful corporation from causing this level of devastation to other families.

9. For the harm that MongoDB caused, Gregory Surman and Karen Connolly, as administrators of Annie's estate, and Karen Connolly, in her individual capacity, seek all remedies available to them under law.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this case pursuant to N.Y. EXEC. LAW § 297(9) (McKinney 2024); N.Y.C. ADMIN. CODE § 8-109(f)(i); 42 U.S.C. §§ 2000e-5(f)(1), 12117; N.Y. EST. POWERS & TRUSTS LAW § 11-3.1 (McKinney 1966); N.Y. EST. POWERS & TRUSTS LAW § 5-4.1 (McKinney 2003); and N.Y. JUD. LAW § 140-b (McKinney 1963).

11. The amount of damages sought exceeds the jurisdictional limits of all lower courts that would otherwise have jurisdiction.

12. Plaintiffs timely filed a Charge with the United States Equal Employment Opportunity Commission on May 27, 2025, and requested their right-to-sue letter on November 25, 2025, with respect to claims under the Americans with Disabilities Act ("ADA") belonging to Annie's estate. There is no requirement of administrative exhaustion under the New York State Human Rights Law or the New York City Human Rights Law.

3

Case 1:26-cv-00166-JLR    Document 1-1    Filed 01/08/26    Page 6 of 31

13. This Court has personal jurisdiction over Defendant MongoDB as a domiciliary of the State of New York. MongoDB maintains its national headquarters at 1633 Broadway, 38th Floor, New York, NY 10019.

14. Venue is proper in New York County. MongoDB maintains its national headquarters in New York County. Defendant hired Annie to work in its offices located in New York County. Annie also lived in New York County at the time of her death.

## PARTIES

15. Annie Surman was a citizen and resident of the state of New York at all times relevant to this Complaint.

16. Gregory Surman and Karen Connolly are citizens and residents of the state of California. Mr. Surman and Ms. Connolly were appointed administrators of Annie Surman's estate on October 4, 2024, by the Surrogate's Court of the State of New York, New York County.

17. MongoDB is a publicly traded database software company incorporated in Delaware and based in New York. MongoDB employs over 5,000 employees as of July 2025. For the fiscal year ending on September 30, 2025, MongoDB reported over $2 billion in total revenue.

## FACTUAL ALLEGATIONS

### I. Annie's Professional Background

18. In pursuit of her passion for science and technology, Annie attended Columbia University where she was named a Science Research Fellow, a prestigious designation given to the university's most promising science students. As a Science Research Fellow, Columbia provided Annie with mentoring from its scientists along with a stipend to conduct her own original research.

4

19.    In addition, over three summers, Annie worked in planetary science and astrophysics at NASA's Jet Propulsion Lab, working on Mars Rover missions and helping to project manage the recently launched SPHEREx mission.

20.    After graduating from Columbia in 2018, Annie gained project management experience at multiple companies before being hired by MongoDB in July 2021. Annie was proud to join MongoDB and excited to contribute to its mission.

21.    Annie worked for the Company from August 2021 until August 8, 2024, when MongoDB unlawfully terminated her.

## II.    Annie Was Disabled

22.    In April 2024, after years of dedicating her time and energy to the Company, Annie took disability leave to cope with mental health struggles, including anxiety and depression resulting from extreme work stress.

23.    While she was on leave, Annie's disability was debilitating and substantially limited multiple major life activities. Annie frequently sent messages to her parents about her inability to leave her bed for days and her desire to die.

24.    Because of her deteriorated mental state, she was often unable to complete basic daily functions like getting out of bed and brushing her teeth or attending social gatherings.

25.    Despite these significant challenges, Annie sought out and tried different treatment plans and lifestyle changes that would allow her to ultimately recover and return to work.

## III.    MongoDB Had Notice of Annie's Disability

26.    Annie was involved in numerous exchanges with MongoDB and its representatives while she was on leave where she communicated her need to remain on leave due to her debilitating mental health struggles.

5

27.     In an email on May 22, 2024, Annie told Christian Leocata, Leave of Absence Coordinator at MongoDB, that she would need to extend her leave to at least July 8, 2024, as she continued working on a treatment plan with her medical team.

28.     On June 20, 2024, Annie confirmed with Mr. Leocata that she would need to remain on leave past July 8, 2024. Mr. Leocata offered to assist her with transitioning to long-term disability coverage through Prudential Financial ("Prudential").

29.     When Annie told Mr. Leocata in July 2024 that her provider advised her to remain on leave until September 2024, Mr. Leocata voiced no opposition to Annie extending her medically necessary leave. Instead, he responded by saying "I hope that August will be a much better month!"

30.     In that same email of July 24, 2024, Mr. Leocata also advised Annie to update her out-of-office message to "make the message more generic without giving a date to make things even easier" and again offered to assist with her transition to long-term disability leave.

31.     Accordingly, as Annie conveyed to her parents, she reasonably believed that the Company had approved her leave extension to September. That evening, Annie texted Mr. Surman that MongoDB "approved my leave through september 29 [sic]."

32.     Though she was still struggling, Annie felt secure enough after receiving this assurance from Mr. Leocata that she discussed plans for the future with her parents, including leasing a horse and fostering a cat. As an animal-lover, Annie believed these activities would offer emotional support and help with her healing.

33.     Annie also decided to begin ketamine treatment, which was known to be very effective for persistent depression like Annie's.

6

34.    Annie had previously been resistant to trying ketamine treatment, so her parents capitalized on this momentum to get her scheduled to begin infusions as soon as possible.

35.    Annie's doctor at the ketamine clinic prescribed a foundational course of four ketamine infusions to be administered at specific intervals between August 6 and August 14.

36.    As the doctor explained to Ms. Connolly, completing the foundational (a/k/a induction) course on a timely basis is important for patients like Annie with severe treatment-resistant depression to receive a cumulative therapeutic effect from the concentrated series of infusions. The doctor also explained that Annie likely would not start to see benefits until she completed the foundational course. The ketamine treatments offered a promising path forward through Annie's mental health struggles—a powerful reset that would have interrupted her suicidal ideations—but she needed a little more time to complete this critical foundational course on a timely basis.

37.    The prospect of such a powerful course of treatment at this critical juncture brought Annie and her parents considerable hope for her future recovery.

## IV.    MongoDB Denied Annie Reasonable Accommodation and Unlawfully Terminated Her Because of Her Disability

38.    On July 29, 2024, Dr. Ronald Koshes, a medical consultant engaged by Prudential who had never met, let alone treated, Annie, sent a letter to Annie's mental health provider, Christina Ercole.

39.    Koshes' letter cherry-picked out-of-context information from Annie's medical records to falsely conclude that she was able to return to work—a baseless conclusion that was fiercely opposed by Annie's medical team. The letter requested a response in ten business days, though Ms. Ercole responded to request additional time to respond fully.

40.    On July 31, 2024, in a severe and sudden departure from the tone of Mr. Leocata's

7

last email on July 24, 2024, and from Mongo's previous willingness to extend Annie's leave, Meghan Wall, an Employee Experience Senior Manager at MongoDB, emailed Annie to demand that she return to work by August 8, 2024, or face termination of employment.

41. This abrupt about-face, and the unreasonably and artificially truncated timeline imposed on Annie in her fragile mental state, caused Annie extreme distress and feelings of paralysis and helplessness.

42. The timing of the Company's discriminatory actions was especially cruel, as Annie was embarking on a new course of treatment and beginning to believe that there was hope for her recovery.

43. Mr. Surman and Ms. Connolly would later learn that Annie purchased a drug she would ultimately use to end her life on July 31, 2024, the very evening that MongoDB first threatened to fire her.

44. On July 31, 2024, more than a week *before* terminating Annie, MongoDB canceled Annie's health benefits without providing notice to Annie.[1]

45. Annie only learned of the termination of her health benefits when Mr. Surman logged into Annie's Cigna account to get a copy of her health insurance card to help Annie pursue additional treatment.

46. Annie and her parents were shocked and distressed when they learned—by happenstance—that Annie's health insurance had been cancelled, as she continued to be in dire need of medical care.

---

[1] The Affordable Care Act prohibits group health plans from retroactively rescinding health coverage of a covered individual except in very limited circumstances and with at least 30 days' notice. *See* 29 CFR § 2590.715-2712(a)(1). Protections against rescission of health coverage without adequate notice are similarly memorialized in New York state law. *See* N.Y. LABOR LAW § 217 (McKinney 2002).

8

47. MongoDB's premature cancellation of Annie's health benefits is further evidence that the Company did not intend to engage in the dialogue about reasonable accommodations required by law.

48. On August 6, 2024, via email, Annie requested reasonable accommodation for her disability. Specifically, she requested delay of her termination and extension of her accommodation of unpaid leave to allow her to continue ketamine treatments and meet with her medical team on August 19, 2024. She did not request any sort of promise that her job would be waiting for her.

49. In her email on August 6, Annie made clear that her mental health state made it difficult for her to respond quickly to MongoDB. Annie noted, "My condition has made it difficult for me to function lately, so please forgive me for not responding sooner." Because Annie's mental condition rapidly deteriorated after MongoDB threatened to fire her on July 31, Annie needed the assistance of her parents to draft this email.

50. In response to MongoDB's abrupt about-face in demanding that Annie return to work by August 8, Ms. Connolly sprinted through New York City in the August heat to gather requested documentation of Annie's condition to support her request for a reasonable accommodation to allow her additional time to receive the ketamine treatment.

51. Additionally, in her August 6 email, Annie reiterated to MongoDB that she could not get in to see her provider until the week of August 19 and asked that the Company engage in discussions with her about alternative reasonable accommodations after she consulted with her doctor. Annie and her parents asked for only a minimal extension of her leave in order to discuss with Annie's doctor how and when she could return to work without destabilizing her mental condition and endangering her life.

9

52.     By that time, Annie had received her first ketamine infusion. As described in paragraphs 35–36 above, the initial foundational course consisted of four infusions to be administered at prescribed intervals between August 6 and August 14.

53.     Disregarding Annie's request, at 8:48 a.m. ET on August 7, 2024, MongoDB told Annie that she would be terminated if she did not return to work the following day, and that any discussion about reasonable accommodation would need to occur by 5 p.m. ET.

54.     MongoDB made this demand knowing that Annie would not yet have had an opportunity to consult with her medical team about potential alternative accommodations.

55.     MongoDB thus explicitly refused to engage in the legally required dialogue about possible reasonable accommodation.

56.     That same day, August 7, 2024, at 2:04 p.m. ET, after an urgent request from Mr. Surman, Ms. Ercole sent documentation to MongoDB outlining the impossibility of Annie returning to work that soon and explaining Annie's planned course of treatment over the next several weeks. MongoDB was aware that Ms. Ercole would be sending documentation but, upon information and belief, MongoDB completely disregarded Ms. Ercole's information.

57.     Ms. Ercole's letter noted that Annie was "still very symptomatic and her functioning is still significantly impaired," and that Annie had just started her foundational course of ketamine treatments, which would require a strict schedule and an additional four- to six-week adjustment period. Ms. Ercole concluded the letter by stating: "a return to work is not a reasonable request at this time and a two month extension of her LOA is being requested in order to give her time to respond to treatment."

58.     Annie's mental state continued to decline as her fear of losing her job before she could complete treatment grew. In a text message to her mother sent the evening of August 7, 2024

10

(the day before the expiration of MongoDB's unreasonably short ultimatum), Annie said "I can't go through tomorrow i can't i can't [sic]."

59. After frantically gathering evidence of Annie's condition for MongoDB, Ms. Connolly believed she had done what she needed to do to meet the Company's demands and protect her daughter.

60. Despite being aware of Annie's fragile mental state, MongoDB terminated Annie on August 8, 2024.

61. The same day that she was notified of her termination, Annie was receiving her second ketamine infusion and embarking on a course of treatment that her psychiatric provider believed would allow her to return to work in four to six weeks—a conclusion that her provider had already shared with MongoDB.

62. On August 8, Ms. Connolly spoke with Ms. Wall via phone and sent multiple emails to Company representatives. In a phone call, Ms. Connolly explicitly told Ms. Wall that terminating Annie at that moment would have catastrophic consequences for Annie's well-being. Ms. Wall said that she would speak to MongoDB's Legal Department, and someone would get back to Ms. Connolly, but neither Ms. Wall nor anyone else from the Company ever responded.

63. Ms. Connolly subsequently stated the following in an email sent to Ms. Wall at 4:12 p.m. ET on August 8:

> I have not received a response from you, but Annie has received a departure email from the company. I want to make it abundantly clear that your company has been advised that this is the direst of circumstances. We have a small window (hours) to avoid possible tragedy and for your company to avoid litigation. We believe this is easily resolvable by extending Annie's leave on an unpaid basis without obligation to restore her to a position.

64. MongoDB refused to reasonably accommodate Annie by delaying her termination and extending her unpaid leave by even as little as a few days, with no promise that her job would

11

be waiting for her—an accommodation that would have cost the Company nothing.

65. This was a critical inflection point in Annie's care, and the Company was fully aware that Annie and her parents wanted only the extremely reasonable accommodation of a short period of time to advance further in this crucial course of treatment. Instead, the Company knowingly disrupted Annie's ability to access lifesaving healthcare and threw her into a foreseeable psychological tailspin.

**V.      Ms. Connolly Witnessed Annie Attempt Suicide the Same Evening that MongoDB Terminated Her**

66. On August 8, 2024, the same evening MongoDB terminated her, Annie attempted suicide, explicitly and repeatedly citing the shame she felt at being fired by MongoDB. Being fired at this critical juncture in her treatment shattered her hope for the future.

67. Annie texted Ms. Connolly about her termination and her imminent plans to end her life shortly after her termination, stating "they fired me" and "they sent me an email with all the departure info and i feel very sick." Annie then said that she would begin taking medications that would allow her to take her own life that day. She then texted: "I'm scared to die i just don't know what else to do."

68. Ms. Connolly went to Annie's apartment and directly witnessed Annie laying out the medications (including the lethal one she ordered shortly after Meghan Wall's email of July 31) that she planned to use to die by suicide as Annie stated that she could not live with the humiliation of being fired.

69. Ms. Connolly had to intervene to stop Annie from taking her own life without escalating the situation further.

70. Ms. Connolly was acutely aware that if she could not dissuade Annie from attempting to ingest the poison, she would need to physically fight Annie to keep her from

12

ingesting it, risking Ms. Connolly experiencing physical injury and exposure to the same deadly substances.

71. The next day, Ms. Connolly demanded that Annie seek inpatient treatment, causing further emotional distress to Annie and harming their relationship. In the car ride to the hospital, Annie told her parents that she would carry out her plan to take her own life after she was released from the hospital. She also called her friends and accused them of conspiring with her mother to betray her, further harming her supportive relationships and herself.

72. When they arrived at the hospital, Annie told her mother that she would never see her again.

73. To add insult to injury, because MongoDB wrongfully cancelled Annie's health benefits before she was even terminated, Ms. Connolly and Mr. Surman had to battle to get medical care for Annie in the wake of her suicide attempt.

74. In the termination email that MongoDB sent to Annie on August 8, 2024, they indicated that her health benefits would continue until August 31, 2024. However, this statement was false because MongoDB had already canceled her insurance as of July 31, 2024.

75. Ms. Wall then told Mr. Surman and Ms. Connolly that Annie would suddenly need to elect and pay for COBRA coverage by August 19.

76. Desperate to secure emergency inpatient psychiatric care for Annie, Ms. Connolly and Mr. Surman had to spend their own money for Annie's COBRA coverage for August 2024—even though MongoDB should have covered her benefits until the end of that month per their own conflicting communications.

**VI.     Annie Died by Suicide on September 13, 2024**

77. Annie's writings from her hospitalization are replete with distressing statements

13

about her desire to die and explicitly address her distress over her termination. In one entry, Annie identifies "signing up for COBRA" as a trigger for her suicidal ideations.

78.    Shortly after being released from inpatient care, Annie learned that MongoDB had laid off a large number of employees. Annie told her parents that she believed MongoDB rushed to fire her before the planned layoffs to avoid paying her any severance, further adding to her emotional distress over her unlawful termination.

79.    After being released from the hospital, Annie increasingly isolated herself, refusing to see her family and most of her friends. As a result of MongoDB's unlawful actions, Annie no longer trusted her support network and believed that nothing could help her ameliorate her downward spiral.

80.    Just five weeks after the Company terminated her, Annie died by suicide.

81.    At 9:36 p.m. ET on September 13, 2024, Annie called 9-1-1 to report her own impending death after taking lethal drugs in a suicide attempt.

82.    Annie's desperate call to 9-1-1 indicates that Annie was experiencing pain, fear, panic, and regret as the lethal drugs took effect. When Ms. Connolly called Annie's phone after receiving an emergency alert that Annie had called 9-1-1, she learned from a first responder that her daughter had been taken to the hospital by paramedics.

83.    Ms. Connolly and her brother rushed to drive from New Jersey to the hospital. While trapped in traffic, Ms. Connolly did not know whether her daughter was alive or dead.

84.    Meanwhile, Mr. Surman was frantically making arrangements to travel from California to New York.

85.    Tragically, though she was still breathing when paramedics broke through the door of her apartment, Annie went into cardiac arrest in transit to the hospital.

14

86. While medical staff informed her family that Annie was briefly resuscitated, she was pronounced dead at 10:48 p.m. ET.

87. When she arrived at the hospital and learned that Annie had died, Ms. Connolly collapsed and screamed non-stop for hours. Hospital staff placed Ms. Connolly in a separate room for observation, and the doctor who declared Annie dead had to speak to other family members about what had occurred because Ms. Connolly could not bear to speak to him or to see Annie's body.

88. Mr. Surman was alone in the back of a taxi to the airport when he received the call that Annie had died. He could hear his wife's screams in the background while he was helpless to comfort her. He sobbed through his redeye flight to join Ms. Connolly.

89. The handwritten suicide note Annie left for her family on her bedside was visibly streaked and smudged with tears. The note included contact information for friends and family, as well as instructions to contact her medical team if she was found alive and where to find a bag of her belongings to bring with her if she survived to be admitted to the hospital. She ended the note by saying: "For those who need to know: I love you. I love you. I'm sorry. I love you."

90. Annie also scheduled an email to be sent to her parents on September 14, the day after she died, with instructions for how to get into her apartment and what to do if she had survived the attempt, but with an assumption that she might not. The subject line of the email was "Goodbye." It appears that Annie began drafting this suicide note email shortly after the abrupt about-face by MongoDB on July 31, when Ms. Wall first informed Annie that she faced termination if she did not return to work by August 8.

91. Upon information and belief, but for the Company's wrongful termination of Annie during this critical point in her treatment, Annie's death would not have occurred.

15

**VII.    MongoDB Continued its Callous Treatment of Mr. Surman and Ms. Connolly After Annie's Death**

92.    Even after Annie's death, MongoDB continued its callous and outrageous behavior toward her family.

93.    After her death, Annie's family received flowers from another company where Annie had previously worked. From MongoDB, they received deafening silence.

94.    For two days, Ms. Wall ignored the initial email from Mr. Surman notifying the Company of Annie's death by suicide, forcing Mr. Surman to reach out a second time.

95.    When she finally responded, Ms. Wall indicated that the Company would assist Ms. Connolly and Mr. Surman in recovering Annie's life insurance policy. Prudential had informed Mr. Surman that MongoDB had the ability to request that Prudential recover Annie's life insurance policy by treating it as if she had converted it to an individual policy after her termination and prior to her death.

96.    However, the Company soon backtracked from this offer, and Prudential denied Mr. Surman and Ms. Connolly's claim on the grounds that Annie did not elect to transition her coverage to an individual plan following her termination—while she was in the midst of an acute mental health crisis. Upon information and belief, MongoDB could have easily requested that Prudential treat the policy as though Annie had converted it.

97.    Once again, the Company made misleading statements, leading Annie's grieving family to reasonably rely on its representations that it would assist the family in recovering the benefits owed to them, before intentionally rescinding this offered support.

98.    Gregory Surman and Karen Connolly have experienced, and are continuing to experience, significant emotional and physical distress due to MongoDB's actions and the loss of their daughter.

16

99.     As a result of the emotional distress, Karen Connolly suffers from significant physical and emotional symptoms that make it challenging for her to earn a living and have caused direct financial harm to her and her family.

**COUNT I**

**Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112: Failure to Accommodate**

Survivorship Action by Karen Connolly and Gregory Surman, as Administrators of the Estate of Anna R. Surman, N.Y. EST. POWERS & TRUSTS LAW § 11-3.2(b) (McKinney 1982)

100.    Plaintiffs reallege and incorporate by reference the foregoing paragraphs of this Complaint as though fully set forth herein.

101.    Annie Surman was an individual with a disability within the meaning of the ADA because she had severe anxiety, Major Depressive Disorder, and other mental health struggles that substantially limited one or more major life activities. *See* 42 U.S.C. § 12102.

102.    MongoDB is an employer and a covered entity under the ADA. *See* 42 U.S.C. § 12111(5).

103.    The ADA provides that a covered entity engages in unlawful discrimination by "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112.

104.    On August 6, 2024, Annie requested the reasonable accommodation, buttressed by a request from her therapist, that her leave be extended until the week of August 19, 2024, to allow her to meet with her medical providers to develop a plan to return to work safely.

105.    On August 8, 2024, Karen Connolly requested an extension of Annie's leave by even a few days to avoid tragic consequences.

17

106. Annie was qualified for her job and could have ultimately returned to work and performed the essential functions of her job with appropriate reasonable accommodation and medical treatment.

107. MongoDB had notice of Annie's disability and requests for reasonable accommodation.

108. MongoDB refused to provide Annie with appropriate reasonable accommodation.

109. Annie was not requesting that she be paid during the additional leave, nor that her job be held open for her. She simply requested that MongoDB hold off on terminating her for a short period of time.

110. The requested accommodation would not have caused any undue hardship to MongoDB.

111. Annie experienced significant emotional distress and financial harm as a direct result of MongoDB's intentional unlawful actions.

## COUNT II
### New York State Human Rights Law ("NYSHRL"), N.Y. EXEC. LAW § 296 (McKinney 2024): Failure to Accommodate

Survivorship Action by Karen Connolly and Gregory Surman, as Administrators of the Estate of Anna R. Surman, N.Y. EST. POWERS & TRUSTS LAW § 11-3.2(b) (McKinney 1982)

112. Plaintiffs reallege and incorporate by reference the foregoing paragraphs of this Complaint as though fully set forth herein.

113. Annie Surman was an individual with a disability within the meaning of the NYSHRL because her severe anxiety, Major Depressive Disorder, and other mental health struggles constituted "a physical, mental or medical impairment resulting from anatomical, physiological, genetic or neurological conditions which . . . [was] demonstrable by medically

18

accepted clinical or laboratory diagnostic techniques." N.Y. Exec. Law § 292(21) (McKinney 2024).

114.    MongoDB is an employer in the State of New York. *See* N.Y. Exec. Law § 292(5) (McKinney 2024).

115.    The NYSHRL provides that "[i]t shall be an unlawful discriminatory practice for an employer. . . to refuse to provide reasonable accommodations to the known disabilities . . . of an employee, prospective employee or member in connection with a job or occupation sought or held[.]" N.Y. Exec. Law § 296(3)(a) (McKinney 2024).

116.    On August 6, 2024, Annie requested reasonable accommodation, buttressed by a request from her therapist, in the form of an extension of leave until the week of August 19, 2024, to allow her to continue ketamine treatments and meet with her medical providers.

117.    On August 8, 2024, Karen Connolly requested an extension of Annie's leave by even a few days to avoid tragic consequences.

118.    Annie was qualified for her job and could have ultimately returned to work and performed the essential functions of her job with appropriate reasonable accommodation and medical treatment.

119.    MongoDB had notice of Annie's disability and requests for reasonable accommodation.

120.    MongoDB refused to provide Annie with appropriate reasonable accommodation.

121.    Annie was not requesting that she be paid during the additional leave, nor that her job be held open for her. She simply requested that MongoDB hold off on terminating her for a short period of time.

19

122. The requested accommodation would not have caused any undue hardship to MongoDB.

123. Annie experienced significant emotional distress and financial harm as a direct result of MongoDB's intentional unlawful actions.

**COUNT III**
**New York City Human Rights Law ("NYCHRL"), N.Y.C. ADMIN. CODE §§ 8-107(15); 8-107(28): Failure to Accommodate**

Survivorship Action by Karen Connolly and Gregory Surman, as Administrators of the Estate of Anna R. Surman, N.Y. EST. POWERS & TRUSTS LAW § 11-3.2(b) (McKinney 1982)

124. Plaintiffs reallege and incorporate by reference the foregoing paragraphs of this Complaint as though fully set forth herein.

125. Annie Surman was an individual with a disability within the meaning of the NYCHRL because her severe anxiety, Major Depressive Disorder, and other mental health struggles constituted a "mental or psychological impairment." N.Y.C. ADMIN CODE § 8-102.

126. MongoDB is an employer in the State of New York. *See id.*

127. The NYCHRL provides that "it is an unlawful discriminatory practice . . . not to provide a reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job or enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." N.Y.C. ADMIN. CODE § 8-107(15)(a).

128. The NYCHRL further provides that "[i]t shall be an unlawful discriminatory practice for an employer, labor organization or employment agency or an employee or agent thereof to refuse or otherwise fail to engage in a cooperative dialogue within a reasonable time with a person who has requested an accommodation or who the covered entity has notice may require such an accommodation . . . [r]elated to a disability as provided in subdivision 15 of this section[.]" N.Y.C. ADMIN. CODE § 8-107(28)(a).

20

129. On August 6, 2024, Annie requested reasonable accommodation, buttressed by a request from her therapist, in the form of an extension of leave until the week of August 19, 2024, to allow her to continue ketamine treatments and meet with her medical providers.

130. On August 8, 2024, Karen Connolly requested an extension of Annie's leave by even a few days to avoid tragic consequences.

131. Annie was qualified for her job and could have ultimately returned to work and performed the essential functions of her job with appropriate reasonable accommodation and medical treatment.

132. MongoDB had notice of Annie's disability and requests for reasonable accommodation.

133. MongoDB failed to engage in a cooperative dialogue within a reasonable time with Annie about her requested accommodation.

134. MongoDB refused to provide Annie with appropriate reasonable accommodation.

135. Annie was not requesting that she be paid during the additional leave, nor that her job be held open for her. She simply requested that MongoDB hold off on terminating her for a short period of time.

136. The requested accommodation would not have caused any undue hardship to MongoDB.

137. Annie experienced significant emotional distress and financial harm as a direct result of MongoDB's intentional unlawful actions.

21

## COUNT IV
### Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112: Disability Discrimination, Wrongful Termination

Survivorship Action by Karen Connolly and Gregory Surman, as Administrators of the Estate of Anna R. Surman, N.Y. EST. POWERS & TRUSTS LAW § 11-3.2(b) (McKinney 1982)

138. Plaintiffs reallege and incorporate by reference the foregoing paragraphs of this Complaint as though fully set forth herein.

139. Annie Surman was an individual with a disability within the meaning of the ADA because she had severe anxiety, Major Depressive Disorder, and other mental health struggles that constituted a disability that substantially limited one or more major life activities. *See* 42 U.S.C. § 12102.

140. MongoDB is an employer and a covered entity. *See* 42 U.S.C. § 12111(5).

141. Annie was qualified for her job and could have ultimately returned to work and performed the essential functions of her job with appropriate reasonable accommodation.

142. The ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to . . . discharge of employees[.]" 42 U.S.C. § 12112.

143. MongoDB terminated Annie because of her disability.

144. Annie experienced significant emotional distress and financial harm as a direct result of MongoDB's intentional unlawful actions.

145. MongoDB's discriminatory termination of Annie led to Annie's foreseeable psychological decline, hospitalization, damage to her personal relationships, and ultimately her death by suicide.

22

## COUNT V
### New York State Human Rights Law, N.Y. Exec. Law § 296 (McKinney 2024): Disability Discrimination, Wrongful Termination

Survivorship Action by Karen Connolly and Gregory Surman, as Administrators of the Estate of Anna R. Surman, N.Y. Est. Powers & Trusts Law § 11-3.2(b) (McKinney 1982)

146.    Plaintiffs reallege and incorporate by reference the foregoing paragraphs of this Complaint as though fully set forth herein.

147.    Annie Surman was an individual with a disability within the meaning of the NYSHRL because her severe anxiety, Major Depressive Disorder, and other mental health struggles constituted "a physical, mental or medical impairment resulting from anatomical, physiological, genetic or neurological conditions which . . . [was] demonstrable by medically accepted clinical or laboratory diagnostic techniques." N.Y. Exec. Law § 292(21) (McKinney 2024).

148.    MongoDB is an employer in the State of New York. *See* N.Y. Exec. Law § 292(5) (McKinney 2024).

149.    Annie was qualified for her job and could have ultimately returned to work and performed the essential functions of her job with appropriate reasonable accommodation.

150.    The NYSHRL provides that "[i]t shall be an unlawful discriminatory practice . . . [f]or an employer or licensing agency, because of an individual's . . . disability . . . to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment." N.Y. Exec. Law § 296 (McKinney 2024).

151.    MongoDB terminated Annie because of her disability.

152.    Annie experienced significant emotional distress and financial harm as a direct result of MongoDB's intentional unlawful actions.

23

153. MongoDB's discriminatory termination of Annie led to Annie's foreseeable psychological decline, hospitalization, damage to her personal relationships, and ultimately her death by suicide.

## COUNT VI
### New York City Human Rights Law, N.Y.C. ADMIN. CODE § 8-107(1): Disability Discrimination, Wrongful Termination

Survivorship Action by Karen Connolly and Gregory Surman, as Administrators of the Estate of Anna R. Surman, N.Y. EST. POWERS & TRUSTS LAW § 11-3.2(b) (McKinney 1982)

154. Plaintiffs reallege and incorporate by reference the foregoing paragraphs of this Complaint as though fully set forth herein.

155. Annie Surman was an individual with a disability within the meaning of the NYCHRL because she had severe anxiety, Major Depressive Disorder, and other mental health struggles that constituted a "mental or psychological impairment." SEE N.Y.C. ADMIN CODE § 8-102.

156. MongoDB is an employer in the State of New York. See id.

157. Annie was qualified for her job and could have ultimately returned to work and performed the essential functions of her job with appropriate reasonable accommodation.

158. The NYCHRL provides that "[i]t shall be an unlawful discriminatory practice . . . [f]or an employer or an employee or agent thereof, because of the actual or perceived . . . disability . . . of any person . . . to discharge from employment such person; or . . . [t]o discriminate against such person in compensation or in terms, conditions or privileges of employment." N.Y.C. ADMIN CODE § 8-107(1).

159. MongoDB treated Annie less well than non-disabled employees because of her disability.

160. MongoDB terminated Annie because of her disability.

24

Case 1:26-cv-00166-JLR    Document 1-1    Filed 01/08/26    Page 27 of 31

161.    Annie experienced significant emotional distress and financial harm as a direct result of MongoDB's intentional unlawful actions.

162.    MongoDB's discriminatory termination of Annie led to Annie's foreseeable psychological decline, hospitalization, damage to her personal relationships, and ultimately her death by suicide.

**COUNT VII**
**N.Y. EST. POWERS & TRUSTS LAW § 5-4.1 (McKinney 2003): Wrongful Death**
Brought by Karen Connolly and Gregory Surman, as Administrators of the Estate of Anna R. Surman

163.    Plaintiffs reallege and incorporate by reference the foregoing paragraphs of this Complaint as though fully set forth herein.

164.    Annie Surman died on September 13, 2024, at the age of twenty-eight (28).

165.    Annie's death was caused by the wrongful acts of MongoDB. Specifically, Annie's death was caused by MongoDB's intentional discrimination against her on the basis of disability at a critical inflection point in her care and recovery.

166.    MongoDB had notice of the severity of Annie's disability.

167.    Annie is survived by her parents, Gregory Surman and Karen Connolly.

168.    Gregory Surman and Karen Connolly were appointed as co-administrators of Annie's estate on October 4, 2024.

169.    Gregory Surman and Karen Connolly suffered, and will continue to suffer, pecuniary losses resulting from Annie's wrongful death.

25

Case 1:26-cv-00166-JLR Document 1-1 Filed 01/08/26 Page 28 of 31

## COUNT VIII
### N.Y. EST. POWERS & TRUSTS LAW § 11-3.2(b) (McKinney 1982): Conscious Pain and Suffering

Brought by Karen Connolly and Gregory Surman, as Administrators of the Estate of Anna R. Surman

170. Plaintiffs reallege and incorporate by reference the foregoing paragraphs of this Complaint as though fully set forth herein.

171. Annie Surman died on September 13, 2024, at the age of twenty-eight (28).

172. Annie's death was caused by the wrongful acts of MongoDB. Specifically, Annie's death was caused by MongoDB's intentional discrimination against her on the basis of disability.

173. MongoDB had notice of the severity of Annie's disability.

174. Annie is survived by her parents, Gregory Surman and Karen Connolly.

175. Gregory Surman and Karen Connolly were appointed as co-administrators of Annie's estate on October 4, 2024.

176. Annie was conscious after ingesting the drugs that killed her.

177. At 9:36 p.m. ET on September 13, 2024, Annie called 9-1-1 to report her own impending death.

178. Annie was still breathing when paramedics arrived and went into cardiac arrest in transit to the hospital.

179. Annie was pronounced dead at 10:48 p.m. ET, more than an hour after calling 9-1-1.

180. Medical staff informed her family that Annie was briefly resuscitated during this time.

181. Upon information and belief, Annie was experiencing conscious pain, fear, panic, regret, and apprehension of her impending death as the lethal drugs took effect.

26

Case 1:26-cv-00166-JLR    Document 1-1    Filed 01/08/26    Page 29 of 31

## COUNT IX
### Negligent Infliction of Emotional Distress
#### Brought by Karen Connolly

182. Plaintiffs reallege and incorporate by reference the foregoing paragraphs of this Complaint as though fully set forth herein.

183. Karen Connolly is the mother of Annie Surman.

184. Karen Connolly directly witnessed Annie experience severe emotional injury and attempt suicide on August 8, 2024, the night that MongoDB terminated Annie's employment.

185. Karen Connolly faced significant risk of physical injury and exposure to lethal substances while intervening to prevent Annie from dying by suicide on August 8, 2024.

186. Karen Connolly suffered and continues to suffer from severe emotional distress related to witnessing this harm to her daughter.

187. Karen Connolly provided direct notice to MongoDB that terminating Annie's employment on August 8, 2024, would have tragic consequences. MongoDB proceeded with terminating Annie despite this warning. Annie's attempted suicide was reasonably foreseeable to MongoDB.

188. Annie's suicide attempt on August 8, 2024, and the resulting risk of physical harm and severe emotional distress to Karen Connolly, were caused by the wrongful acts of MongoDB.

### PRAYER FOR RELIEF ON CLAIMS

WHEREFORE, Plaintiffs pray that this Court:

A. Award Plaintiffs all damages under the Americans with Disabilities Act, New York State Human Rights Law, New York City Human Rights Law, New York State Wrongful Death and Survivorship law, and common law;

B. Award Plaintiffs all punitive damages available under law;

27

Case 1:26-cv-00166-JLR   Document 1-1   Filed 01/08/26   Page 30 of 31

C.      Award Plaintiffs all attorneys' fees, costs, and expenses available under law;

D.      Award all pre-judgment interest and post-judgment interest available under law;

and

E.      Award Plaintiffs such additional and further relief as this Court may deem just and

proper.

## JURY TRIAL DEMAND

Plaintiffs request a jury trial on all issues so triable as a matter of right.

Dated: December 18, 2025          Respectfully submitted,

_Kate MacMullin_

Kate MacMullin (NY Bar No. 5693882)
**SANFORD HEISLER SHARP MCKNIGHT, LLP**
17 State Street, 37th Floor
New York, NY 10004
Phone: (646) 768-7054
kmacmullin@sanfordheisler.com

Christine Dunn*
Shannon Henris*
**SANFORD HEISLER SHARP MCKNIGHT, LLP**
700 Pennsylvania Ave. SE, Suite 300
Washington, DC 20003
Phone: (202) 499-5214
cdunn@sanfordheisler.com
shenris@sanfordheisler.com

*Attorneys for Plaintiffs*

**Pro hac vice* forthcoming

28

| State of: | New York |
|---|---|
| Court: | Supreme |
| County/District: | New York |
| Index No.: | 166276/2025 |
| Date Filed: | 12/19/2025 |

**Affirmation of Service**

**Plaintiff(s):**   ANNA SURMAN, ET AL

**Defendant(s):** MONGODB, INC

_____ **ROBERT GUYETTE** _____, the undersigned, affirm that I was at the time of service over the age of eighteen and not a party to this action. I reside in the State of _____ New York _____

On ____ **DECEMBER 19, 2025** ____ at ____ **2:10 PM** ____, I served the NOTICE OF ELECTRONIC FILING, SUMMONS, COMPLAINT JURY TRIAL DEMANDED

to **MONGODB, INC.**

at. _____ c/o **CSC 80 STATE STREET, ALBANY, NY 12207** _____

in the manner indicated below:

**CORPORATE SERVICE:** By delivering a true copy of said documents
to         **LEGAL REPRESENTATIVE OF CSC**         , an Authorized Agent. The undersigned asked the recipient if he/she is authorized to accept service on behalf of MONGODB, INC. and received an affirmative reply. An approximate description is as follows:

Gender __**MALE**__ Race __**WHITE**__ Hair __**RED**__ Approx.Age **36 - 50 YRS.** Approx.Height __**OVER 6'**__
Approx. weight __**OVER 200 LBS.**__ Other __BEARD_____

I affirm on _____ **DECEMBER 19, 2025** _____, under penalties of perjury under the laws of New York, which may include a fine or imprisonment, that the foregoing is true, and I understand that this document maybe filed in an action or proceeding in a court of law.

X_____
ROBERT GUYETTE

Attorney File #   **166276/2025**                              2550830