# EXHIBIT B

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA  ☒ EEOC | |

State or local Agency, if any

| Name (indicate Mr., Ms., Mrs.) Mr. Gregory Surman & Ms. Karen Connolly, as Administrators of the Estate of Anna Surman | Home Phone (Incl. Area Code) 626-372-1122 | Date of Birth 12/15/1995 |
|---|---|---|

| Street Address | City, State and ZIP Code |
|---|---|
| Mailing Address of Gregory Surman & Karen Connolly: 2725 Carlaris Road, San Marino, CA 91108  Address of Decedent-Claimant, Anna Surman: 130 Allen Street, Apt. 6, New York, NY 10002 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name MongoDB, Inc. | No. Employees, Members 5,000-5,500 | Phone No. (Include Area Code) 844-666-4632 |
|---|---|---|

| Street Address | City, State and ZIP Code |
|---|---|
| 1633 Broadway 38th floor, New York, NY 10019 | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☐ RETALIATION  ☐ AGE  ☒ DISABILITY  ☐ OTHER (Specify below.)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: July 31, 2024     Latest: August 8, 2024
☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

Please see the attached pages for the particulars of our Charge.

This claim is not to be cross-filed with the New York State Division of Human Rights, the New York City Commission on Human Rights, or any other state or local agency.

Please contact **Charging Party** through counsel: Christine Dunn, Esq., Sanford Heisler Sharp McKnight, LLP, 700 Pennsylvania Avenue SE, Suite 300, Washington, DC 20003, Phone: 202-499-5214, Email: cdunn@sanfordheisler.com

Counsel information for **Respondent** MongoDB, Inc.: Rebecca Goldstein, Esq., Littler Mendelson P.C., 900 Third Avenue, New York, NY 10022, Phone: 212-497-6854, Email: RGoldstein@littler.com

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| May 27, 2025 *Date*        *Karen Connolly* *Charging Party Signature* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

***Anna Surman v. MongoDB, Inc.***
**EEOC Charge of Discrimination**

## I.    Overview of Allegations

1. I, Karen Connolly, as administrator of the estate of Anna ("Annie") Surman, bring claims against MongoDB, Inc. ("MongoDB" or "the company") for discriminating against Anna Surman based on disability, in violation of federal, state, and local law, including the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 *et seq.* ("ADA").

2. My husband, Gregory Surman, is the co-administrator of Annie's estate.

3. Annie graduated from Columbia University in 2018 and gained additional project management experience before starting at MongoDB. MongoDB hired Annie in July 2021.

4. In April 2024, Annie took disability leave to cope with mental health struggles. MongoDB had notice of the severity of Annie's disability.

5. On July 31, 2024, MongoDB threatened to fire Annie if she did not return to work from disability leave against her doctor's recommendations and retroactively cancelled her health insurance. MongoDB refused to provide Annie with reasonable accommodation.

6. On August 8, 2024, MongoDB illegally terminated Annie due to her disability. Annie attempted suicide that same night.

7. On September 13, 2024, following a brief hospitalization, Annie died by suicide.

## II.    Statement of Facts

### A.    Annie was Disabled Under the ADA

8. Annie was hired by MongoDB in July 2021. Her most recent role at the company was Technical Program Manager. She was qualified for the position.

9. In April 2024, after years of dedicating her time and energy to the company, Annie took disability leave to cope with mental health struggles, including severe depression.

10. While she was on leave, Annie's depression was debilitating and substantially limited multiple major life activities, though she was working to find a treatment plan that would allow her to return to work.

11. Annie frequently sent messages to her family about her inability to leave her bed for days and her desire to die. Because of her deteriorated mental state, she was unable to attend her younger sister's graduation in May 2024, and unable to plan her best friend's bachelor party for August 2024, though she had committed to planning the event.

12. Though Annie did manage to travel in June 2024, she continued to send her family concerning messages about cancelling her travel plans due to her mental health symptoms and still feeling suicidal even during moments she should have enjoyed.

### B.    MongoDB Had Notice of Annie's Disability

13. Despite documentation from Annie's doctor that she was not mentally capable of returning to work yet, MongoDB began inquiring about when Annie would return from leave as early

1

*Anna Surman v. MongoDB, Inc.*
**EEOC Charge of Discrimination**

as May 2024, just weeks after her leave began and months before the earliest date that Annie's medical team said she could return to work.

14. Annie and her medical providers were involved in numerous exchanges with MongoDB and its representatives during this time and communicated the need for Annie to remain on leave due to her debilitating mental health struggles.

15. On May 22, 2024, Annie told Christian Leocata, Leave of Absence Coordinator at MongoDB, that she would need to extend her leave past July 8, 2024.

16. On June 20, 2024, Annie confirmed this with Mr. Leocata, who offered to assist her with transitioning to long-term disability coverage through Prudential.

17. When Annie told Mr. Leocata in July 2024 that her doctor advised her to remain on leave into September 2024, Mr. Leocata voiced no opposition to Annie extending her medically necessary leave and stated: "I hope that August will be a much better month!" Exhibit ("Ex.") 1. Further, he advised her to update her out-of-office message to "make the message more generic without giving a date to make things even easier" and again offered to assist with her transition to long-term disability leave. *Id.* Accordingly, as Annie conveyed to her family, she understood that the company had approved her leave extension into September.

18. Though Annie was still struggling, she felt secure enough after receiving this assurance from Mr. Leocata that she discussed plans for the future with her family, including leasing a horse and fostering a cat. Annie also decided to begin ketamine treatments, a course of treatment that brought Annie and her family considerable hope for her future recovery because the completion of such a course of treatments is known to be very effective for persistent depression like Annie was experiencing.

**C.    MongoDB Denied Annie Reasonable Accommodation and Terminated Her Because of Her Disability**

19. On July 31, 2024, in a severe and sudden departure from the tone of Mr. Leocata's last email on July 24, 2024, in which he expressed support for Annie's leave extension into September, Ex. 1, and from MongoDB's previous willingness to extend Annie's leave, Meghan Wall, an Employee Experience Senior Manager at MongoDB, emailed Annie to demand that she return to work by August 8, 2024, or face termination of employment. Ex. 2.

20. This abrupt about-face, and the unreasonably and artificially truncated timeline imposed on Annie in her fragile mental state, caused Annie extreme distress and feelings of paralysis and helplessness. Mr. Surman and I would later learn that Annie purchased the drug she would ultimately use to end her life on July 31, 2024, the very evening that MongoDB first threatened to fire her.

21. It is clear from MongoDB's actions that they had no intention of reasonably accommodating Annie or even engaging in a dialogue about possible reasonable accommodations. In fact, on July 31, 2024, more than a week *before* terminating Annie, MongoDB had already canceled her health benefits—without even telling Annie. Annie only learned of the termination of her health benefits on August 1, 2024, when Mr. Surman logged into Annie's Cigna account to get a copy of her health insurance card to help Annie

2

*Anna Surman v. MongoDB, Inc.*
**EEOC Charge of Discrimination**

pursue additional treatment. Ex. 3; Ex. 4.

22. Annie was extremely upset to learn that her health insurance had been cancelled as she continued to be in dire need of medical care. I quickly booked a flight from California to New Jersey to intervene in Annie's care.

23. On August 6, 2024, Annie requested reasonable accommodation for her disability with the help of her parents. Specifically, Mr. Surman helped Annie to inform MongoDB that she could not get in to see her provider until the week of August 19 and ask that the company engage in discussions with her about alternative reasonable accommodations after she consulted with her doctor. Ex. 2.

24. Annie and her family asked for only a minimal extension of her leave in order to discuss with Annie's doctor how and when she could return to work without destabilizing her mental condition and endangering her life. By that time, Annie had received her first ketamine infusion. The initial course consisted of four infusions that must be administered at prescribed intervals. The ketamine treatments offered a promising path forward through Annie's mental health struggles—a powerful reset that could have interrupted her suicidal ideations—but she needed a little more time to complete the treatments.

25. Meanwhile I sprinted through New York City in the August heat to gather requested documentation of Annie's condition.

26. Disregarding Annie's reasonable request, on August 7, 2024, MongoDB told Annie that she would be terminated if she did not return to work the following day, and that any discussion about reasonable accommodation would need to occur by 5 p.m. ET. They made this demand knowing that Annie would not yet have had an opportunity to consult with her doctor about potential alternative accommodations. The abrupt change and completely unreasonable 5 p.m. deadline from MongoDB further increased Annie's severe emotional distress.

27. That same day, Christina Ercole, a Psychiatric-Mental Health Nurse Practitioner who was treating Annie, sent clear documentation to MongoDB outlining the impossibility of Annie returning to work that soon and explaining Annie's planned course of treatment over the next several weeks. The letter, which Ms. Ercole was forced to write on very short notice due to MongoDB's demands, noted that Annie was "still very symptomatic and her functioning is still significantly impaired," and that Annie had just started her foundational course of ketamine treatments, and requested an extension of Annie's leave. Ex. 5; *see also* Ex. 6. After frantically gathering evidence of Annie's condition for the company, I believed I had done what I needed to do to meet the company's demands and protect my daughter.

28. Despite being aware of Annie's fragile mental state, MongoDB terminated Annie on August 8, 2024. Ex. 7. The termination was sent while Annie was receiving her second ketamine infusion and embarking on a course of treatment that her doctor believed would allow her to return to work in four to six weeks—a conclusion that her doctor had already shared with MongoDB. Ex. 5.

29. On August 8, I spoke with Ms. Wall via phone and sent multiple emails to company representatives. In a phone call, I explicitly told Ms. Wall that terminating Annie at that moment would have catastrophic consequences for Annie's well-being. Ms. Wall said that she would speak to someone in MongoDB's Legal Department and get back to me, but

*Anna Surman v. MongoDB, Inc.*
**EEOC Charge of Discrimination**

neither Ms. Wall nor anyone else from the company ever responded. I subsequently stated the following in an email sent at 4:12 p.m. ET on August 8:

> I have not received a response from you, but Annie has received a departure email from the company. I want to make it abundantly clear that your company has been advised that this is the direst of circumstances. We have a small window (hours) to avoid possible tragedy and for your company to avoid litigation. We believe this is easily resolvable by extending Annie's leave on an unpaid basis without obligation to restore her to a position.

Ex. 8.

30. MongoDB refused to reasonably accommodate Annie by delaying her termination and extending her unpaid leave by as little as a few days, with no promise that her job would be waiting for her—an accommodation that would have cost the company nothing. This was a critical inflection point in Annie's care, and the company was fully aware that Annie and her family wanted only the extremely reasonable accommodation of a short period of time to advance further in this crucial course of treatment. Instead, the company violated Annie's legal rights and disrupted her ability to access lifesaving healthcare.

31. On August 8, 2024, the same evening MongoDB terminated her, Annie attempted suicide, explicitly citing the shame she felt at being fired by MongoDB. Annie's job had been her anchor and losing it at this critical juncture in her treatment shattered her growing hope for the future. I directly witnessed Annie laying out the medications she planned to use to die by overdose as Annie stated that she could not live with the humiliation of being fired. I had to intervene to stop Annie from taking her own life without escalating the situation further, while being careful to try to limit exposure to the deadly poison that Annie was attempting to ingest in front of me.

32. The next day, I felt I had no choice but to demand that Annie seek inpatient treatment, causing further emotional distress to Annie and harming our relationship.

33. To add insult to injury, because MongoDB wrongfully cancelled Annie's health benefits before she was even terminated, Mr. Surman and I had to battle to get medical care for Annie in the wake of her suicide attempt. In the termination email that MongoDB sent to Annie, they indicated that her benefits would continue until August 31, 2024. This was a blatant falsehood because they had already canceled her insurance on July 31, 2024, and then told us that Annie would suddenly need to elect COBRA coverage by August 19.

34. Desperate to secure emergency inpatient psychiatric care for Annie, Mr. Surman and I had to use our own money to pay for Annie's COBRA coverage for August 2024—even though MongoDB should have covered her benefits until the end of that month per their own conflicting communications.

35. Annie refused to see her family after she was released from the hospital. She no longer trusted her support network and believed that nothing could help her, and the downward spiral caused by MongoDB's actions continued.

36. Just five weeks after the company terminated her, Annie died by suicide.

4

*Anna Surman v. MongoDB, Inc.*
**EEOC Charge of Discrimination**

**III.    Conclusion**

37. MongoDB unlawfully denied Annie reasonable accommodation and terminated her due to her disability.

38. MongoDB is liable for the disability discrimination that Annie experienced and for the consequences of its unlawful actions.

39. MongoDB's unlawful actions deprived Annie of her future earnings and significant unvested equity in addition to causing her extreme emotional distress, resulting in her death by suicide.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

*Karen Connolly*
_____
Karen Connolly
Dated:  May 27, 2025

cc:    Christine Dunn, Esq., Sanford Heisler Sharp McKnight, LLP
       cdunn@sanfordheisler.com

       Shannon Henris, Esq., Sanford Heisler Sharp McKnight, LLP
       shenris@sanfordheisler.com

5

# 2025-05-27 Surman v. MongoDB EEOC Charge Full Package - for client signature

Final Audit Report                                          2025-05-27

| | |
|---|---|
| Created: | 2025-05-27 |
| By: | Annabelle Wang (awang@sanfordheisler.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAApfmGbiWcPV-pxZgTs7PrU_3RzZhsOsek |

## "2025-05-27 Surman v. MongoDB EEOC Charge Full Package - for client signature" History

Document created by Annabelle Wang (awang@sanfordheisler.com)
2025-05-27 - 3:34:06 PM GMT

Document emailed to Karen Connolly (kac@surmanlink.com) for signature
2025-05-27 - 3:36:01 PM GMT

Email viewed by Karen Connolly (kac@surmanlink.com)
2025-05-27 - 5:16:04 PM GMT

Document e-signed by Karen Connolly (kac@surmanlink.com)
Signature Date: 2025-05-27 - 5:16:31 PM GMT - Time Source: server

Agreement completed.
2025-05-27 - 5:16:31 PM GMT

Adobe Acrobat Sign

# EXHIBIT 1

 LIONMAIL @COLUMBIA

## Check in from MongoDB

30 messages

---

**Christian Leocata** <christian.leocata@mongodb.com>                Wed, May 22, 2024 at 6:02 PM
To: ars2261@columbia.edu, Annie Surman <annie.surman@mongodb.com>

Hello!

This is Christian, the leave of absence specialist for MongoDB. Excuse the intrusion, but I just wanted to quickly check in with regards to your return to work.

We had received notice from Prudential that you have extended your leave to a new estimated return on July 8th. I just wanted to make sure this was correct, and if so, just remember to update your out of office message to match!

Please let me know if you need any assistance with Prudential in regards to your extension. I see you are currently approved through June 2nd, so you seem to be in a good spot with Prudential as of now.

Wishing you the best.


--

Regards,

Christian

 MongoDB.

```
{ name     : "Christian Leocata",
  title    : "Leave of Absence Coordinator",
  location : "New York, NY"
```

---

**Annie Surman** <annie.surman@mongodb.com>                Wed, May 22, 2024 at 7:08 PM
To: Alex Monaco <alex.monaco@mongodb.com>, Christian Leocata <christian.leocata@mongodb.com>
Cc: ars2261@columbia.edu

Hi Christian,

Thank you for checking in! Much appreciation to the EE team for your help and support. Yes, my medical team has recommended that I extend my LOA at least through July 8th.

My physician has primarily been handling the process with Prudential.  I'll ask her at our next visit if she requires any further assistance.

I'm hesitant to commit to an exact date of return, as my medical situation continues to evolve. I'll keep you all informed in if the recommendation for my RTW date changes.

Sending this from my MongoDB email to loop in Alex, who has been tremendously helpful in advising internal comms around my leave. Alex, please let me know your thoughts around things like updating my leave message, notifying my manager, etc.

Best,
Annie


 MongoDB.

```
{ name     : "Annie Surman",
```

```
title    : "Technical Program Manager",
location : "New York, NY",
pronouns : "she/her/hers" }
```

[Quoted text hidden]

---

**Christian Leocata** <christian.leocata@mongodb.com>                    Fri, May 24, 2024 at 5:36 PM
To: Annie Surman <annie.surman@mongodb.com>
Cc: Alex Monaco <alex.monaco@mongodb.com>, ars2261@columbia.edu

Thank you for clarifying Annie, but sorry to hear the news. Let me know if you happen to need anything else over the course of your leave and I will be available to advise. I can confirm that your manager has already been notified of the change, and I would definitely recommend to update your out of office message when you can, just to prevent any unwanted email from coming your way before your return.

[Quoted text hidden]

---

**Alex Monaco** <alex.monaco@mongodb.com>                    Fri, May 24, 2024 at 8:38 PM
To: Christian Leocata <christian.leocata@mongodb.com>
Cc: Annie Surman <annie.surman@mongodb.com>, ars2261@columbia.edu

Thanks so much Christian and sorry for the delayed response Annie! Just to echo what Christian said, we encourage updating OOO messages  if timelines change just to help manage expectations and avoid unnecessary noise in your inbox while on leave. Managers are typically kept into the loop on any changes re return date so no need for you to reach out to them directly to confirm. Let us know if you need anything else!



```
{ name     : "Alex Monaco",
  title    : "HR Business Partner, Engineering",
  location : "New York, NY" }
```

[Quoted text hidden]

---

**Annie Surman** <annie.surman@mongodb.com>                    Mon, May 27, 2024 at 11:49 AM
To: Alex Monaco <alex.monaco@mongodb.com>
Cc: Christian Leocata <christian.leocata@mongodb.com>, ars2261@columbia.edu

Perfect, thanks all for your help! My OOO messages on my calendar, Slack, and email are all updated.

I did get an email from Prudential saying my leave is only approved through June 2, so I'll follow up with them and see what's going on – Christian if you're able to contact them as well, that would be excellent. I'm wondering if they're just waiting for my doctor to hand over some medical records.

Best,
Annie

[Quoted text hidden]
--
[Quoted text hidden]

---

**Christian Leocata** <christian.leocata@mongodb.com>                    Tue, May 28, 2024 at 5:28 PM
To: Annie Surman <annie.surman@mongodb.com>
Cc: ars2261@columbia.edu

Of course Annie, I will follow up with them on my end. I think the best course of action for you would be to leave a message for Jason, your claim manager, at 877-367-7781 Ext 87693. You can ask what is missing for your STD request to be extended, and ask that he call you back. They should get back to you within 24-48 hours. Prudential can't really share details about your medical paperwork with us, so this will be your best bet to get a detailed answer.

If Jason does not return your call by the end of the week, please let me know and I will get on them immediately. In situations like this, Prudential usually contacts your doctor for updated medical paperwork, and your doctor just has to send over some medical records or updated forms. This sometimes takes time, but please let me know how you make out with Prudential or your doctor.

[Quoted text hidden]

---

**Christian Leocata** <christian.leocata@mongodb.com>                      Thu, Jun 6, 2024 at 2:56 PM
To: Annie Surman <annie.surman@mongodb.com>
Cc: ars2261@columbia.edu

Hi Annie,

I just wanted to circle back around after I heard back from Prudential. They said that your claim manager should have reached out early in the week to get in touch with you about what might be missing for you STD approval. Please let me know if you received an outreach from someone. If you haven't, I would call to leave a quick message for your claim manager, Jason, at 877-367-7781 Ext 87693. If you call, please let me know and I will follow up with them ASAP to be sure that they get back to you right away.

Just a heads up as well that since your STD has not been approved for any dates of this pay period, your paycheck from MongoDB will be affected, but you will be caught up ASAP should your leave be approved later on. Let me know how I can facilitate this further

[Quoted text hidden]

---

**Annie Surman** <annie.surman@mongodb.com>                      Fri, Jun 7, 2024 at 1:55 PM
To: Christian Leocata <christian.leocata@mongodb.com>
Cc: ars2261@columbia.edu

Hi Christian,

I've followed up with Prudential and answered the questions from my case manager - I didn't speak with him directly, but someone on their main line updated the information on my file and would forward it to him.

I'm meeting with my physician on Tuesday, I'll ask her to follow up as well. Thank you so much for your help! Let me know if there's more I can do.

Annie

🍃 MongoDB.

```
{ name     : "Annie Surman",
  title    : "Technical Program Manager",
  location : "New York, NY",
  pronouns : "she/her/hers" }
```

[Quoted text hidden]

---

**Christian Leocata** <christian.leocata@mongodb.com>                      Fri, Jun 7, 2024 at 2:19 PM
To: Annie Surman <annie.surman@mongodb.com>
Cc: ars2261@columbia.edu

No problem, I hope all goes well on Tuesday, and let me know if you need any assistance with sending over or confirming receipt of any paperwork next week. It sounds like you are doing all you can for now, wIshing you a nice weekend

[Quoted text hidden]

---

**Christian Leocata** <christian.leocata@mongodb.com>                      Thu, Jun 13, 2024 at 6:31 PM
To: Annie Surman <annie.surman@mongodb.com>
Cc: ars2261@columbia.edu

Hi Annie,

I just wanted to be sure to circle back to see if I could assist with anything. Let me know if you have heard anything from Prudential, or if you want me to follow up with them on your behalf to get more context.

[Quoted text hidden]

**Annie Surman** <ars2261@columbia.edu>                                    Fri, Jun 14, 2024 at 12:45 PM
To: Christian Leocata <christian.leocata@mongodb.com>
Cc: Annie Surman <annie.surman@mongodb.com>

Hi Christian,

I just left a message with Jason to follow up, I'm confused why things haven't moved forward, since I gave them all the additional info requested over a week ago. I'm also having my GP follow up. If you're able to get more context, that would be great. I have a feeling this is just a "bug Prudential as much as we can" situation, ha.

Thanks so much!

Annie

[Quoted text hidden]

---

**Christian Leocata** <christian.leocata@mongodb.com>                       Fri, Jun 14, 2024 at 3:46 PM
To: Annie Surman <ars2261@columbia.edu>
Cc: Annie Surman <annie.surman@mongodb.com>

Hi Annie!

You might be right about that, we just received notice that your leave was extended through July 7th. I see that some additional paperwork was received and reviewed today, so maybe your doctor sent something in today. Either way, good news!

While I have you, how are you feeling about your estimated return date of July 8th? Do you still plan to return that day? If not, please let me know and we can begin the process of preparing for Long Term Disability, and I could provide you with some more information in regards to LTD if necessary. Of course, I hope to hear good news, thank you for taking the time to check in.

[Quoted text hidden]

---

**Christian Leocata** <christian.leocata@mongodb.com>                       Tue, Jun 18, 2024 at 9:57 AM
To: Annie Surman <ars2261@columbia.edu>
Cc: Annie Surman <annie.surman@mongodb.com>

Hi Annie!

Just wanted to circle back around to check in about how confident you were in regards to your return set for July 8th. I hope the answer is very confident, but I do want to have an LTD conversation with you and begin setting that up early if it turns out that you

I can also help with Prudential as well. If you would like, I would be happy to schedule a phone call between us so we can discuss the changes you might see on the MongoDB side of things, and let me know any concerns you currently have with Prudential, so I can follow up as much as possible on your behalf.

Please let me know what you think, or would work best for you.

[Quoted text hidden]

---

**Christian Leocata** <christian.leocata@mongodb.com>                     Mon, Jun 24, 2024 at 2:22 PM
To: Annie Surman <ars2261@columbia.edu>
Cc: Annie Surman <annie.surman@mongodb.com>

Hey Annie,

I just wanted to circle back around in case you had a chance to speak with your medical team. Let me know if you want to schedule some time to talk so I can get you caught up on what to expect regarding long term disability, accommodations, and how I could help with Prudential.

I have included an attachment as some background on LTD, but we can go through everything on there when we speak. If I already sent that your way, sorry for doubling up.

[Quoted text hidden]

 **LTD Information.pdf**
57K

---

**Annie Surman** <ars2261@columbia.edu>                     Mon, Jun 24, 2024 at 3:43 PM
To: Christian Leocata <christian.leocata@mongodb.com>
Cc: Annie Surman <annie.surman@mongodb.com>

Hi Christian,

Apologies for the delay, I was just able to follow up with one of my doctors this morning. I think the best move forward is to start the long term disability process.

I spoke to Prudential about this last week, they asked for medical information from my doctors, and said they would begin the process of getting approval.

Happy to jump on a call and chat more; I'm available any time before 12pm ET tomorrow.

Annie

[Quoted text hidden]

---

**Christian Leocata** <christian.leocata@mongodb.com>                     Mon, Jun 24, 2024 at 4:20 PM
To: Annie Surman <ars2261@columbia.edu>
Cc: Annie Surman <annie.surman@mongodb.com>

Understood Annie, I hope to guide you as best I can. Would you also be free at the same time on Wednesday? If not please let me know, and I will try to make time on Tuesday

[Quoted text hidden]

---

**Christian Leocata** <christian.leocata@mongodb.com>                     Mon, Jun 24, 2024 at 4:21 PM
To: Annie Surman <ars2261@columbia.edu>
Cc: Annie Surman <annie.surman@mongodb.com>

Also, I will be setting up a zoom just as per usual, but obviously we will make it a voice call and if you rather have a phone conversation instead, just let me know.

[Quoted text hidden]

---

**Annie Surman** <ars2261@columbia.edu>                     Mon, Jun 24, 2024 at 4:22 PM
To: Christian Leocata <christian.leocata@mongodb.com>
Cc: Annie Surman <annie.surman@mongodb.com>

Hi Christian,

Unfortunately I can't do Wednesday, if it's possible to chat tomorrow that would be great!

Best,
Annie
[Quoted text hidden]

---

**Christian Leocata** <christian.leocata@mongodb.com>                Mon, Jun 24, 2024 at 4:24 PM
To: Annie Surman <ars2261@columbia.edu>
Cc: Annie Surman <annie.surman@mongodb.com>

No problem! I scheduled us for 10am, please feel free to move it if you need
[Quoted text hidden]

---

**Annie Surman** <ars2261@columbia.edu>                Mon, Jun 24, 2024 at 4:43 PM
To: Christian Leocata <christian.leocata@mongodb.com>
Cc: Annie Surman <annie.surman@mongodb.com>

Perfect, thank you! If you're able to just call my cell that would be easiest - 626-372-5120.
[Quoted text hidden]

---

**Christian Leocata** <christian.leocata@mongodb.com>                Mon, Jun 24, 2024 at 4:43 PM
To: Annie Surman <ars2261@columbia.edu>
Cc: Annie Surman <annie.surman@mongodb.com>

Will do Annie
[Quoted text hidden]

---

**Christian Leocata** <christian.leocata@mongodb.com>                Tue, Jun 25, 2024 at 10:21 AM
To: Annie Surman <ars2261@columbia.edu>
Cc: Annie Surman <annie.surman@mongodb.com>

Maria LaPan 800-842-1718 Ext 87604
[Quoted text hidden]

---

**Annie Surman** <ars2261@columbia.edu>                Thu, Jun 27, 2024 at 1:31 PM
To: Christian Leocata <christian.leocata@mongodb.com>
Cc: Annie Surman <annie.surman@mongodb.com>

Hey Christian,

Just an update that it seems Maria is OOO, but supposedly back today. I'll keep trying to get in touch with her! I don't need anything on your end for now :).
[Quoted text hidden]

---

**Annie Surman** <ars2261@columbia.edu>                Wed, Jul 3, 2024 at 10:27 AM
To: Christian Leocata <christian.leocata@mongodb.com>
Cc: Annie Surman <annie.surman@mongodb.com>

Hey Christian,

After much bothering I was finally able to get in touch with Maria. She very confusingly told me my long term leave was approved through July 8th (a single day of long-term), as this is what my doctors had recommended. Having spoken to my medical team, they are not going to clear me for work starting July 9th. Maria said we'd need to close out this request for long term leave, and re-open it with additional information. As we're approaching the July 4th holiday, I asked Maria to contact my medical team directly to request exactly the information she needs.

Maria told me Prudential does not need a return to work date – in fact she said that makes it more difficult to request additional leave should it be required – and that is only a necessity from the MongoDB perspective. This seems to be different from what you told me on the phone. Of course, not surprising that Prudential might tell us each different things! Either way, it would be helpful for us to talk next week, or for you to speak with Maria.

Long story short, I hope you're able to communicate to my management team that I've been trying incredibly hard to be proactive to communicate my expected return, but hindered greatly by the confusing insurance system!

Best,
Annie

[Quoted text hidden]

---

**Christian Leocata** <christian.leocata@mongodb.com>                Wed, Jul 10, 2024 at 11:28 AM
To: Annie Surman <ars2261@columbia.edu>
Cc: Annie Surman <annie.surman@mongodb.com>

Hi Annie,

Thank you so much for following up with all of that incredible detail, the context is great to have. Sorry for all of the running around and conflicting information, I am currently checking with Prudential to get some clarification on this, since there is a lot to pick apart here. Thank you again for your diligence even while out on leave. We have communicated to your team in regards to your return, and will continue to do so! We may check in again soon just to see how everything is going, and if you might have a better idea of your return to work date. Until then, please be well and let me know if you need anything in the meantime

[Quoted text hidden]

---

**Christian Leocata** <christian.leocata@mongodb.com>                Tue, Jul 23, 2024 at 3:51 PM
To: Annie Surman <ars2261@columbia.edu>
Cc: Annie Surman <annie.surman@mongodb.com>

Good Afternoon Annie,

Hoping you are as well as can be. Sorry to intrude once again, but since we are about 2 weeks out from your estimated return, I was hoping to check in to see if you are confident about returning on that date. If you think you will need an extension, please let me know by the end of the week.

If you have any lingering questions regarding Prudential, please let me know, but as of this point I believe they are still reviewing your paperwork that was submitted about a week ago (and some prior as well), so there is no decision regarding your LTD yet, but we are keeping up with them so that they turn this around for you as quickly as possible.

[Quoted text hidden]

---

**Annie Surman** <ars2261@columbia.edu>                Wed, Jul 24, 2024 at 3:21 PM
To: Christian Leocata <christian.leocata@mongodb.com>
Cc: Annie Surman <annie.surman@mongodb.com>

Hi Christian,

Thank you for checking in! Unfortunately I'm not responding well to any of my current treatments, so it looks like an extension will be required. Based on the current treatment I'm doing, that would put my return at sometime in September, but I'm hesitant to confirm that date.

Should I go ahead and update my away messages on my Mongo account to remove "July" from the wording? Thank you again for your help. Looking forward to feeling well enough to return!

Annie

[Quoted text hidden]

---

**Christian Leocata** <christian.leocata@mongodb.com>                Wed, Jul 24, 2024 at 4:51 PM
To: Annie Surman <ars2261@columbia.edu>
Cc: Annie Surman <annie.surman@mongodb.com>

Hi Annie,

Nice to hear from you, as always, but not so nice to hear the unfortunate news. I hope that August will be a much better month! I think it would be helpful to remove the July wording from your out of office, and you can make the message more generic without giving a date to make things even easier.

I know that Prudential is currently reviewing some paperwork for you, so you should hear from them with a decision on your Long

Term Disability sometime soon. Let me know if you need any assistance there and I will do what I can so that your missing with Prudential is clear.

Wishing you the best, let me know if there is anything I can help with at the moment.

[Quoted text hidden]

# EXHIBIT 2

**Subject:** Fwd: Return to Work - August 8, 2024
**Date:**    Wednesday, August 7, 2024 at 5:51:39 AM Pacific Daylight Time
**From:**    Annie Surman <ars2261@columbia.edu>
**To:**      Greg Surman <gsurman@surmanlink.com>

Subject: Re: Return to Work - August 8, 2024
To: Annie Surman <ars2261@columbia.edu>
CC: Annie Surman <annie.surman@mongodb.com>, Christian Leocata <christian.leocata@mongodb.com>

Hi Annie,

Thank you for the response. For clarity, the business has only approved your leave as an accommodation through today, August 7, 2024. You will need to return to work by tomorrow, August 8, 2024, or it may result in termination of your employment.

Christian and I are available to discuss alternative possible reasonable accommodations that would support you in performing the essential functions of your role upon your return. I am available today to discuss before 5:00 pm EST.



```
{ name     : "Meghan Wall",
  title    : "Sr. Manager, Employee Experience",
  location : "Raleigh, NC", }
```

On Tue, Aug 6, 2024 at 8:25 PM Annie Surman <ars2261@columbia.edu> wrote:
Hi Meghan,

Thanks for your message. Grateful to Mongo for all the support during this difficult time!

My condition has made it difficult for me to function lately, so please forgive me for not responding sooner.  In addition, not sure I fully understand your message.  But I appreciate the needs of the business are such that you need to know when I'll be able to return to work (currently believe this would be by 9/30, but gather you're saying you need something more certain).  And I agree we should have discussions regarding possible alternative reasonable accommodations.

Before I can have meaningful discussions on these two items, I need to consult my providers.  Earliest I could get appointments is during week of August 19th. In addition, I just started new course of treatment that will run through next week and it may impact both when I can return and accommodations that might be appropriate.   So could we set up time to discuss during week of 8/19?  Until then, I'd be grateful if you could extend my accommodation leave accordingly.

I'm also working with my providers to get info requested by Prudential re my disability benefits.  As you might imagine, trying to deal with all this is difficult in light of my health at the moment.  So your patience and understanding are greatly appreciated.

Thanks again,
Annie

On Tue, Aug 6, 2024 at 11:59 AM Meghan Wall <meghan.wall@mongodb.com> wrote:

Hi Annie,

I left a voicemail on your personal phone and wanted to make sure to follow up with you via this email sent on July 31.  Please let me know if you have any questions.  I can be reached at 443-223-6760.

Thank you,
Meghan

```
{ name     : "Meghan Wall",
  title    : "Sr. Manager, Employee Experience",
  location : "Raleigh, NC", }
```

On Wed, Jul 31, 2024 at 5:26 PM Meghan Wall <meghan.wall@mongodb.com> wrote:

Dear Annie,

As you know, your original anticipated return to work date following the end of your FMLA leave was August 5, 2024. We approved your leave of absence as a reasonable accommodation through that date. In recent communications you've updated us that you are no longer able to return to work on August 5, 2024 and have indicated you may be able to return sometime in September 2024. We want to support you during this time; however, we are not able to provide continued leave as a reasonable accommodation due to the needs of the business and, in particular, where a return to work date cannot be identified.

At this time, we can extend your leave as an accommodation through August 7, 2024. You will need to return to work by August 8, 2024 or it may result in termination of your employment. That said, we are available to discuss alternative possible reasonable accommodations that may allow you to perform the essential functions of your role and support your successful return to work on August 8, 2024. Please let us know if you would like to discuss.

Please note that you will remain eligible for disability wage replacement benefits from

Prudential regardless of your employment status, subject to the disability plan documents and approval.

Please do not hesitate to reach out with any questions or concerns regarding your leave of absence or returning to work.

Thank you,
Meghan

```
{ name     : "Meghan Wall",
  title    : "Sr. Manager, Employee Experience",
  location : "Raleigh, NC", }
```

# EXHIBIT 3

Case 1:26-cv-00166-JLR   Document 1-2   Filed 01/08/26   Page 23 of 50

# cigna
healthcare

Home     Find Care & Costs     Claims ▾     Coverage ▾     Wellness ▾

## Medical, Behavioral Health, and Pharmacy Coverage Details

**Plan:** Open Access Plus        **Group ID:** 00608372        Coverage is not active for Anna

ℹ️ Your medical, behavioral health, and pharmacy coverage is no longer active. For information, contact us.

Close ✕

### Who's Covered

| | | | |
|---|---|---|---|
| **Anna Surman** | Subscriber | DOB: 12/15/1995 | Covered from 01/01/2024 - 07/31/2024 |

# EXHIBIT 4

**Subject:** Re: Extension of leave of absence request
**Date:**    Friday, August 9, 2024 at 2:56:35 PM Pacific Daylight Time
**From:**    Greg Surman <gsurman@surmanlink.com>
**To:**    Meghan Wall <meghan.wall@mongodb.com>
**CC:**    christian.leocata@mongodb.com <christian.leocata@mongodb.com>, Karen Connolly <kac@surmanlink.com>

Meghan—

Thanks.  That is very helpful!

Is there a way that I can pay for her COBRA coverage?  If I had to guess, she'll probably still be in the hospital on the 19th.

Thanks again,

        --Greg

---

**From:** Meghan Wall <meghan.wall@mongodb.com>
**Date:** Friday, August 9, 2024 at 2:15 PM
**To:** Greg Surman <gsurman@surmanlink.com>
**Cc:** christian.leocata@mongodb.com <christian.leocata@mongodb.com>, Karen Connolly <kac@surmanlink.com>
**Subject:** Re: Extension of leave of absence request

Hi Gregory,


We updated our records and reinstated Annie's medical benefits effective August 1st. However, Annie will still need to elect and pay for COBRA.  We will give her until  **Monday, August 19th** to elect and pay for COBRA via the WageWorks COBRA portal. If election has not been made or paid by EOD on August 19, we will rescind Annie's Cigna COBRA coverage back to July 31st.
If the doctor does not see Annie as covered in their online portal, they will need to verify insurance following these steps:
1. The provider's office will need to call Cigna Member Services at 866-494-2111 and take the Provider prompt.
2. When the Provider reaches a person on the line, they will  have to tell that person to check the "Main Facets Systems"


The Benefits team indicated that Annie should see her coverage reinstated by Sunday in her MyCigna account so she can then just give her doctor the ID card to prove she's covered.


Thank you,
Meghan

**Page 1 of 4**



```
{ name    : "Meghan Wall",
  title   : "Sr. Manager, Employee Experience",
  location : "Raleigh, NC", }
```

On Fri, Aug 9, 2024 at 3:27 PM Greg Surman <gsurman@surmanlink.com> wrote:

> Meghan—
>
> Thanks for getting back to me.
>
> I just spoke with Cigna.  They told me I should ask to speak with Mongo's COBRA administrator right away.  Cigna didn't have a name for this administrator, so I'd be grateful if you could please provide me with contact details (or ask this person to reach out to me) right away.
>
> Annie is being transported to hospital now.  This is all overwhelming and I'm struggling to figure the insurance stuff out.  My current understanding is that the hospitalization may require pre-approval, but the hospital is not able to seek such pre-approval until Annie's insurance is reactivated.
>
> ***Cigna told me that I should ask your COBRA administrator to make sure that they handle the reinstatement of Annie's insurance on an urgent basis.***
>
> Thanks again,
>
>       --Greg
>
> ---
>
> **From:** Meghan Wall <meghan.wall@mongodb.com>
> **Date:** Friday, August 9, 2024 at 12:03 PM
> **To:** Greg Surman <gsurman@surmanlink.com>
> **Cc:** christian.leocata@mongodb.com <christian.leocata@mongodb.com>, Karen Connolly <kac@surmanlink.com>
> **Subject:** Re: Extension of leave of absence request
>
>> Hi Gregory,
>>
>> I asked our Benefits team to expedite mailing Annie's COBRA packet and I will also email an electronic version to Annie when it becomes available. We are not able to do anything further to speed up the process.  Annie's coverage will backdate to August 1, 2024. In the meantime, she may be able to inform her medical care provider to send a bill and then she can submit a claim for reimbursement upon reinstating her coverage.
>>
>>
>> Thank you,
>>
>> Meghan



```
{ name     : "Meghan Wall",
  title    : "Sr. Manager, Employee Experience",
  location : "Raleigh, NC", }
```

On Fri, Aug 9, 2024 at 1:02 PM Greg Surman <gsurman@surmanlink.com> wrote:

Meghan/Christian—

I'm Annie's father. **I need Cobra info (and/or Annie's health insurance re-instated) immediately.**

We are dealing with true life or death situation for her. We are trying to get Annie into program that will keep her alive, **and their admissions department will need to coordinate with her insurance. According to Cigna website, you cancelled her insurance as of 7/31.**

**Please get back to me immediately.**

**Thank you!!!**

_____
**Gregory L. Surman**
Office:   626.226.0595
Mobile:  626.755.8091
gsurman@surmanlink.com

*THIS MESSAGE MAY CONTAIN PRIVILEGED/CONFIDENTIAL INFORMATION FOR USE BY THE INTENDED RECIPIENT ONLY. IF SENT TO YOU IN ERROR, PLEASE ADVISE SENDER AND THEN DELETE THIS MESSAGE.*

**From:** Christina Ercole <christina.ercole.np@gmail.com>
**Date:** Wednesday, August 7, 2024 at 11:04 AM
**To:** meghan.wall@mongodb.com <meghan.wall@mongodb.com>
**Cc:** Greg Surman <gsurman@surmanlink.com>
**Subject:** Extension of leave of absence request

Please see attached letter.

Take care,

Christina Ercole, MSN, PMHNP-BC
Modern Integrative Psychiatry
6 East 39th Street Suites 503 + 902
New York, NY 10016
(646) 592-0869
www.modernintegrativepsychiatry.com
Christina.Ercole.np@gmail.com
https://doxy.me/christinaercolepsychnp

**In case of emergency, please call 9-1-1 or go to your nearest Urgent Care Center or Emergency Room. If needed, the suicide and crisis prevention hotline number is 9-8-8.**

CONFIDENTIALITY NOTE:
The information contained in this electronic transmission and in any attachments hereto, is privileged and confidential. This information is intended only for the use of the individual(s) named as recipients of this electronic transmission. If you are not the intended recipient, any disclosure, copying, distribution or the taking of any action in reliance on the contents of this electronic transmission is strictly prohibited and all such contents should be permanently deleted from your systems. If you have received this electronic transmission in error, or if you are the intended recipient and there was a problem with the transmission, please notify me immediately. Thank you for your cooperation.


Please be aware that this email communication is secure, but not encrypted. Should you communicate with me, or request information via this email platform, I will understand that to be your consent. Alternatively, you can use the Kareo/Tebra patient portal (https://portal.kareo.com/pp-webapp/app/new/login) to send personal health information (PHI) and the information you provide through the portal will be protected by Kareo/Tebra as required by federal and state laws. Please note that all medical record requests will be sent via encrypted email.

# EXHIBIT 5

| | |
|---|---|
| **Subject:** | Extension of leave of absence request |
| **Date:** | Wednesday, August 7, 2024 at 11:04:16 AM Pacific Daylight Time |
| **From:** | Christina Ercole <christina.ercole.np@gmail.com> |
| **To:** | meghan.wall@mongodb.com <meghan.wall@mongodb.com> |
| **CC:** | Greg Surman <gsurman@surmanlink.com> |
| **Attachments:** | AS LOA extension.pdf |

Please see attached letter.

Take care,

Christina Ercole, MSN, PMHNP-BC
Modern Integrative Psychiatry
6 East 39th Street Suites 503 + 902
New York, NY 10016
(646) 592-0869
www.modernintegrativepsychiatry.com
Christina.Ercole.np@gmail.com
https://doxy.me/christinaercolepsychnp

**In case of emergency, please call 9-1-1 or go to your nearest Urgent Care Center or Emergency Room. If needed, the suicide and crisis prevention hotline number is 9-8-8.**

CONFIDENTIALITY NOTE:
The information contained in this electronic transmission and in any attachments hereto, is privileged and confidential. This information is intended only for the use of the individual(s) named as recipients of this electronic transmission. If you are not the intended recipient, any disclosure, copying, distribution or the taking of any action in reliance on the contents of this electronic transmission is strictly prohibited and all such contents should be permanently deleted from your systems. If you have received this electronic transmission in error, or if you are the intended recipient and there was a problem with the transmission, please notify me immediately. Thank you for your cooperation.

Please be aware that this email communication is secure, but not encrypted. Should you communicate with me, or request information via this email platform, I will understand that to be your consent. Alternatively, you can use the Kareo/Tebra patient portal (https://portal.kareo.com/pp-webapp/app/new/login) to send personal health information (PHI) and the information you provide through the portal will be protected by Kareo/Tebra as required by federal and state laws. Please note that all medical record requests will be sent via encrypted email.

Christina Ercole, MSN, PMHNP-BC
Modern Integrative Psychiatry
6 East 39th Street
New York, NY 10016
646-592-0869

8/7/2024

To Whom It May Concern,

Anna Surman (DOB: 12/15/1995) is a patient under my care, and has been since 5/26/22; she has been a patient at our practice since 7/29/19. This clinician last met with Ms. Surman for a psychotropic medication management appointment on 7/26/24. Ms. Surman is still very symptomatic and her functioning is still significantly impaired; she cannot return to work at this time, and an extension of her LOA is being requested. Of note, one of Ms. Surman's psychotropic medications is in the process of being titrated, and a strict schedule must be followed; this medication will not reach a therapeutic dose until the end of the month, and then from there, it will take another 4-6 weeks to reach full effect at this dose. It is also important to note, this medication may need to continue to be titrated even further after reaching the starting therapeutic dose, which again would then take at least another 4-6 weeks to reach peak effect. Ms. Surman also started ketamine infusion treatments for her mental health symptoms this week, and is currently scheduled 8/6, 8/8, 8/12, and 8/14 for her foundational sessions; the frequency of future treatments will be determined by her provider after her appointment on 8/14. Her psychotropic medication regimen/treatment plan is continuing to be adjusted to better address the mental health symptoms still present, and help her return to a functioning baseline; this needs to occur in order for Ms. Surman to return to work. Due to the aforementioned reasons, a return to work is not a reasonable request at this time and a two month extension of her LOA is being requested in order to give her time to respond to treatment.

Regards,

Christina Ercole, MSN, PMHNP-BC
Board Certified Psychiatric Nurse Practitioner

# EXHIBIT 6

Christina Ercole, MSN, PMHNP-BC
Modern Integrative Psychiatry
6 East 39th Street
New York, NY 10016
646-592-0869

8/14/2024

To Dr. Koshes,

As stated previously, I do not agree with your assessment from the letter sent on 7/28/24 regarding my patient, Anna Surman (DOB: 12/15/1995). Currently, Ms. Surman is again psychiatrically hospitalized at Silver Hill hospital s/p suicidal ideation with intent; she was brought to the hospital on 8/9/24 and subsequently admitted. The decompensation seen in Ms. Surman in the past 5 months have been both significant and concerning. She has now had multiple psychiatric hospitalizations in a very short period of time, which in no way reflects full functional capacity, as you have stated. She has become a chronically suicidal patient and at this time, does not have the capacity/ability to properly handle psychosocial stressors, as made evident by her current hospitalization; she requires a HLOC and cannot be treated in an outpatient setting at this time.

Prior to this current hospitalization, Ms. Surman was also still not demonstrating full functional capacity, as you have stated in your assessment. She had started Ketamine infusions days before her current hospitalization on 8/6/24, d/t worsening symptoms. At her most recent appointment with this clinician on 7/26/24, her psychotropic medication regimen continued to be adjusted to address her depression symptoms, suicidal ideation, difficulty self-soothing/emotional dysregulation, and mood lability/low frustration tolerance.

Ms. Surman has been a patient under my care since 5/26/22 and we have had 21 sessions together, the most recent being 7/26/24; the assessments I have made of Ms. Surman over the 2+ years of working together should carry a significant amount of weight, especially when compared to the one diagnosis you have chosen to focus on, i.e Mild Episode of Major Depressive Disorder. Outside of the PHP, not one other provider has used this diagnosis for Ms. Surman, and this was upon discharge on 5/28/24; it should be noted that just 11 days prior to this on 5/17/24, she was sent to the ED again while still in the PHP, d/t safety concerns after writing a suicide note. Per the DSM-5-TR diagnostic criteria for a major depressive episode, this can be as short as a two-week period of time; therefore, once again, focusing on one diagnosis, from one provider, is not reflective of a patient's full level of functioning, especially in the time frame being discussed/analyzed for Ms. Surman. Chronic psychiatric illnesses ebb and flow in their severity, frequency, and intensity; simply because a patient reports a brief period where they

were able to complete more than just basic ADLs, does not mean their functioning is no longer impaired.

It is also important to note that Ms. Surman met with this clinician four times after her discharge from the PHP; her symptoms/functioning were assessed and evaluated by this clinician at each appointment, and again do not reflect your opinion. I have also included with this letter a PHQ-9 from 7/31/24; her score is indicative of severe symptoms of depression, not mild. Again, Ms. Surman is not demonstrating full functioning and d/t the severity of her symptoms, she requires a HLOC and cannot be treated in an outpatient setting at this time; she will need much more time to focus on her treatment in order to return to a functioning baseline. Please use the above information to reconsider your assessment of Ms. Surman for her case.

Regards,

Christina Ercole, MSN, PMHNP-BC
Board Certified Psychiatric Nurse Practitioner

# EXHIBIT 7

 **Outlook**

## Fw: Departure Logistics

| | |
|---|---|
| **From** | Karen Connolly <kconnolly@surmanlink.com> |
| **Date** | Wed 9/25/2024 1:27 PM |
| **To** | Karen Connolly <kac@surmanlink.com> |

📎 1 attachments (7 MB)
Annie Surman Offer Letter (part 2).pdf;

**From:** Karen Connolly <kconnolly@surmanlink.com>
**Sent:** Monday, September 2, 2024 10:21 PM
**To:** Greg Surman <gsurman@surmanlink.com>
**Subject:** Fwd: Departure Logistics

**From:** Annie Surman <ars2261@columbia.edu>
**Sent:** Monday, September 2, 2024 7:44 PM
**To:** Karen Connolly <kconnolly@surmanlink.com>
**Subject:** Fwd: Departure Logistics

---------- Forwarded message ---------
From: **Manjot Singh** <manjot.singh@mongodb.com>
Date: Thu, Aug 8, 2024 at 3:39 PM
Subject: Departure Logistics
To: <ars2261@columbia.edu>
CC: Jess Mokrzecki <jess.mokrzecki@mongodb.com>, Wendy Bryant <wendy.bryant@mongodb.com>, Meghan Wall <meghan.wall@mongodb.com>

**Anna,**

**Today is your last day with system access at MongoDB, and equity stops vesting as of 08 August 2024. Your official employment end date and final day of pay will be 08 August 2024, and your benefits coverage will run**

**through 31 August 2024. Please see logistical information related to your departure below. Please direct follow-up questions to EmployeeExperience@MongoDB.com. Thank you and take care.**

<u>**Departure Logistics**</u>

**Company Access & Property Return (Action Required):**

Please note you will lose access to all MongoDB systems today and have your Mongo email account deactivated. Once this occurs, your laptop will be permanently locked.

Please mail back your company property (i.e. laptop, monitor, keyboard, charger, company ID card, etc.) with the pre-paid box and shipping label that should be arriving in the next couple of weeks. If you do not receive the pre-paid box/shipping, please email EmployeeExperience@MongoDB.com to let us know.

**Medical, Dental, Vision Benefits:**

Your coverage terminates on the last day of the month of your final day of employment.  For example, if your last day of employment is July 15th, your Health, Dental, and Vision Insurance will terminate on July 31st.

Should you have questions about your coverage, you may contact Cigna in the following ways:

- For help with benefits & coverage: 1 (866) 494-2111
- For help using the MyCigna website: 1 (800) 853-2713
- You can also live chat with a Cigna rep online about coverage and for help with the site by logging into your MyCigna account and clicking "Talk with us" on the lower right hand corner.

**COBRA:**  You are eligible to continue these benefits via COBRA (Consolidated Omnibus Budget Reconciliation Act) for up to 18 months post termination. COBRA extension periods may vary by state. WageWorks will send detailed notification and enrollment instructions to your home within 2-3 weeks of your separation date.

If you would like to enroll in COBRA coverage, please follow the instructions in the packet you will receive from WageWorks. You have 60 days from the last day of coverage under the MongoDB plans to elect COBRA coverage. You will then be responsible for paying the COBRA premiums.

If you live in the state of California, please review this notice to see if you qualify for the Health Insurance Premium Payment (HIPP) Program through the California Department of Health Care Services.

**Health Savings Account (HSA):** The money in your Health Savings Account is yours to use after you depart from MongoDB with no deadline to use the funds but please note that once you separate from MongoDB your account will be deducted an admin fee of about ~$3.95/month if you have an average daily cash balance of less than $2,500.

Employees are only eligible for the HSA, if they were enrolled into our High Deductible Health Plan (HDHP).

**Flexible Spending:**

Your Flexible Spending Accounts will terminate on your last day of employment.

You will still be able to submit claims for **Healthcare FSA** (HCFSA) or **Limited Purpose FSA (LPFSA)** expenses that were incurred before your separation within **90 days after your termination of employment**. You can submit claims through your WageWorks account or through the EZ Receipts Mobile App.

Please keep in mind that you can only be reimbursed for HCFSA funds that you actually contributed to the plan. If you have any unspent Health Care FSA dollars, you have the option to continue the FSA plan via COBRA.

You will still be able to submit claims for **Dependent Care FSA** (DCFSA) expenses within **90 days after the end of the Plan Year** (March 31st after you separated from MongoDB). You can submit claims through your WageWorks account or through the EZ Receipts Mobile App.

Please keep in mind that you can only be reimbursed for DCFSA  funds that you actually contributed to the plan.

**Commuter Benefit**

**Transit** - Once you terminate, all future commuter elections not yet processed will be canceled. If you have unused funds in your WageWorks account, you have **ninety (90) days from the date of termination of your employment** to use the funds in your account for eligible expenses. At the end of the ninety (90)-day period, any unused pre-tax funds will be forfeited and any post-tax funds will be refunded to you.

**Parking**  - Once you terminate, all future commuter elections not yet processed will be canceled. You have **6 months following the end of the benefit month** to file claims to be reimbursed from your Pay Me Back account for expenses incurred prior to your termination. Per IRS regulations, pre-tax funds cannot be refunded to you if you terminate.

**Life and AD&D Insurance:**  This provides you with notice that you may be eligible to port or convert your basic and your optional life coverage(s).  You must complete an application and apply for these options within **31 days of your coverage termination**. To obtain an application, please contact Prudential at 1-800-778-3827.  Please provide the contract number – 71329 when calling.  If you are using a telecommunications device for the hearing impaired (TDD), please call 1–800-496-1214. Representatives are available to assist you Monday through Friday between 8:00am and 8:00pm Eastern Time.

**Employee Assistance Program (EAP):** You have **90 days after your Termination Date** to use MongoDB's EAP services with ComPsych, which provides 3 confidential counseling sessions, financial resources, legal resources and more.
To register for ComPsych, go to this link > click Register - for Organization Web ID input GRS311
On the following page, write Mongo as the Company Name and then on the following page you will be able to select MongoDB, Inc. from the drop-down menu as your company. On the following page, you will be able to register for a username and password of your choosing.

**Voluntary Plans**

**Cigna's Accident, Critical Illness, and Hospital Voluntary Plans** - Employees who are enrolled into one of Cigna's voluntary plans while employed can continue their voluntary plans after they terminate. After terminating from MongoDB, Cigna will send you portability forms via US post to port your plan. If you are interested in porting your plan to an individual

plan you must complete and submit the forms to Cigna within **30 days** from the date they are mailed and you will be responsible for paying Cigna directly. If you do not receive the portability forms in the mail but want to continue your coverage under the voluntary plans, you may call Cigna at 1-800-754-3207 to have them re-sent.

**401K:** If you have between $1,000 - $7,000 in the MongoDB 401K plan, you have 6 months to do a rollover or a distribution.  If you have less than $1,000 in MongoDB's 401K plan, you have 90 days to either roll your money over to a different plan or you will have to take a distribution (distribution fee paid by you).  To access your account please visit the Vanguard website.

You will have to wait until after you receive your final paycheck from MongoDB in order to request a rollover or distribution. To request a rollover or distribution, please see the steps below:

1. Log into your Vanguard account (If you have trouble registering or logging into your Vanguard account, please call Vanguard Participant Services at 800-523-1188
2. Click "Explore" -> click "Go to Previous Site"
3. Scroll to the bottom of the page and click "Manage My Money" -> click "Roll over money out of this plan" -> click "Review Your Plan Options"
4. For a rollover to another employer-sponsored plan, select "Rollover to another qualified retirement plan." For a rollover to an IRA not held at Vanguard, select "Rollover to an IRA at another provider."
5. Follow the screen instructions

**Expenses:**

Your Concur account will be deactivated on your last day of employment. Please submit all of your expenses prior to that date. For any remaining expenses, please email receipts to Accounts Payable at ap@mongodb.com.

**Equity:**

Please log into your E*TRADE account at https://us.etrade.com/home to view your equity award details and your last date to exercise any stock options before they are fully canceled. All equity  stops vesting on the last day that you are actively working.

- **Stock Options:** At the time of your termination, any unvested stock options will be immediately forfeited. If you have vested stock options that have not been previously exercised, you have a period of **three (3) months from your termination date to exercise** them**.**
- **Restricted Stock Units (RSUs):** At the time of your termination, any unvested RSUs will be immediately forfeited.
- **Employee Stock Purchase Plan (ESPP):** If your last day of employment is during an ESPP Offering Period and prior to the Purchase Date for that Offering Period, all ESPP deductions accumulated from your pay during such Offering Period will be refunded to you without interest and we will not purchase shares on your behalf.

**Insider Trading Policy and Trading Windows:**

The Insider Trading Policy continues to apply to you for a period of time even after your relationship with MongoDB has ended**,** *including any current trading blackout period*.

- If you **terminate your employment during a trading blackout**, you may not buy or sell MongoDB stock until the trading window re-opens.

- If you **terminate your employment during an open trading window**, you will no longer be bound by any future trading windows.

It is illegal to trade MDB shares if you possess inside information when your relationship with MongoDB ends, regardless of whether you leave during a blackout or an open trading window, until the inside information has been publicly disseminated or is no longer material.

Irrespective of the blackout window, you may "Exercise and Hold" (cash exercise) your vested stock options.

**Your E*TRADE Account:** Any option shares that you have already exercised or RSUs that have already vested and have not sold will continue to be available to you in your E*TRADE account (or your AST account, if applicable) until you ultimately dispose of all the shares. Your E*TRADE account (and AST account, if applicable) will be available to you as long as you have MongoDB shares in the account to manage. Please keep your personal E*TRADE account (and AST account, if applicable) current with any address and email changes, as you would a bank account. If you have any questions, please contact Stock Administration at Stock@mongodb.com.

**Obligations during & after employment:**

Please refer to your Offer Letter and Employee's Proprietary Information and Inventions Agreement for obligations such as Confidential Information, Non-Competition and Non-Solicitation, during and after employment.

**Unemployment Insurance:**

Unemployment insurance is available to eligible workers who are unemployed through no fault of their own, as determined under State law, and meet other eligibility of State.  Please visit the Department of Labor website at http://workforcesecurity.doleta.gov/unemploy/uifactsheet.asp for additional details and application instructions.

**Annual Tax Documents (W-2 and 1095):**

You may continue to access your existing pay statements, W-2 Forms, and 1095s for up to three years from the date your last statement was issued. Should you change your address between now and the end of January of next year, please log into ADP to update your address so next year's tax documents may be sent to the correct address.

**Contact Information:**

For all general questions after your departure related to benefits, expenses etc., please email EmployeeExperience@MongoDB.com.

--
## Have a question? Submit a [Zendesk Request](#)



Name     : "Manjot Singh",

Title    : " Coordinator HR Shared Services",

Think Big, Go Far | Make It Matter | Build Together |  Embrace the Power of Differences | Be Intellectually Honest | Own What You Do

# EXHIBIT 8

**From:** Greg Surman <gsurman@surmanlink.com>
**Date:** Monday, September 16, 2024 at 6:07 PM
**To:** meghan.wall@mongodb.com <meghan.wall@mongodb.com>, christian.leocata@mongodb.com <christian.leocata@mongodb.com>
**Cc:** Karen Connolly <kac@surmanlink.com>
**Subject:** Sad news re Annie Surman / Immediate Response Requested

Meghan—

We are the parents of Annie Surman, writing to you with great sadness.  As a direct result of Mongo's decision to terminate Annie (rather than extend her leave as a reasonable accommodation),  Annie took her own life

During this very difficult time, we are trying to gather information regarding her affairs as best we can.  We understand that there may have been deadlines for Annie to take actions to preserve certain benefits, such as her life insurance.  Due to Annie's deteriorated condition, she was unable to take such actions.  We trust that Mongo will take whatever steps are necessary to ensure that her estate, heirs and beneficiaries are not penalized as a result of her inability to take such actions.

Regarding her life insurance in particular, based on our call with Prudential today, it is our understanding that Mongo can ensure that her policies are treated as if she had converted them prior to the expiration of any deadline.  ***Thus, we hereby request that Mongo take immediate action to ensure that her policies are treated in such manner.  Please promptly confirm that you have done so.***

Thanks,

Greg Surman, Esq

Karen Connolly, Esq

**From:** Karen Connolly <kac@surmanlink.com>
**Date:** Thursday, August 8, 2024 at 4:12 PM
**To:** Greg Surman <gsurman@surmanlink.com>
**Subject:** Fwd: Annie Surman

---

**From:** Karen Connolly <kac@surmanlink.com>
**Sent:** Thursday, August 8, 2024 4:12 PM
**To:** meghan.wall@mongodb.com <meghan.wall@mongodb.com>
**Cc:** christian.leocata@mongodb.com <christian.leocata@mongodb.com>
**Subject:** Re: Annie Surman

Meghan,

I have not received a response from you, but Annie has received a departure email from the company. I want to make it abundantly clear that your company has been advised that this is the direst of circumstances. We have a small window (hours) to avoid possible tragedy and for your company to avoid litigation. We believe this is easily resolvable by extending Annie's leave on an unpaid basis without obligation to restore her to a position.

I look forward to a response from someone at your company shortly.

Karen

---

**From:** Karen Connolly <kac@surmanlink.com>
**Sent:** Thursday, August 8, 2024 12:55 PM
**To:** meghan.wall@mongodb.com <meghan.wall@mongodb.com>
**Subject:** Annie Surman

Dear Meghan,

Thank you for speaking with me just now.  As you are aware, Annie is suffering from some significant health challenges, including with respect to mental health.  We are flabbergasted (as is legal counsel with whom we have discussed this matter) as to why MongoDB is unwilling to extend her leave on an unpaid basis. We are hopeful that this unfortunate situation can resolved.

Thank you for your assistance.

Karen Connolly

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**New York District Office**
33 Whitehall St, 5th Floor
New York, NY 10004
(929) 506-5270
Website: www.eeoc.gov

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 12/30/2025

**To:** Ms. Anna Surman
130 Allen Street Apt. 6
New York, NY 10002
Charge No: 520-2025-05818

EEOC Representative and email:     DAVID PHILLIPS
INVESTIGATOR
DAVID.PHILLIPS@EEOC.GOV

### NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

The EEOC has granted your request for a Notice of Right to Sue, and more than 180 days have passed since the filing of this charge.

The EEOC is terminating its processing of this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice that the EEOC has dismissed your charge and has issued you notice of your right to sue the respondent(s) on this charge. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of EEOC's official notice of dismissal.** You should keep a record of the date you received the EEOC's official notice of dismissal. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 520-2025-05818.

On behalf of the Commission,

Digitally Signed By:Arlean Nieto
12/30/2025

Arlean Nieto
Acting District Director

**Cc:**
NA NA
1633 BROADWAY FL 38
NEW YORK, NY 10019

Rebecca Goldstein
Littler Mendelson, P.C.
900 Third Avenue
New York, NY 10022-3298

Incident  Location
MongoDB, Inc.
1633 Broadway Floor 38
New York, NY 10019

Matthew D Holmes
Littler Mendelson, P.C.
375 Woodcliff Drive, Fairport, New York 14534
Pittsford, NY 14534

Christine Dunn Esq.
Sanford Heisler Sharp McKnight, LLP
700 Pennsylvania Avenue SE Suite 300
Washington, DC 20003


Please retain this Notice for your records.

Enclosure with EEOC Notice of Closure and Rights (05/25)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* EEOC's official notice of dismissal**. You should **keep a record of the date you received EEOC's official notice of dismissal**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving EEOC's official notice of dismissal (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA, or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of your receipt of EEOC's official notice of dismissal and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of EEOC's official notice of dismissal, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

**To make a FOIA request for your charge file**, submit your request online at https://eeoc.arkcase.com/foia/portal/login (this is the preferred method).  You may also submit a

Enclosure with EEOC Notice of Closure and Rights (05/25)

FOIA request for your charge file by U.S. Mail by submitting a signed, written request identifying your request as a "FOIA Request" for Charge Number 520-2025-05818 to the District Director at Arlean Nieto, 33 Whitehall St 5th Floor, New York, NY 10004.

**To make a Section 83 request for your charge file**, submit a signed written request stating it is a "Section 83 Request" for Charge Number 520-2025-05818 to the District Director at Arlean Nieto, 33 Whitehall St 5th Floor, New York, NY 10004.

You may request the charge file up to 90 days after receiving EEOC's official notice of dismissal. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https://www.eeoc.gov/foia/section-83-disclosure-information-charge-files.

NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA)

The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at: http://www.eeoc.gov/laws/types/disability_regulations.cfm.

**"Actual" disability or a "record of" a disability**

If you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability:

- **The limitations from the impairment no longer must be severe or significant** for the impairment to be considered substantially limiting.

- In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.

- **Only one** major life activity need be substantially limited.

- Except for ordinary eyeglasses or contact lenses, the beneficial effects of **"mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications)

Enclosure with EEOC Notice of Closure and Rights (05/25)

**are not considered** in determining if the impairment substantially limits a major life activity.

☐ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active**.

☐ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

**"Regarded as" coverage**

An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

☐ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.

☐ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively **both** transitory (lasting or expected to last six months or less) **and** minor.

☐ A person is not able to bring a failure to accommodate claim **if** the individual is covered only under the "regarded as" definition of "disability."

*Note: Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability.* For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.