UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANNA SURMAN, by and through the Administrators of her Estate, GREGORY SURMAN and KAREN CONNOLLY; and KAREN CONNOLLY, in her individual capacity,<br><br>  Plaintiffs,<br><br>   -against-<br><br>MONGODB, INC,<br><br>  Defendant. | Case No. 1:26-cv-00166-JLR |

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS COUNTS 7-9 AND TO COMPEL COUNTS 1-6 TO ARBITRATION**

---

Rebecca Goldstein, Esq.
Matthew D. Holmes, Esq.
Littler Mendelson P.C.
900 Third Avenue – 8th Floor
New York, NY 10022
212.583.9600
Attorneys for Defendant

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT.................................................................................................. 1

STATEMENT OF RELEVANT FACTS ................................................................................... 2

ARGUMENT ............................................................................................................................. 5

    A.    COUNTS 7 AND 8 ARE BARRED BY THE WORKERS'
        COMPENSATION LAW. ................................................................................ 5

    B.    THE NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS CLAIM
        SHOULD BE DISMISSED PURSUANT TO RULE 12(B)(6). ........................... 8

    C.    THE REMAINING CLAIMS SHOULD BE COMPELLED TO
        ARBITRATION. ............................................................................................ 10

        1.    The FAA Governs the Arbitration Agreement ....................................... 10

        2.    The Arbitration Agreement Is Valid and Enforceable and Covers
            the Subject Matter of Counts 1-6 ............................................................ 12

            a.    The Parties Entered Into a Valid Arbitration Agreement............. 13

            b.    Plaintiffs' Claims Fall Within the Scope of the Arbitration
                Agreement.................................................................................... 14

            c.    Plaintiffs' Statutory Claims Are Arbitrable ................................ 15

            d.    All Non-Arbitrable Claims are Subject to Dismissal................... 16

            e.    The Court Should Dismiss Counts 1-6 Without Prejudice
                To Plaintiffs' Ability to Pursue Such Claims in Arbitration........ 16

CONCLUSION.......................................................................................................................... 16

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ahing v. Lehman Bros.*,
No. 94 Civ. 9027 (CSH), 2000 U.S. Dist. LEXIS 5175 (S.D.N.Y. Apr. 20,
2000) ...................................................................................................................14

*Alfaro v. Wal-Mart Stores, Inc.*,
210 F.3d 111 (2d Cir. 2000)...................................................................................9

*Am. Int'l Specialty Lines Ins. Co. v. AlliedCapital Corp.*,
35 N.Y.3d 64 (2020) .............................................................................................11

*Arakawa v. Japan Network Grp.*,
56 F. Supp. 2d 349 (S.D.N.Y. 1999).....................................................................15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)............................................................................................7, 8

*B.B. v. The New Sch.*,
No. 17 Civ. 8347 (AT), 2018 U.S. Dist. LEXIS 80068 (S.D.N.Y. Apr. 30,
2018) .....................................................................................................................7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)................................................................................................8

*Brion v. United Bldg. Mgmt. Corp.*,
No. 25-CV-3593 (MMG/JW), 2026 U.S. Dist. LEXIS 160002 (S.D.N.Y. Jan.
28, 2026) ..............................................................................................................14

*Brown v. St. Paul Travelers Cos., Inc.*,
331 F. App'x 68 (2d Cir. 2009) ............................................................................16

*Citizens Bank v. Alafabco*,
539 U.S. 52 (2003)................................................................................................10

*Clark v. Elam Sand and Gravel, Inc.*,
777 N.Y.S.2d 624 (Sup. Ct. Ontario Cnty. 2004).................................................9

*Daitz v. ATR N.Y. LH, Inc.*,
No. 25-CV-01591 (JMA) (LGD), 2025 U.S. Dist. LEXIS 189108 (E.D.N.Y.
Sept. 25, 2025) .....................................................................................................13

*De Lemos v. All. Ground Int'l, LLC*,
    24-CV-8285 (AMD) (CHK), 2026 U.S. Dist. LEXIS 19046 (E.D.N.Y. Jan.
    30, 2026) .......................................................................................................................12, 13

*Dean Witter Reynolds, Inc. v. Byrd*,
    470 U.S. 213 (1985)..................................................................................................12

*Duffy v. WM Resources, Inc.*,
    No. 24-CV-6486-FPG, 2025 U.S. Dist. LEXIS 8796 (W.D.N.Y. Jan 16, 2025) ......................5

*Feroce v. Bloomingdale's Inc.*,
    No. 12-CV-5014(SJF) (GRB), 2014 U.S. Dist. LEXIS 9119 (E.D.N.Y. Jan.
    23, 2014) ...................................................................................................................10

*First Options of Chi., Inc. v. Kaplan*,
    514 U.S. 938 (1995)..................................................................................................13

*Fleming v. J. Crew*,
    No. 16-CV-2663-GHW, 2016 U.S. Dist. LEXIS 146471 (S.D.N.Y. Oct. 21,
    2016) .......................................................................................................................14

*Forjan v. Leprino Foods Co.*,
    No. 3:04-CV-00878, 2005 U.S. Dist. LEXIS 38231 (N.D.N.Y. Dec. 28, 2005)...................6, 8

*Genesco, Inc. v. T. Kakiuchi & Co.*,
    815 F.2d 840 (2d Cir. 1987).......................................................................................12

*Gilbert v. Indeed, Inc.*,
    513 F. Supp. 3d 374 (S.D.N.Y. 2021).............................................................................11, 15

*Hartford Acc. & Indem. Co. v. Swiss Reinsurance Am. Corp.*,
    246 F.3d. 219 (2d Cir. 2001)......................................................................................12

*Hirsch v. Arthur Anderson & Co.*,
    72 F.3d 1085 (2d Cir. 1995)........................................................................................7

*Kujawski v. Liberty Mut. Insurance Co.*,
    No. 19-CV-603S, 2021 U.S Dist. LEXIS 120332 (W.D.N.Y. June 28, 2021).........................5

*Litvinov v. UnitedHealth Group, Inc.*,
    No. 13 Civ. 8541 (KBF), 2014 U.S. Dist. LEXIS 36237 (S.D.N.Y. Mar. 11,
    2014) .......................................................................................................................16

*Mortimer v. City of New York*,
    No. 15 Civ. 7186 (KPF), 2018 U.S. Dist. LEXIS 53492 (S.D.N.Y. Mar. 29,
    2018) .......................................................................................................................9

iv

*Nayal v. HIP Network Servs. IPA, Inc.*,
　620 F. Supp. 2d 566 (S.D.N.Y. 2009)..................................................................................13

*Okuma v. Crotona Park West Hous. Dev. Fund Corp.*,
　No. 14 Civ. 239 (DAB), 2014 U.S. Dist. LEXIS 143444 (S.D.N.Y. Sept. 29,
　2014) ...................................................................................................................................15

*Preston v. Ferrer*,
　552 U.S. 346 (2008)...........................................................................................................11

*Rajjak v. McFrank & Williams*,
　No. 01 Civ. 0493 (LAP), 2001 U.S. Dist. LEXIS 9764 (S.D.N.Y. July 10,
　2021) ...................................................................................................................................14

*Reinhard v. Harsco Corp.*,
　No. 05-CV-738S, 2006 U.S. Dist. LEXIS 69022 (W.D.N.Y. Sept. 23, 2006).....................6, 7

*Robinson v. Entm't One US LP*,
　No. 14-cv-1203 (AJN), 2015 U.S. Dist. LEXIS 71117 (S.D.N.Y. June 2,
　2015) ...................................................................................................................................16

*Rodriguez v. Four Seasons Hotels, Ltd.*,
　No. 09 Civ. 2864 (DLC), 2009 U.S. Dist. LEXIS 59683 (S.D.N.Y. July 10,
　2009) ...................................................................................................................................15

*Rosenberg v. Frontline Asset Strategies, LLC*,
　556 F. Supp. 3d 157 (E.D.N.Y. 2021) ...................................................................................2

*Safra Sec., LLC v. Gonzalez*,
　764 F. App'x 125 (2d Cir. 2019) .........................................................................................16

*Southland Corp. v. Keating*,
　465 U.S. 1 (1984).................................................................................................................11

*Stafa v. Innovative Facility Services*,
　No. 1:23-cv-10509 (JLR), 2025 U.S. Dist. LEXIS 1181 (S.D.N.Y. Jan. 3,
　2025) ...................................................................................................................................15

*Stewart v. Paul Hastings, Janofsky & Walker, LLP*,
　201 F. Supp. 2d 291 (S.D.N.Y. 2002)..................................................................................15

*Thomas v. Pub. Storage, Inc.*,
　957 F. Supp. 2d 496 (S.D.N.Y. 2013)..................................................................................13

*Thurber v. Finn Academy*,
　No. 6:20-CV-06152 EAW, 2021 U.S. Dist. LEXIS 46113 (W.D.N.Y. Mar. 11,
　2021) .....................................................................................................................................9

v

*EEOC v. Waffle House*,
　534 U.S. 279, 289 (2002)..................................................................................10

*Whyte v. Wework Companies, Inc.*,
　No. 20-cv-1800(CM), 2020 U.S. Dist. LEXIS 136569 (S.D.N.Y., June 31,
　2020) ...............................................................................................................11

*WorldCrisa Corp. v. Armstrong*,
　129 F.3d 71 (2d Cir. 1997)..............................................................................13

*Xue Wen v. Am. Bus. Inst. Corp.*,
　No. 156533/2018, 2020 NY Slip Op 31472(U) (Sup. Ct. N.Y. Ctny. May 20,
　2020) ...............................................................................................................11

**Statutes**

Americans with Disabilities Act ..............................................................................15

Federal Arbitration Act, 9 U.S.C. § 1, *et seq* .........................................................10

Federal Arbitration Act, 9 U.S.C. § 2 ................................................................10, 11

Federal Arbitration Act, 9 U.S.C. §§ 3, 4 ...............................................................13

New York City Human Rights Law..........................................................................15

New York State Human Rights Law .........................................................................15

New York Workers' Compensation Law ....................................................................5

**Other Authorities**

CPLR § 7501............................................................................................................11

CPLR § 7515............................................................................................................11

CPLR § 7515(b)(i) ...................................................................................................11

Fed. R. Civ. P. 8(a)(2)................................................................................................8

Fed. R. Civ. P. 12(b)(6).........................................................................................2, 8

U.S. CONST. Art. VI, cl. 2.......................................................................................11

## PRELIMINARY STATEMENT

No parent should have to endure the profound loss and heartbreak that Mr. Gregory Surman and Ms. Karen Connolly have suffered. MongoDB, Inc. understands their desire to seek answers in the wake of this tragic circumstance. However, this lawsuit attempts to impose liability on MongoDB where the law does not permit it. The claims asserted against MongoDB are either barred as a matter of law or must be resolved through binding arbitration per the arbitration agreement that Ms. Surman knowingly executed as a condition of her employment with MongoDB.

First, Plaintiffs have improperly sought relief in this Court for Ms. Surman's death and conscious pain and suffering. Such relief, if it exists, lies within the New York State Workers' Compensation system. Additionally, Ms. Connolly's claim for negligent infliction of emotional distress is legally and factually insufficient as the requisite duty of care does not exist and she thus cannot allege that MongoDB breached said duty.

Second, Plaintiffs' discrimination and accommodation claims asserted under federal, state, and local statutes are the subject of a valid and enforceable arbitration agreement signed by Ms. Surman in connection with her employment with MongoDB, which is also binding on her parents.

For the reasons set forth in more detail below, Defendant MongoDB respectfully requests that Plaintiffs' wrongful death claim (Count 7),[1] conscious pain and suffering claim

---

[1] "Counts" refer to the Counts asserted in Plaintiffs' Complaint, ECF No. 1-1, which was originally filed with the New York State Supreme Court and subsequently removed on January 8, 2026. ECF No. 1.

1

(Count 8), and Ms. Connolly's negligent infliction of emotional distress claim (Count 9) be dismissed, and that Plaintiffs' discrimination and accommodation claims (Counts 1-6) be dismissed and compelled to arbitration.

## STATEMENT OF RELEVANT FACTS[2]

MongoDB is a database software company incorporated in Delaware and based in New York. ECF No. 1-1, ¶17. MongoDB hired Ms. Surman in August 2021 as a Technical Program Manager. *Id.*, ¶3.

As part of the onboarding process, on July 2, 2021, Ms. Surman knowingly and voluntarily agreed to abide by the terms of MongoDB's Employee Invention Assignment, Confidentiality and Arbitration Agreement ("Arbitration Agreement"). *See* February 13, 2026 Declaration of Preete Bhatia ("Bhatia Dec.") submitted herewith, ¶4, **Exhibit A**. The Arbitration Agreement states, in relevant part:

> The parties agree to submit to mandatory binding arbitration **any and all claims arising out of or related to my employment with the Company and the termination thereof**, including, but not limited to, claims for unpaid wages, wrongful termination, torts, stock or stock options or other ownership interest in the Company, and/or discrimination based upon any federal, state or local ordinance, statute, regulation or constitutional provision … THE PARTIES HEREBY WAIVE ANY RIGHTS THEY MAY HAVE TO TRIAL BY JURY IN REGARD TO SUCH CLAIMS…

*See* Bhatia Dec., **Ex. A**, p. 5 (emphasis added).

The Arbitration Agreement also provides that the rights and obligations of MongoDB and

---

[2] These facts are drawn from the Complaint and are deemed true for purposes of this motion only. *Rosenberg v. Frontline Asset Strategies, LLC*, 556 F. Supp. 3d 157, 160 (E.D.N.Y. 2021) (in analyzing a Rule 12(b)(6) motion to dismiss, the Court must "accept as true all facts alleged in the complaint") (internal citations and quotations omitted).

Ms. Surman "will bind and benefit the parties and their respective successors, heirs, executors, administrators, and legal representatives." *See id*., **Ex. A**, p. 6. Ms. Surman explicitly and voluntarily agreed to the Arbitration Agreement as evidenced by her electronic signature, and as Ms. Connolly and Mr. Surman are administrators of Ms. Surman's estate (ECF No. 1-1, ¶9), they are bound by the Arbitration Agreement.

The Complaint alleges that Ms. Surman suffered from a disability in the form of mental health struggles, including anxiety and depression. *Id*., ¶22. Ms. Surman took a leave of absence in April 2024. *Id*. The Complaint explains that "[w]hile she was on leave, Annie's disability was debilitating and substantially limited multiple major life activities. Annie frequently sent messages to her parents about her inability to leave her bed for days and her desire to die." *Id*., ¶23. Plaintiffs further explain that while on leave, "[b]ecause of [Ms. Surman's] deteriorated mental state, she was often unable to complete basic daily functions like getting out of bed and brushing her teeth or attending social gatherings." *Id*., ¶24. While on leave, Plaintiffs claim that "Annie sought out and tried different treatment plans and lifestyle changes that would allow her to ultimately recover and return to work," *id*., ¶25, and that she had "numerous exchanges" with MongoDB and its representatives where she allegedly communicated her need to remain on leave due to her health struggles, *id*., ¶26. According to the Complaint, MongoDB extended Ms. Surman's leave until July 31, 2024, and in fact MongoDB's representative told her that he "hope[s] that August will be a much better month!" and offered to assist with her transition to a long-term disability leave. *Id*., ¶¶27-30 and 38-40. Per the Complaint, after her leave extensions expired, MongoDB's third party leave administrator confirmed that Ms. Surman was able to return to work. *Id*., ¶¶38-39. MongoDB subsequently informed Ms. Surman that she had to return to work by August 8, 2024 or her employment would be terminated. *Id*., ¶40.

3

The Complaint alleges that on August 6, 2024, Ms. Surman requested a delay of her employment termination and an extension of her accommodation of unpaid leave to allow her to continue ketamine treatments.  *Id.*, ¶¶35-36, 48.  Per the Complaint, although Ms. Surman was previously resistant to ketamine treatment, her parents convinced her to start this treatment on August 6 to treat her "severe treatment-resistant depression."  *Id.*, ¶¶34-36.  Plaintiffs also assert that Ms. Surman informed MongoDB that she could not see her healthcare provider until the week of August 19, 2024, and that Ms. Surman asked MongoDB to engage in discussions with her about alternative accommodations after she consulted with her doctor.  *Id.*, ¶51.  Plaintiffs then allege that MongoDB rejected her request, and on August 7, 2024, told her that she would be terminated if she did not return the work the following day.  *Id.*, ¶53.  Plaintiffs explain that Ms. Surman received her second ketamine treatment on August 8, 2024, and that on that same day, her employment was terminated.  *Id.*, ¶¶60-61.

The Complaint alleges that Ms. Surman continued to suffer a decline in well-being following the termination of her employment.  *Id.*, ¶60-73.  Making matters allegedly worse was the fact that MongoDB told Mr. Surman and Ms. Connolly that Ms. Surman would need to elect and pay for COBRA coverage by August 19, 2024.  *Id.*, ¶75.

On August 8, 2024, Ms. Surman was admitted to the hospital and subsequently released.  *Id.* ¶¶71-77.  She then learned that MongoDB had laid off a number of employees and told Mr. Surman and Ms. Connolly that she believed MongoDB rushed to fire her before planned layoffs to avoid paying her severance.  *Id.*, ¶78.

Approximately five weeks later, Ms. Surman "isolated herself, refusing to see her family and most of her friends."  *Id.*, ¶79.  Then, on September 13, 2024, Ms. Surman tragically took her own life.  *Id.*, ¶81-86.  Plaintiffs now allege that but for the termination of Ms. Surman's

employment, Ms. Surman's death would not have occurred.  *Id*., ¶91.

## ARGUMENT

### A.    COUNTS 7 AND 8 ARE BARRED BY THE WORKERS' COMPENSATION LAW.

Counts 7 (wrongful death claim) and 8 (conscious pain and suffering) are premised on the theory that Ms. Surman's death was caused by actions arising out of her employment.  As Plaintiffs claim that Ms. Surman's suicide and alleged conscious pain and suffering were caused by MongoDB's actions, Plaintiffs' remedy, if any exists, lies within the New York State workers' compensation system.

The New York Workers' Compensation Law "precludes an employee's tort action against [her] employer for injuries arising from [her] employment." *Kujawski v. Liberty Mut. Insurance Co.*, No. 19-CV-603S, 2021 U.S Dist. LEXIS 120332, at *16 (W.D.N.Y. June 28, 2021); *Duffy v. WM Resources, Inc.*, No. 24-CV-6486-FPG, 2025 U.S. Dist. LEXIS 8796, at *7 (W.D.N.Y. Jan 16, 2025).  In relevant part, Section 11 of the Workers' Compensation Law states that "[t]he liability of an employer [through workers' compensation] . . . shall be exclusive and in place of any other liability whatsoever, to such employee, his or her personal representatives, spouse, parents, dependents, distributees, or any person otherwise entitled to recover damages, contribution or indemnity, at common law or otherwise . . .".  Here, Counts 7 and 8 relate to injuries allegedly arising from Ms. Surman's employment with MongoDB.  ECF No. 1-1, ¶¶165, 172.  MongoDB has also procured workers' compensation coverage.  *See* Preete Dec., ¶¶3, 5.  As such, Counts 7 and 8 are barred by the exclusive remedy provisions of the Workers' Compensation Law, and the Court should dismiss the same.[3]

---

[3] If the Court does not dismiss Counts 7 and 8, it should refer such claims to arbitration as the

There is a narrow "intentional injury" exception to the Workers' Compensation Law exclusivity rule.  *Reinhard v. Harsco Corp.*, No. 05-CV-738S, 2006 U.S. Dist. LEXIS 69022, at *13-14 (W.D.N.Y. Sept. 23, 2006) (other citation omitted).  To invoke said exception, the injury must be the product of "an intentional or deliberate act by the employer directed at causing harm to [a] particular employee." *Forjan v. Leprino Foods Co.*, No. 3:04-CV-00878, 2005 U.S. Dist. LEXIS 38231, at *5 (N.D.N.Y. Dec. 28, 2005) (other citation omitted).  Said differently, courts have noted that for conduct to be intentional it must be taken:

> with the desire to bring about the consequences of the act.  A mere knowledge and appreciation of a risk is not the same as the intent to cause injury … A result is intended if the act is done with the purpose of accomplishing such a result or with knowledge that to a substantial certainty such a result will ensue.

*Id*. at * 6 (citing cases).

In addition to the above, courts have consistently held that defendants "intentionally ignoring" alleged hazards is not enough to bring the case within the "intentional injury" exception.  *Id.* (internal citations omitted).

In a strikingly similar case, the plaintiff was the administratrix of her late husband's estate, who alleged that her husband's former employer wrongfully terminated him, which caused him to take his own life.  *Reinard*, 2006 U.S. Dist. LEXIS 69022 at *1.  In evaluating a motion to dismiss the plaintiff's wrongful death claim, the Court considered the workers' compensation exclusivity rules and noted that "[i]t cannot be said, based on the allegations in the Amended Complaint, that [d]efendant terminated Mr. Reinard and ushered him out of the hospital **with the intention or**

---

Arbitration Agreement covers "any and all claims" relating to Mr. Surman's employment or the termination thereof.  Preete Dec., **Ex. A**, p. 5.

**desire to bring about his suicide**." *Id*. at \*13 (emphasis added).  Without the desire to bring about his suicide, the Court dismissed the plaintiff's wrongful death claim and determined that it did not fall within the "intentional injury" exception to the Workers' Compensation Law.  *Id*.

In this case, there is no evidence that Plaintiffs can point to that would establish the "intentional injury" exception to the Workers' Compensation exclusivity rule.  Nowhere in the Complaint is there any suggestion that MongoDB acted with the intention or desire to bring about Ms. Surman's suicide.  Indeed, Plaintiffs admit that MongoDB permitted Ms. Surman to extend her leave before there was any discussion about her returning to work.  ECF No. 1-1, ¶¶22, 40.  Further, Plaintiffs assert that Ms. Surman believed the reason she was terminated was to avoid paying her severance in the impending layoffs.  *Id.*, ¶78.[4]  Where, like here, the Complaint itself contains allegations making a claim implausible, such claim will not survive dismissal.  *B.B. v. The New Sch.,* No. 17 Civ. 8347 (AT), 2018 U.S. Dist. LEXIS 80068, at \*16 (S.D.N.Y. Apr. 30, 2018); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (Court cannot "draw the reasonable inference that the defendant is liable for the misconduct alleged" when conflicting information is presented by plaintiff in the pleading); *Hirsch v. Arthur Anderson & Co.,* 72 F.3d 1085, 1095 (2d Cir. 1995) (affirming dismissal where "attenuated allegations" supporting a claim were "contradicted . . . by more specific allegations in the Complaint").

Further, the Complaint makes clear that Ms. Surman's suicidal ideations started while she was on a leave of absence and well before the alleged discrimination.  ECF No. 1-1, ¶¶22-24, 36.  While Plaintiffs might allege that they put MongoDB on notice regarding Ms. Surman's desire to end her life (which is disputed), any alleged failure to take such information into account is legally

---

[4] Although Defendant disputes this, for purpose of this motion this allegation should be accepted as true. *See* fn. 2.

insufficient to overcome the workers' compensation exclusivity provisions. *See Forjan*, 2005 U.S. Dist. LEXIS 38231, at *6.

Given that the Complaint fails to establish the "intentional injury" exception to the Workers' Compensation Law, Counts 7 and 8 are barred by the exclusive remedy provisions of said law and thus should be dismissed with prejudice.

**B.     THE NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS CLAIM SHOULD BE DISMISSED PURSUANT TO RULE 12(B)(6).**

Pursuant to Fed. R. Civ. P. 12(b)(6), Ms. Connolly's negligent infliction of emotional distress ("NIED") claim (Count 9) should be dismissed as Ms. Connelly does not, because she cannot, plead such a claim.

The Federal Rules of Civil Procedure require a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint that offers only "labels and conclusions," "a formulaic recitation of the elements of a cause of action," and/or "naked assertion[s]" devoid of "further factual enhancement" is insufficient. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 557 (2007); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). To withstand a Rule 12(b)(6) motion, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The plausibility standard requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" or the "sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Rather, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations must be sufficient to "nudge[] [the Plaintiff's] claims across the line from conceivable to plausible." *Id.* at 570. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting

8

*Twombly*, 550 U.S. at 557).  In other words, "'[t]o state a plausible claim, the complaint's factual allegations must be enough to raise a right to relief above the speculative level.'"  *Thurber v. Finn Academy*, No. 6:20-CV-06152 EAW, 2021 U.S. Dist. LEXIS 46113, at *9 (W.D.N.Y. Mar. 11, 2021) (internal quotations omitted).

"A plaintiff may recover for NIED by showing 'a breach of a duty of care resulting directly in emotional harm . . . even though no physical injury occurred,' as long as 'the mental injury [is] a direct, rather than a consequential, result of the breach, and the claim . . . possess[es] some guarantee of genuineness.'"  *Mortimer v. City of New York*, No. 15 Civ. 7186 (KPF), 2018 U.S. Dist. LEXIS 53492, at *79 (S.D.N.Y. Mar. 29, 2018) (internal citations omitted) (explaining that "the latter element requires a specific, recognized type of negligence that obviously has the propensity to cause extreme emotional distress, *such as the mishandling of a corpse or the transmission of false information that a parent or child had died.*") (internal citations and quotations omitted, emphasis applied).  In this case, there can be no recovery for negligent infliction of emotional distress because the Complaint does not, and cannot, allege that MongoDB owed Ms. Connolly a duty of care.  *See Clark v. Elam Sand and Gravel, Inc.*, 777 N.Y.S.2d 624, 626 (Sup. Ct. Ontario Cnty. 2004) (dismissing NIED claim when Complaint lacked allegations "that defendant owed a duty to him and that a breach of that duty directly resulted in mental or emotional harm").  As recognized by the Second Circuit, "the existence of a duty is [] a *sine qua non* of a negligence claim;" in other words, in "the absence of a duty, as a matter of law, no liability can ensue."  *Alfaro v. Wal-Mart Stores, Inc.*, 210 F.3d 111, 114 (2d Cir. 2000); *see Clark*, 777 N.Y.S.2d at 626 (dismissing NIED claim where plaintiff identified no common law duty owed to him).  The Complaint does not allege that MongoDB owed Ms. Connolly a duty of care and Count 9 should thus be dismissed, with prejudice.

**C.    THE REMAINING CLAIMS SHOULD BE COMPELLED TO ARBITRATION.**

**1.    The FAA Governs the Arbitration Agreement**

Arbitration clauses like the one at issue here are governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*;*EEOC v. Waffle House*, 534 U.S. 279, 289 (2002) ("[e]mployment contracts, except for those covering workers engaged in transportation, are covered by the FAA."); *Feroce v. Bloomingdale's Inc.*, No. 12-CV-5014(SJF) (GRB), 2014 U.S. Dist. LEXIS 9119, at *13 (E.D.N.Y. Jan. 23, 2014) ("[w]here a valid arbitration agreement exists, the FAA requires that federal statutory claims arising from an employment relationship . . . be subject to mandatory arbitration.").  The FAA provides:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.  "The term 'involving commerce' in the FAA [is] the functional equivalent of the more familiar term 'affecting commerce'—words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power."  *Citizens Bank v. Alafabco,* 539 U.S.52, 56 (2003).  This requirement is broadly construed, consistent with the full reach of the Commerce Clause, to apply the FAA even if there is no "'specific effect upon interstate commerce if in the aggregate the economic activity in question would represent 'a general practice . . . subject to federal control.'"  *Id.* at 56-57.  Here, there is no dispute that the Arbitration Agreement was part of an employment contract.  Preete Dec., **Ex. A**.  In addition, MongoDB regularly sells goods that are transported across state lines and also advertises job opportunities nationally.  *Id*., ⁋6.  Accordingly, the Arbitration Agreement is governed by the FAA.

Because the FAA governs the Arbitration Agreement, the Supremacy Clause of the U.S. Constitution (U.S. CONST. Art. VI, cl. 2) requires that Plaintiffs' claims arising out of Ms. Surman's employment be arbitrated notwithstanding any contrary state law, and the FAA preempts all otherwise applicable or conflicting state laws.[5]    *Preston v. Ferrer*, 552 U.S. 346, 356-57 (2008).  The FAA "create[d] a body of federal substantive law," which is "applicable in state and federal courts."  *Southland Corp. v. Keating*, 465 U.S. 1, 12 (1984) ("[i]n enacting Section 2 of the [FAA],Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration.").  Indeed, the Act "leaves no place for the

---

[5] To the extent Plaintiffs argue that CPLR § 7515 prohibits mandatory arbitration agreements, this argument is unavailing.  CPLR § 7515 states, in relevant part, "***[e]xcept where inconsistent with federal law***, no written contract, entered into on or after the effective date of this section shall contain a [mandatory arbitration provision]."  *See* CPLR § 7515(b)(i) (emphasis added); *see Gilbert v. Indeed, Inc.*, 513 F. Supp. 3d 374, 395-400 (S.D.N.Y. 2021) (finding New York State cannot exempt federal and state employment discrimination claims from mandatory arbitration under the FAA); *Whyte v. Wework Companies, Inc.*, No. 20-cv-1800(CM), 2020 U.S. Dist. LEXIS 136569, at *8 (S.D.N.Y., June 31, 2020) (same).  Even if the FAA did not apply, and it clearly does, the Arbitration Agreement is nonetheless enforceable under New York law.  *See* CPLR § 7501; *Am. Int'l Specialty Lines Ins. Co. v. AlliedCapital Corp.*, 35 N.Y.3d 64, 70 (2020) (reiterating "New York's long and strong public policy favoring arbitration"); *Xue Wen v. Am. Bus. Inst. Corp.*, No. 156533/2018, 2020 NY Slip Op 31472(U) (Sup. Ct. N.Y. Ctny. May 20, 2020) (enforcing arbitration provision).

exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds,Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

### 2. The Arbitration Agreement Is Valid and Enforceable and Covers the Subject Matter of Counts 1-6

The determination of whether a dispute is arbitrable under the FAA consists of two prongs: "(1) whether there exists a valid agreement to arbitrate at all under the contract in question…and if so, (2) whether the particular dispute sought to be arbitrated falls within the scope of the arbitration agreement." *Hartford Acc. & Indem. Co. v. Swiss Reinsurance Am. Corp.,* 246 F.3d. 219, 226 (2d Cir. 2001). To find a valid agreement to arbitrate, a court must apply the "generally accepted principles of contract law." *Genesco, Inc. v. T. Kakiuchi & Co.,* 815 F.2d 840, 845 (2d Cir. 1987).

In resolving a motion to compel arbitration, the Court considers: "(1) whether the parties agreed to arbitrate; (2) the 'scope' of the arbitration agreement; (3) whether the plaintiff's federal statutory claims are 'nonarbitrable'; and (4) if some, but not all of the claims in the case are arbitrable, whether to stay the balance of the proceedings pending arbitration." *De Lemos v. All. Ground Int'l, LLC*, 24-CV-8285 (AMD) (CHK), 2026 U.S. Dist. LEXIS 19046, *7 (E.D.N.Y. Jan. 30, 2026) (citing *Abdullayeva v. Attending Homecare Servs. LLC*, 928 F.3d 218, 221-22 (2d Cir. 2019)).

In this case, both the FAA and the Second Circuit's criteria for arbitrability are easily met because: (1) there can be no doubt that Ms. Surman and MongoDB executed the Arbitration Agreement; (2) the Arbitration Agreement explicitly covers all claims arising out of Ms. Surman's employment with MongoDB, including claims of discrimination based on federal, state, or local statutes – which are exactly what Counts 1-6 claim; and (3) the non-arbitrable

12

claims are subject to dismissal.  Therefore, the Court should dismiss or stay Counts 1-6 in favor of arbitration.  *See* 9 U.S.C. §§ 3, 4; *see also WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 74 (2d Cir. 1997) (district court "must stay proceedings if satisfied that the parties have agreed in writing to arbitrate an issue or issues underlying the district court proceeding.").

<b>a.        The Parties Entered Into a Valid Arbitration Agreement</b>

"When deciding whether the parties agreed to arbitrate a certain matter," courts generally "should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).  Plaintiff's claims must be referred to arbitration because the Arbitration Agreement is a binding agreement under statelaw principles. *Thomas v. Pub. Storage, Inc.*, 957 F. Supp. 2d 496, 499 (S.D.N.Y. 2013) ("[i]n determining whether parties have agreed to arbitrate, courts apply generally accepted principles ofcontract law.") (internal citations omitted).

Ms. Surman affirmatively, expressly and unequivocally agreed, with her electronic signature, to arbitrate all claims arising out of her employment or the termination thereof, including claims of discrimination.  Preete Dec., **Ex. A**.  The terms of the Arbitration Agreement make clear that Mr. Surman and Ms. Connolly are bound by the Arbitration Agreement. *Id.,* p. 6. *See Daitz v. ATR N.Y. LH, Inc.*, No. 25-CV-01591 (JMA) (LGD), 2025 U.S. Dist. LEXIS 189108, at *10-11 (E.D.N.Y. Sept. 25, 2025) (compelling arbitration of claims brought by an estate of the deceased who signed an arbitration agreement).  Under New York law, even "take-it-or-leave-it" arbitration agreements, presented and signed digitally, are enforceable. *See Nayal v. HIP Network Servs. IPA, Inc.*, 620 F. Supp. 2d 566, 571-72 (S.D.N.Y. 2009).  Therefore, it cannot be disputed that there was a valid agreement to arbitrate.

13

### b.  Plaintiffs' Claims Fall Within the Scope of the Arbitration Agreement

The FAA "is an expression of a strong federal policy favoring arbitration as an alternative means of dispute resolution." *Fleming v. J. Crew*, No. 16-CV-2663-GHW, 2016 U.S. Dist. LEXIS 146471 at *5 (S.D.N.Y. Oct. 21, 2016).  "[U]nder the FAA, 'any doubts concerning the scope of arbitrable issuesshould be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.'"  *Brion v. United Bldg. Mgmt. Corp.*, 25-CV-3593 (MMG/JW), 2026 U.S. Dist. LEXIS 160002, at *9 (S.D.N.Y. Jan. 28, 2026) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).

There can be no dispute that Ms. Surman agreed in writing to arbitrate Counts 1-6 of the Complaint, which consist of disability discrimination and failure to accommodate claims asserted under federal, state, and local laws.  The Arbitration Agreement explicitly provides that the parties agreed to arbitrate "any and all claims arising out of or related to [Ms. Surman's] employment with [MongoDB] and the termination thereof, including, but not limited to, claims for unpaid wages, wrongful termination, torts, stock or stock options or other ownership interest in [MongoDB], and/or discrimination based upon any federal, state or local ordinance, statute, regulation or constitutional provision."  Preete Dec., **Ex. A**, p. 5.  Indeed, in this regard the Complaint is based entirely on Ms. Surman's employment and separation from employment with MongoDB.

An arbitration clause which by its terms covers any dispute or claim between the employer and employee necessarily encompasses claims of discrimination.  *Rajjak v. McFrank & Williams*, No. 01 Civ. 0493 (LAP), 2001 U.S. Dist. LEXIS 9764, at *7 (S.D.N.Y. July 10, 2021) (arbitration clauses that cover employment-related disputes are construed broadly); *Ahing v. Lehman Bros.*, No. 94 Civ. 9027 (CSH), 2000 U.S. Dist. LEXIS 5175, at *2 (S.D.N.Y. Apr. 20, 2000) (granting

defendant's motion to compel arbitration of Title VII claim where arbitration clause at issue stated "I hereby agree that any controversy arising out of or in connection with my compensation, employment or termination of employment shall be submitted to arbitration"); *cf. Arakawa v. Japan Network Grp.*, 56 F. Supp. 2d 349, 352-353 (S.D.N.Y. 1999) (finding arbitration clause covering "any and all disputes and claims which arise out of or relate to [plaintiff's] employment . . . or to the termination of [plaintiff's] employment with or without cause" should be "interpreted broadly to cover any disputes arising out of the employment relationship").

As there can be no doubt that Counts 1-6 are based on activities that arose out of Ms. Surman's employment and termination of employment with MongoDB, Plaintiffs are bound by the valid Arbitration Agreement.

### c.    Plaintiffs' Statutory Claims Are Arbitrable

The third factor in the Second Circuit's analysis also is met here.    Specifically, Plaintiffs' claims under the Americans with Disabilities Act ("ADA"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL") are arbitrable. *See, e.g.*, *Gilbert v. Indeed, Inc.*, 513 F. Supp. 3d 374, 384 (S.D.N.Y. 2021) (finding claims brought under NYCHRL, NYSHRL and ADA, among other statutes, subject to arbitration); *Stewart v. Paul Hastings, Janofsky & Walker, LLP*, 201 F. Supp. 2d 291, 292-94 (S.D.N.Y. 2002) (compelling arbitration in FMLA, ADA, NYSHRL, and NYCHRL case); *Okuma v. Crotona Park West Hous. Dev. Fund Corp.*, No. 14 Civ. 239 (DAB), 2014 U.S. Dist. LEXIS 143444, at *13 (S.D.N.Y. Sept. 29, 2014) (granting motion to compel arbitration of plaintiff's complaint, including claims brought under NYSHRL and NYCHRL); *Rodriguez v. Four Seasons Hotels, Ltd.,* No. 09 Civ. 2864 (DLC), 2009 U.S. Dist. LEXIS 59683, at *9 (S.D.N.Y. July 10, 2009) ("Rodriguez's [Title VII, NYSHRL, and NYCHRL] claims are clearly within the scope of the arbitration clause, and as such must be submitted to arbitration")*; Stafa v. Innovative Facility Services*, No. 1:23-cv-10509 (JLR), 2025

15

U.S. Dist. LEXIS 1181, at *12-16 (S.D.N.Y. Jan. 3, 2025) (compelling arbitration of all discrimination claims relating to plaintiff's employment).

Accordingly, Counts 1-6 are arbitrable.

### d. All Non-Arbitrable Claims are Subject to Dismissal

The fourth part of the Second Circuit's inquiry, *i.e.,* whether non-arbitrable claims should be stayed pending arbitration, is inapplicable here, because those claims are subject to dismissal for the reasons set forth above.

### e. The Court Should Dismiss Counts 1-6 Without Prejudice To Plaintiffs' Ability to Pursue Such Claims in Arbitration

Courts in this Circuit consistently dismiss complaints that are subject to an arbitration agreement. *See, e.g., Brown v. St. Paul Travelers Cos., Inc.*, 331 F. App'x 68, 70 (2d Cir. 2009) ("Defendant's motion to dismiss [employee's] complaint and to compel arbitration was properly granted by the District Court"); *Litvinov v. UnitedHealth Group, Inc.*, No. 13 Civ. 8541 (KBF), 2014 U.S. Dist. LEXIS 36237, at *12 (S.D.N.Y. Mar. 11, 2014) (compelling arbitration and dismissing the complaint); *Robinson v. Entm't One US LP*, No. 14-cv-1203 (AJN), 2015 U.S. Dist. LEXIS 71117, at *18 (S.D.N.Y. June 2, 2015) (dismissing employment discrimination claims in favor of arbitration based upon the arbitration agreement); *Safra Sec., LLC v. Gonzalez,* 764 F. App'x 125 (2d Cir. 2019) (affirming the District Court's decision which compelled arbitration and dismissed the complaint).

Here, Counts 1-6 are subject to arbitration and, accordingly, this Court should dismiss the Complaint and compel Plaintiffs to pursue their remaining claims in arbitration.

### CONCLUSION

Based on the foregoing, Defendant respectfully requests that the Court dismiss Counts 7-9 of the Complaint and compel Counts 1-6 of the Complaint to arbitration, and order such other and

further relief as the Court deems just and proper.

Dated:  February 16, 2026
       New York, New York                         **LITTLER MENDELSON, P.C.**

By: */s/ Rebecca Goldstein*
       Rebecca Goldstein
       Matthew D. Holmes
       900 Third Avenue
       New York, New York 10022.3298
       Telephone: 212.583.9600
       Facsimile: 212.832.2719
       RGoldstein@littler.com
       MDHolmes@littler.com

       *Attorneys for Defendant*
       *MongoDB, Inc.*

## <u>CERTIFICATION OF COUNSEL PURSUANT TO LOCAL RULE 7.1(C)</u>

I, Rebecca Goldstein, hereby certify in accordance with Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rules") the foregoing memorandum of law contains 4,946 words (exclusive of the caption, table of contents, table of authorities, and signature block), and complies with the applicable word count limit set forth at Local Rule 7.1(c).

In accordance with Local Rule 7.1(c), I have relied upon the word processing system's word count function in preparing this certification.

/s/ *Rebecca Goldstein*
Rebecca Goldstein

18