**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| ANNA SURMAN, by and through the Administrators of her Estate, GREGORY SURMAN and KAREN CONNOLLY; and KAREN CONNOLLY, in her individual capacity,<br><br>     *Plaintiffs*,<br><br>v.<br><br><br>MONGODB, INC.<br><br>     *Defendant*. | **Case No. 1:26-cv-00166 (JLR)** |

## PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNTS 7-9 AND TO COMPEL COUNTS 1-6 TO ARBITRATION

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

STATEMENT OF FACTS ................................................................................................. 1

ARGUMENT ...................................................................................................................... 3

    A.    **Counts 7–9 Should Not Be Dismissed** ................................................................. 3

        *1.    Karen Connolly's Claim for Negligent Infliction of Emotional Distress (Count 9) Should Survive Dismissal* ................................................................................................. 3

        *2.    Plaintiffs' Claims for Wrongful Death and Conscious Pain and Suffering (Counts 7 & 8) Are Not Barred by Workers' Compensation Law* ............................................... 7

    B.    **None of Plaintiffs' Claims Should Be Compelled to Arbitration** ............................... 13

        *1.    The Arbitration Agreement is Ambiguous As to its Application to Annie's Heirs and Successors* .............................................................................................................. 14

        *2.    The Arbitration Agreement is Procedurally and Substantively Unconscionable Under New York Law* ........................................................................................................... 15

        *3.    There is No Basis to Stay Plaintiffs' Non-Arbitrable Claims Pending Arbitration* ...... 18

CONCLUSION .................................................................................................................. 20

## TABLE OF AUTHORITIES

**Cases**

*Abdullayeva v. Attending Homecare Servs. LLC*,
    928 F.3d 218 (2d Cir. 2019) ........................................................................................ 13

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...................................................................................................... 3

*Bartolone v. Jeckovich*,
    481 N.Y.S.2d 545 (N.Y. App. Div. 1984) ........................................................................ 12

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ...................................................................................................... 3

*Bovsun v. Sanperi*,
    61 N.Y.2d 219 (N.Y. 1984) ........................................................................................... 4

*Brennan v. Bally Total Fitness*,
    198 F. Supp. 2d 377 (S.D.N.Y. 2002) .................................................................... 16, 17, 18

*Cooper v. Anheuser-Busch, LLC*,
    553 F. Supp. 3d 83 (S.D.N.Y. 2021) ............................................................................... 13

*Cordius Tr. v. Kummerfeld*,
    No. 99 Civ. 3200(DLC), 2010 WL 234823 (S.D.N.Y. Jan. 21, 2010) .............................. 20

*Daitz v. ATR N.Y. LH, Inc.*,
    No. 25-CV-01591 (JMA) (LGD), 2025 WL 2733346 (E.D.N.Y. Sept. 25, 2025) ........... 17

*DeBlase v. Hill*,
    239 N.Y.S.3d 770 (N.Y. Sup. Ct. 2025) ........................................................................... 4

*Doe v. Trump Corp.*,
    No. 18 Civ. 9936 (LGS), 2020 WL 2538400 (S.D.N.Y. May 18, 2020) .......................... 19

*Dun Shipping Ltd. v. Amerada Hess Shipping Corp.*,
    234 F. Supp. 2d 291 (S.D.N.Y. 2002) ............................................................................. 18

*Faber v. Metro. Life Ins. Co.*,
    648 F.3d 98 (2d Cir. 2011) ....................................................................................... 3, 13

*Faith v. Khosrowshahi*,
    No. 21-CV-06913 (JMA) (JMW), 2023 WL 5278126 (E.D.N.Y. Aug. 16, 2023) .......... 17

*Forjan v. Leprino Foods Co.*,
    No. 3:04-cv-00878, 2005 WL 3555950 (N.D.N.Y. Dec. 28, 2005) ................................. 10

*Forjan v. Leprino Foods, Inc.*,
  209 Fed. App'x 8 (2d Cir. 2006) ...................................................................................... 10

*Granite Rock Co. v. Int'l Bhd. of Teamsters*,
  561 U.S. 287 (2010) ........................................................................................................ 13

*Greene v. Esplanade Venture P'ship*,
  36 N.Y.3d 513 (N.Y. 2021) ........................................................................................... 4, 5

*In re Engle v. Reale Const. Co.*,
  790 N.Y.S.2d 255 (N.Y. App. Div. 2005) .......................................................................... 9

*In re Grover v. State Ins. Fund*,
  85 N.Y.S.3d 239 (N.Y. App. Div. 2018) ............................................................................ 9

*In re Koerner v. Orangetown Police Dep't*,
  68 N.Y.2d 974 (N.Y. 1986) ................................................................................................ 9

*Jacobson v. Sassower*,
  66 N.Y.2d 991 (N.Y. 1985) .............................................................................................. 14

*Johnson v. New York State Police*,
  659 F. Supp. 3d 237 (N.D.N.Y. 2023) ............................................................................ 4, 6

*Kruger v. EMFT, LLC*,
  930 N.Y.S.2d 11 (N.Y. App. Div. 2011) ..................................................................... 7, 10

*Lavin v. Goldberg Bldg. Material Corp.*,
  87 N.Y.S.2d 90 (N.Y. App. Div. 1949) .............................................................................. 7

*Legacy Cap. 26, LLC v. Chaldean Enter., LLC*,
  No. 22-CV-05758 (LJL), 2023 WL 5530307 (S.D.N.Y. Aug. 28, 2023) ......................... 18

*Maddy v. Gen. Elec. Co.*,
  80 F. Supp. 3d 544 (D.N.J. 2015) ................................................................................... 14

*Marinos v. Brahaj*,
  237 N.Y.S.3d 627 (N.Y. App. Div. 2025) ....................................................................... 19

*Meyer v. Uber Techs., Inc.*,
  868 F.3d 66 (2d Cir. 2017) ............................................................................................. 15

*Molina v. Kaleo, Inc.*,
  363 F. Supp. 3d 344 (S.D.N.Y. 2019) ............................................................................. 15

*Nayal v. HIP Network Servs. IPA, Inc.*,
  620 F. Supp. 2d 566 (S.D.N.Y. 2009) ............................................................................. 16

iii

*Nicosia v. Amazon.com, Inc.*,
    834 F.3d 220 (2d Cir. 2016)..................................................................................... 13

*Ocasio v. City of Canandaigua*,
    513 F. Supp. 3d 310 (W.D.N.Y. 2021) ...................................................................... 8

*OMG Fid., Inc. v. Sirius Techs., Inc.*,
    239 F.R.D. 300 (N.D.N.Y. 2006) .............................................................................. 20

*Reinard v. Harsco Corp.*,
    No. 05-CV-738S, 2006 WL 2795639 (W.D.N.Y. Sept. 26, 2006).................................. 11

*Reinard v. Harsco Corp.*,
    No. 1:05-cv-00738-WMS (W.D.N.Y. Jan. 5, 2006)............................................................ 9

*Reinard v. Harsco Corp.*,
    No. 1:05-cv-00738-WMS, 2006 WL 1206332 (W.D.N.Y. Mar. 24, 2006) ..................... 11

*Schuster v. Brimstone Hill Corp.*,
    64 F. App'x 316 (2d Cir. 2003) ................................................................................. 12

*State v. Wolowitz*,
    468 N.Y.S.2d 131 (N.Y. App. Div. 1983) ................................................................. 16, 17

*T.I.D. v. Ortiz*,
    189 N.Y.S.3d 48 (N.Y. App. Div. 2023) ...................................................................... 5

*Van Ekris & Stoett, Inc. v. S.S. Rio Paraguay*,
    573 F. Supp. 1475 (S.D.N.Y. 1983)........................................................................... 14

*Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*,
    489 U.S. 468 (1989)................................................................................................... 19

*Ziccarelli v. NYU Hosps. Ctr.*,
    247 F. Supp. 3d 438 (S.D.N.Y. 2017)........................................................................ 8

**Statutes**

Americans with Disabilities Act ..................................................................................... 14

N.Y. EST. POWERS & TRUSTS LAW § 5-4.1 (McKinney 2003) ....................................... 19

N.Y. WORKERS' COMP. § 2(7) (McKinney 2022) .......................................................... 7

New York City Human Rights Law................................................................................. 14

New York State Human Rights Law ............................................................................... 14

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)...................................................................................................... 3

**INTRODUCTION**

MongoDB Inc. ("MongoDB" or the "Company") subjected Anna ("Annie") Surman to unlawful discrimination and wrongful termination, causing her to take her own life at the age of 28. Plaintiffs seek to hold MongoDB accountable for its actions in the hope that others will not suffer a similar fate. Defendant's arguments in support of its motion to dismiss Counts 7–9 and compel Counts 1–6 to arbitration are unavailing and amount to nothing more than an attempt to avoid judicial scrutiny of its unlawful conduct and limit its accountability.

First, Karen Connolly's claim for negligent infliction of emotional distress is properly pleaded and supported by the allegations in the complaint. Any factual questions that Defendant may have regarding these allegations require discovery to be resolved and are not proper grounds for dismissal.

Second, New York Workers' Compensation Law cannot apply because Annie's death and preceding conscious pain and suffering did not occur "in the course of" Annie's employment. Further, even if workers' compensation could apply, these claims would be exempted because Annie's injuries were caused by Defendant's intentional actions.

Finally, Annie's discrimination claims, brought on behalf of her estate by her parents, should not be compelled to arbitration. The arbitration clause, which must be construed against the Company, does not clearly apply to Annie's heirs or successors. And in the alternative, the arbitration agreement is unconscionable. Even if Counts 1–6 were referred to arbitration, Counts 7–9 would properly remain before this Court and proceed to litigation.

**STATEMENT OF FACTS**

Annie began working as a Technical Program Manager at MongoDB in August 2021. Dkt. 1-1, Complaint ("Compl."), ¶¶ 3, 21. In April 2024, after years of service to the Company, Annie

took medical leave due to mental health challenges related to work stress, including severe anxiety and depression. *Id.* ¶ 4. Although she faced significant obstacles associated with her disability, Annie diligently pursued treatment and sought to improve her condition enough to return to work. *Id.* ¶¶ 22–25.

Despite MongoDB initially indicating that it would extend Annie's leave through September 2024, on July 31, 2024, the Company abruptly demanded that Annie return to work by August 8, 2024, or be terminated. *Id.* ¶¶ 5, 26–32, 40–42. This whiplash occurred at an extremely delicate stage of Annie's recovery, just as she was beginning ketamine treatments. *Id.* ¶¶ 33–37. Annie's parents would later learn that on July 31, 2024, the very evening that MongoDB first threatened to fire her, Annie purchased a substance she would ultimately use to end her life. *Id.* ¶ 43. They would also learn that MongoDB *had already cancelled Annie's health insurance, effective July 31, 2024*—evincing a clear lack of intent to engage in the legally-required dialogue about reasonable accommodations for Annie's disability. *Id.* ¶¶ 44–47.

Annie and her parents begged MongoDB for a brief delay of her termination to allow Annie to consult with her medical team: they then rushed to gather supporting documentation. *Id.* ¶¶ 48–59. Despite their efforts, MongoDB fired Annie on August 8, 2024. *Id.* ¶ 60. Ms. Connolly's pleas to the Company for even a few days to get Annie stable before she was fired fell on deaf ears. *Id.* ¶¶ 62–63. Later that same night, Annie attempted suicide, citing her termination as the cause. *Id.* ¶¶ 66–67.

Ms. Connolly went to Annie's apartment on August 8 and directly witnessed Annie laying out the medications that she planned to use to die by suicide. Annie made clear that her actions were motivated by her inability to live with the humiliation of being fired. *Id.* ¶ 68. Ms. Connolly was acutely aware that if she could not dissuade Annie from attempting to ingest the poison, she

would need to physically fight Annie to keep her from ingesting it, risking her own physical safety and exposure to the same deadly substances. *Id.* ¶ 70. Ms. Connolly suffered, and continues to suffer, significant emotional distress associated with these events. *Id.* ¶¶ 98–99, 186, 188.

Despite her family's attempts to help her get further treatment, which was hindered by the Company's preemptive cancellation of Annie's health insurance the month before she was fired, *id.* ¶¶ 73–76, Annie died by suicide on September 13, 2024, *id.* ¶ 80. Annie's 9-1-1 call as the lethal drugs took effect, as well as statements from medical staff that Annie went into cardiac arrest and was briefly resuscitated before being pronounced dead, underline the immense pain and suffering that Annie endured in her final moments. *Id.* ¶¶ 81–82, 85–86.

## ARGUMENT

### A.     Counts 7–9 Should Not Be Dismissed

Plaintiffs have plausibly alleged facts sufficient to defeat dismissal of Counts 7–9. To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In considering pleaded facts, courts must "draw all reasonable inferences in Plaintiffs' favor, [and] assume all well-pleaded factual allegations to be true[.]" *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). If these alleged facts, taken as true, "state[] a plausible claim for relief," dismissal is improper. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

####     1.     *Karen Connolly's Claim for Negligent Infliction of Emotional Distress (Count 9) Should Survive Dismissal*

A claim for negligent infliction of emotional distress requires four elements: "(1) a breach of a duty owed to the plaintiff; (2) emotional harm; (3) a direct causal connection between the breach and the emotional harm; and (4) circumstances providing some guarantee of genuineness

3

of the harm." *Johnson v. New York State Police*, 659 F. Supp. 3d 237, 261 (N.D.N.Y. 2023). Because Ms. Connolly has properly alleged each of these elements, Count 9 is not subject to dismissal.

### (a) MongoDB Breached its Duty to Karen Connolly Under the "Zone of Danger" Doctrine

The duty element of an emotional distress claim "can be established under two distinct theories of liability: (1) the direct duty theory or (2) the bystander theory." *Id.* The "bystander theory," also known as the "zone of danger" doctrine, applies "when a person is threatened with physical harm as a result of defendant's negligence," *id.*, and establishes that she "suffered serious emotional distress that was proximately caused by the observation of a family member's death or serious injury while in the zone of danger," *DeBlase v. Hill*, 239 N.Y.S.3d 770, 788 (N.Y. Sup. Ct. 2025) (applying this doctrine to the death of a family pet). Accordingly, "where a defendant negligently exposes a plaintiff to an unreasonable risk of bodily injury or death, the plaintiff may recover . . . damages for injuries suffered in consequence of the observation of the serious injury or death of a member of his or her immediate family[.]" *Bovsun v. Sanperi*, 61 N.Y.2d 219, 230–31 (N.Y. 1984).

The "zone of danger" doctrine "is premised on the traditional negligence concept that by unreasonably endangering the plaintiff's physical safety the defendant *has breached a duty owed to him or her* for which he or she should recover all damages sustained including those occasioned by witnessing the suffering of an immediate family member who is also injured by the defendant's conduct." *Bovsun*, 61 N.Y.2d at 229 (emphasis added); *see also Greene v. Esplanade Venture P'ship*, 36 N.Y.3d 513, 534 (N.Y. 2021) (Rivera, J. (concurring)) ("As the analysis goes, a defendant who has placed a plaintiff in the zone of danger created by the defendant's conduct has violated a duty of reasonable care owed to the plaintiff, who may recover for emotional harm, even

if the plaintiff is not physically impacted or injured[.]"). *Cf. T.I.D. v. Ortiz*, 189 N.Y.S.3d 48, 50 (N.Y. App. Div. 2023) ("[Plaintiff] is not entitled to damages resulting from her emotional distress absent allegations that she was in the zone of danger or that she witnessed the incident that caused her children's injuries[.]").

Ms. Connolly was in physical proximity to her daughter Annie, witnessed serious harm to Annie, and was at risk of physical harm to herself as a result of MongoDB's actions. Compl. ¶¶ 66–70, 98–99. Specifically, she was at risk of physical injury both from the potential of a physical altercation to stop Annie from ingesting substances to kill herself and from potential contact with or inhalation of the substances themselves. *Id.* ¶ 70.[1] Therefore, MongoDB breached its duty to Ms. Connolly because its actions put her in the "zone of danger" when she witnessed Annie attempt suicide and suffered the associated emotional and psychological injuries.

Defendant's motion argues that Ms. Connolly did not state a claim for negligent infliction of emotional distress because she did not allege that Defendant owed her a pre-existing duty of care, but it fails to address the fact that the Company *did* owe Ms. Connolly a duty of care by virtue of placing her in the "zone of danger." *See* Dkt. 19-1, Motion to Dismiss ("MTD"), at 9; *see generally Greene*, 36 N.Y.3d at 519–26 (describing the development of New York law beyond limiting negligent infliction of emotional distress claims to situations where the defendant owed the plaintiff a pre-existing "direct duty"). Through its intentional actions against Annie, about which Ms. Connolly directly warned the Company, MongoDB unreasonably and negligently

---

[1] Many substances can harm people not only through ingestion, but also through inhalation or contact with skin or eyes. *See, e.g.*, *Right to Know, Hazardous Substance Fact Sheet: Sodium Nitrite*, N.J. DEP'T OF HEALTH, https://nj.gov/health/eoh/rtkweb/documents/fs/2258.pdf (last revised Mar. 2016).

5

endangered Ms. Connolly, breaching this duty by placing her in the "zone of danger" and causing her significant emotional distress.

### (b) Karen Connolly Has Sufficiently Pled the Remaining Elements of this Claim

In addition to properly alleging that MongoDB breached its duty to her under the "zone of danger" doctrine, Ms. Connolly has also alleged the remaining elements of the claim: that she experienced genuine fear of physical harm on August 8, witnessed severe harm to her daughter, and suffered resulting severe emotional harm caused by MongoDB's actions.[2] *See Johnson*, 659 F.Supp.3d at 261 (articulating claim elements).

On August 8, 2024, Ms. Connolly directly witnessed her daughter, Annie, experience severe harm and attempt to kill herself through consumption of lethal substances because MongoDB had terminated her. Compl. ¶¶ 66–68, 184. Ms. Connolly went to Annie's apartment that night and witnessed Annie lay out the lethal substances that she intended to use to end her life. *Id.* ¶ 68. Ms. Connolly was terrified and tried to intervene through verbal deescalation, while knowing that she would need to physically fight Annie to keep her from ingesting the substances if that did not work, risking physical injury and exposure to the deadly substances herself. *Id.* ¶¶ 69–70, 185.

These events followed Ms. Connolly's direct interactions with MongoDB earlier that day, when she put the Company on explicit notice that terminating Annie, rather than granting her a reasonable accommodation of a few days to emotionally stabilize, would lead to tragedy. *Id.* ¶¶ 62–

---

[2] In its motion to dismiss, Defendant does not appear to dispute that these allegations are sufficiently pled, instead arguing that the complaint did not allege that MongoDB owed Ms. Connolly a duty under which she can recover for negligent infliction of emotional distress. *See* MTD at 9. As described above, the complaint adequately alleges all elements of a negligent infliction of emotional distress claim, including that MongoDB owed Ms. Connolly a duty under the "zone of danger" doctrine.

63, 187. Ms. Connolly has experienced lasting severe emotional distress from the events of August 8, which have manifested in physical and emotional symptoms and have made it challenging for her to work and earn a living. *Id.* ¶¶ 99, 186. But for the Company's intentional discrimination and wrongful termination of Annie Surman, Annie's suicide attempt and the emotional distress that Ms. Connolly suffered on August 8, 2024, would not have occurred. *Id.* ¶ 188. Accordingly, Ms. Connolly has properly stated a claim for negligent infliction of emotional distress against MongoDB, and this claim should not be dismissed.

2.    *Plaintiffs' Claims for Wrongful Death and Conscious Pain and Suffering (Counts 7 & 8) Are Not Barred by Workers' Compensation Law*

New York Workers' Compensation Law only applies to injuries that are "accidental" and "arising out of *and in the course of employment*." N.Y. WORKERS' COMP. § 2(7) (McKinney 2022) (emphasis added); *see also Kruger v. EMFT, LLC*, 930 N.Y.S.2d 11, 13–14 (N.Y. App. Div. 2011) ("Workers' Compensation Law provides the exclusive remedy for an employee who seeks damages for *unintentional* injuries which he or she incurs *in the course of employment*[.]" (emphasis added)). Workers' compensation does not apply here because Annie's death and preceding conscious pain and suffering occurred weeks after her termination and thus plainly did not occur "in the course of employment."

Moreover, as Defendant notes, even if workers' compensation could apply, intentional injuries are exempted from preemption by New York Workers' Compensation Law. *See* MTD at 6; *see also Lavin v. Goldberg Bldg. Material Corp.*, 87 N.Y.S.2d 90, 93 (N.Y. App. Div. 1949) ("The Workmen's Compensation Law deals not with intentional wrongs but only with accidental injuries."). Here, Defendant's intentional actions would provide an exception to workers' compensation preemption.

### (a) Annie's Wrongful Death and Conscious Pain and Suffering Did Not Occur "in the Course of Employment"

For workers' compensation to apply, an injury must not *only* arise from employment, but also occur *in the course of employment*, meaning that "it must have been received while the employee was doing the work for which he was employed." *Ziccarelli v. NYU Hosps. Ctr.*, 247 F. Supp. 3d 438, 449 (S.D.N.Y. 2017). Annie's wrongful death, and the conscious pain and suffering that immediately preceded it,[3] were proximately caused by the intentional actions of her former employer but did not occur *in the course of her employment*, as she had been terminated approximately five weeks prior to her death. *See* Compl. ¶¶ 38–65 (alleging intentional acts by Defendant in July and early August 2024, while Annie was employed at the Company), ¶¶ 81–86 (Annie died and experienced conscious pain and suffering on September 13, 2024, while not employed by the Company).

In *Ziccarelli*, the plaintiff alleged that his employer hospital improperly accessed and disclosed his medical records from his time as a patient at the hospital. 247 F. Supp. 3d at 448. The defendants argued that these claims were barred by New York Workers' Compensation Law. *Id.* The court found that, while the "[p]laintiff's employment . . . was an actual or but-for cause of his injury[,]" his claims were not barred by New York Workers' Compensation Law because these injuries "did not occur while Plaintiff was engaged in work-related duties." *Id.* at 450.

The case of *In re Koerner v. Orangetown Police Dep't* is also instructive. In this case, the police officer decedent's wife accidentally shot him with his service revolver, which was in their home because he was required to keep the weapon with him even while off duty. *In re Koerner v.*

---

[3] "[U]nder New York Law, 'conscious pain and suffering' is recognized as a separate cause of action that often accompanies a wrongful death claim. It refers to the decedent's injuries, pain and suffering prior to death, and can be brought by the estate." *Ocasio v. City of Canandaigua*, 513 F. Supp. 3d 310, 328 (W.D.N.Y. 2021).

*Orangetown Police Dep't*, 68 N.Y.2d 974, 975 (N.Y. 1986). The court found that the widow could not make out a claim for workers' compensation because the injury did not occur "in the course of employment," stating:

> The death clearly arose out of the employment because the gun's presence in the house was dictated by the employer's regulations. However, it did not arise in the course of employment, because *the injury was not received while the employee was performing the work for which he was employed*. . . . Decedent in this case was sleeping, not performing police duties at the time of the accident.

*Id.* (ordering dismissal of workers' compensation claim) (emphasis added).

As in *Ziccarelli* and *Koerner*, while Annie's death arose out of her former employment in that MongoDB caused her death and is liable for its actions, her death and preceding conscious pain and suffering did not occur "in the course of" her employment or while she was performing work for which she was employed, and thus workers' compensation cannot apply.

Further, it is generally the case that injuries "that occur outside of work hours and in public areas away from the workplace are not compensable" under New York Workers' Compensation Law, even when current employees are commuting to or from the workplace. *See, e.g.*, *In re Grover v. State Ins. Fund*, 85 N.Y.S.3d 239, 240 (N.Y. App. Div. 2018), *aff'd,* 33 N.Y.3d 971 (N.Y. 2019) (denying workers' compensation coverage when employee was injured while entering the parking garage by her workplace); *In re Engle v. Reale Const. Co.*, 790 N.Y.S.2d 255, 257 (N.Y. App. Div. 2005) (affirming determination that death of employee commuting to work did not occur in the course of employment).

Here, Annie's death and preceding conscious pain and suffering occurred on September 13, 2024, *weeks after she was terminated by MongoDB*. Compl. ¶¶ 81–86.[4] Though these injuries

---

[4] By contrast, the case of *Reinard v. Harsco Corp.*, cited by Defendant on pages 6 and 7 of its MTD, the plaintiff died by suicide only one day after his termination was confirmed in writing. *See* Dkt. 10, *Reinard v. Harsco Corp.*, No. 1:05-cv-00738-WMS (W.D.N.Y. Jan. 5, 2006), at ¶ 20.

arose out of her employment, as they were caused by MongoDB's intentional discrimination, these injuries were irrefutably ***not*** received "in the course of" Annie's employment, because she was not employed at the time. Because Annie's death and immediately preceding conscious pain and suffering did not occur in the course of her employment, these claims are not covered by New York Workers' Compensation Law and are properly before this Court.

### (b) Annie's Death and Conscious Pain and Suffering Were Caused by Defendant's Intentional Actions

Even if New York Workers' Compensation Law could apply, claims are not subject to workers' compensation preemption when "the complaint . . . allege[s] an intentional or deliberate act by the employer directed at causing harm to this particular employee[.]" *Kruger*, 930 N.Y.S.2d at 13 (internal quotation marks omitted). Thus, these claims would be exempted because Annie's death and preceding conscious pain and suffering were "caused by MongoDB's *intentional* discrimination against her on the basis of disability[.]" Compl. ¶¶ 165, 172 (emphasis added).

Defendant disputes this conclusion by relying on two unreported cases. Defendant cites *Forjan*, in which a defendant that merely ignored a plaintiff's symptoms was found not to fall within the intentional injury exception. *See* MTD at 6 (citing *Forjan v. Leprino Foods Co.*, No. 3:04-cv-00878, 2005 WL 3555950, at *2 (N.D.N.Y. Dec. 28, 2005) ("Defendant's ignoring Plaintiff's symptoms can be characterized at most as negligence or gross negligence, but not an intentional act.")). However, the plaintiff in *Forjan* only alleged *negligence* by his employer, not intentional acts. *Forjan v. Leprino Foods, Inc.*, 209 Fed. App'x 8, 10 (2d Cir. 2006) ("While Forjan's briefs here and in the district court alleged that Leprino's inaction was intentional, his complaint alleged only negligence."). Defendant also cites *Reinard*, in which the court held that knowledge of a plaintiff's emotional vulnerability, and subsequent failure to act, does not rise to the level of an intentional injury. *See* MTD at 6–7; Dkt. 21, *Reinard v. Harsco Corp.*, No. 1:05-

cv-00738-WMS, 2006 WL 1206332 (W.D.N.Y. Mar. 24, 2006) (noting that plaintiff alleged that defendant "knew that [the decedent] suffered from depression and alcoholism"). The *Reinard* case is also distinguishable because the plaintiff's intentional tort claims were time-barred. *See Reinard v. Harsco Corp.*, No. 05-CV-738S, 2006 WL 2795639, at *2 (W.D.N.Y. Sept. 26, 2006).

Unlike the plaintiffs in *Forjan* and *Reinard*, Plaintiffs allege that Defendant engaged in a pattern of intentional and unlawful conduct that included intentionally refusing to provide Annie with a reasonable accommodation, intentionally discriminating against Annie on the basis of her disability, and intentionally wrongfully terminating Annie because of her disability while on explicit notice that these actions would lead to Annie's suicide. Compl. ¶¶ 62–65, 165, 172. Plaintiffs do not merely allege that MongoDB ignored the risk to Annie, but rather that MongoDB's intentional actions caused Annie's death, which was reasonably foreseeable to MongoDB. *Id.* ¶¶ 65, 145, 153, 162, 187.

The allegations in this case are more similar to those in *Kruger*, in which the plaintiff alleged that, following a fall at work, his "supervisor had directed workers to awaken him from unconsciousness by throwing buckets of cold water on him and not to take him to the hospital[,]" leading to significant injuries. 930 N.Y.S.2d at 13. Regardless of whether the supervisor or the company had intended for the intentional actions of throwing water and delaying treatment to cause further injury, the court found that the plaintiff had properly alleged "an intentional or deliberate act by the employer directed at causing harm to this particular employee[.]" *Id.* So too here: Plaintiffs have clearly alleged that Defendant intended to cause harm to Annie by discriminating against her, even if they may not have intended her resulting death. Thus, Plaintiffs have alleged that Annie's death and preceding conscious pain and suffering were caused by Defendant's intentional actions.

11

As in *Kruger*, the relevant inquiry is whether MongoDB intended to take the actions that led to Annie's death, not whether it actually intended to cause Annie's death. It is well established that a defendant must take the plaintiff as it finds her, even if the plaintiff is particularly susceptible to severe injury. *See, e.g.*, *Schuster v. Brimstone Hill Corp.*, 64 F. App'x 316, 318 (2d Cir. 2003) ("[A] 'plaintiff [may] recover to the extent that the accident aggravated [a] pre-existing condition.'"); *see also Bartolone v. Jeckovich*, 481 N.Y.S.2d 545, 547 (N.Y. App. Div. 1984) (noting, "a defendant must take a plaintiff as he finds him and hence may be held liable in damages for aggravation of a pre-existing illness. . . Nor may defendants avail themselves of the argument that plaintiff should be denied recovery because his condition might have occurred even without the accident." (internal citations omitted)).

Defendant argues that Plaintiffs fail to allege that MongoDB intended to bring about Annie's suicide. In support of this contention, Defendant alludes to several irrelevant facts, including that MongoDB initially "permitted [Annie] Surman to extend her leave," MTD at 7, and that Annie "believed" she may have been terminated to avoid paying her severance in impending layoffs, *id.* Neither fact negates the allegations that MongoDB subjected Annie to intentional discrimination because of her disability. Compl. ¶¶ 143, 151, 160 ("MongoDB terminated Annie because of her disability."); *see also id.* ¶¶ 38–65 (alleging MongoDB's intentional misconduct).

Here, MongoDB's intentional unlawful conduct, namely its intentional discrimination, intentional denial of reasonable accommodation, and intentional wrongful termination of Annie, caused Annie's death. *See* Compl. ¶¶ 91, 108, 120, 133–34, 143–45, 151–53, 160–62, 165, 172. Further, MongoDB had clear notice of the extent of injury that Annie would experience—i.e., suicide—if they intentionally discriminated against her by unlawfully terminating her because of her disability. *Id.* ¶ 187. Annie attempted suicide the very night she was terminated, following Ms.

Connolly's pleas and warning to the Company that terminating her would lead to the "direst of circumstances" and they had only hours to stabilize Annie and avoid tragedy, *id.* ¶¶ 63, 66, and she died by suicide just weeks later, *id.* ¶¶ 81–86. [5]

In sum, New York Workers' Compensation Law cannot apply because Annie's death and preceding conscious pain and suffering did not occur in the course of employment. And even if it could apply, MongoDB's intentional misconduct provides an exemption from workers' compensation preemption.

**B.      None of Plaintiffs' Claims Should Be Compelled to Arbitration**

In deciding a motion to compel arbitration, courts can consider many potentially relevant questions, including: "(1) whether the parties agreed to arbitrate; (2) the 'scope' of the arbitration agreement; (3) whether the plaintiff's federal statutory claims are 'nonarbitrable'; and (4) if some, but not all of the claims in the case are arbitrable, whether to stay the balance of the proceedings pending arbitration." *Abdullayeva v. Attending Homecare Servs. LLC*, 928 F.3d 218, 221–22 (2d Cir. 2019). In conducting this review "the court must draw all reasonable inferences in favor of the non-moving party." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016). A court "should order arbitration of a dispute only where the court is satisfied that neither the formation of the parties' arbitration agreement *nor* . . . its enforceability or applicability to the dispute is in issue." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299–300 (2010) (emphasis in original).

---

[5] To the extent that Defendant seeks to raise questions of fact regarding these allegations, these cannot be resolved on a motion to dismiss. *See, e.g.*, *Faber*, 648 F.3d at 104 (at motion to dismiss stage, courts must "draw all reasonable inferences in Plaintiffs' favor, [and] assume all well-pleaded factual allegations to be true[.]" (internal quotations omitted)); *see also Cooper v. Anheuser-Busch, LLC*, 553 F. Supp. 3d 83, 96–97 (S.D.N.Y. 2021) (finding that "the question of whether Defendant's labeling would prove misleading to the reasonable consumer is a question of fact that cannot be resolved on a motion to dismiss" and "Defendant will have an opportunity to test that hypothesis in discovery").

In this case, the arbitration clause is ambiguous as to its application to Annie's heirs and successors. The arbitration clause is also unconscionable, thus calling into question the valid formation of an agreement to arbitrate Annie's claims.[6] Finally, even if Counts 1–6 are ultimately referred to arbitration, litigation of Counts 7–9 should continue before this Court.

1.    *The Arbitration Agreement is Ambiguous As to its Application to Annie's Heirs and Successors*

In this case, Annie was presented with a "take-it-or-leave-it" contract of adhesion when she was offered an entry-level position at MongoDB.[7] It is well established that "ambiguities in a contract of adhesion are to be construed against the drafter." *Van Ekris & Stoett, Inc. v. S.S. Rio Paraguay*, 573 F. Supp. 1475, 1478 (S.D.N.Y. 1983), *aff'd sub nom.*, 738 F.2d 419 (2d Cir. 1984); *see also Maddy v. Gen. Elec. Co.*, 80 F. Supp. 3d 544, 552 (D.N.J. 2015), *aff'd,* 629 F. App'x 437 (3d Cir. 2015) ("The Court also recognizes that, if [plaintiffs] did not consent to the terms . . . , which they had no apparent ability to negotiate, their only available course of action would be quitting their jobs. . . . While contracts of adhesion are not themselves unenforceable, the Court is compelled to interpret such 'take it or leave it' agreements against the drafter."); *Jacobson v. Sassower*, 66 N.Y.2d 991, 993 (N.Y. 1985) ("In cases of doubt or ambiguity, a contract must be construed most strongly against the party who prepared it, and favorably to a party who had no voice in the selection of its language[.]").

The arbitration agreement clause in Exhibit A does not include any terms about applicability to Annie's heirs or successors, but rather specifically speaks only to the agreement of the parties: Annie and MongoDB. *See* Dkt. 19-3, Exhibit A to MTD ("Ex. A"), ¶ 17 ("The *parties*

---

[6] Defendant has not challenged whether Plaintiffs met the pleading standard for the claims under the Americans with Disabilities Act ("ADA"), New York State Human Rights Law ("NYSHRL"), and New York City Human Rights Law ("NYCHRL"), so these questions are not at issue with respect to this motion. *See generally* MTD.

[7] *See* MTD at 13 (describing the instant arbitration agreement as "take-it-or-leave-it").

agree to submit to mandatory binding arbitration[.]") (emphasis added). The separate clause in the agreement regarding Successors and Assigns does not clearly modify the arbitration agreement clause. *See id.* ¶ 24. Indeed, it explicitly contemplates terms in the agreement that are specific to the parties and do not pass on to their successor and assigns. *Id.* ("*Except* as otherwise provided in this Agreement. . .") (emphasis added). The arbitration clause, like the non-competition clause and other clauses clearly intended to apply only to Annie, not her heirs or successors, is written to be limited just to Annie and MongoDB. *See id.* ¶ 17. Further, while the Company retained its ability to assign its rights and obligations under the agreement, it explicitly stated that Annie could not "assign or delegate . . . any of [her] rights or obligations hereunder, whether voluntarily *or by operation of law*, except with the prior written consent of the Company." *Id.* ¶ 24 (emphasis added).

The plain text of the arbitration clause here does not clearly bind Annie's heirs or successors. Because this is a contract of adhesion, this ambiguity must be construed against the drafter, and the arbitration clause should not apply to the instant action.

2.    *The Arbitration Agreement is Procedurally and Substantively Unconscionable Under New York Law*

"[B]efore an agreement to arbitrate can be enforced, the district court must first determine whether such agreement exists between the parties . . . [under] state contract law." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 73–74 (2d Cir. 2017). "If a factual issue exists regarding the formation of the arbitration agreement . . . a trial is necessary." *Id.* at 74. "An agreement to arbitrate that was unconscionable or was the product of economic duress is invalid," and thus, whether an agreement is unconscionable is a threshold question of contract formation. *See Molina v. Kaleo, Inc.*, 363 F. Supp. 3d 344, 349 (S.D.N.Y. 2019).

Under New York state law, "procedural and substantive unconscionability operate on a 'sliding scale'; the more questionable the meaningfulness of choice, the less imbalance in a

15

contract's terms should be tolerated and vice versa[.]" *State v. Wolowitz*, 468 N.Y.S.2d 131, 145 (N.Y. App. Div. 1983). Procedural unconscionability is found when a party lacks "a meaningful choice in deciding whether to sign" while substantive unconscionability exists when the terms of an agreement are "unreasonably favorable to the party against whom unconscionability is claimed." *See Brennan v. Bally Total Fitness*, 198 F. Supp. 2d 377, 382–84 (S.D.N.Y. 2002). In this case, the arbitration agreement at issue is both procedurally and substantively unconscionable.

First, the arbitration provision that Annie signed as part of her employment contract when she joined MongoDB is procedurally unconscionable. Defendant cites *Nayal v. HIP Network Servs. IPA, Inc.* for the proposition that "take-it-or-leave-it" agreements are enforceable. *See* MTD at 13 (citing *Nayal v. HIP Network Servs. IPA, Inc.*, 620 F. Supp. 2d 566, 571–72 (S.D.N.Y. 2009)). While true in a vacuum, this argument ignores additional indicia of procedural unconscionability in this case. Here, procedural unconscionability is supported by numerous factors, including: the considerable disparity in bargaining power between Annie, an entry-level prospective employee, and MongoDB, a multi-billion dollar company, and the "take-it-or-leave it" nature of agreement; the inability for prospective employees to opt-out of the arbitration agreement clause (a.k.a. contract of adhesion);[8] and the lack of any provision advising prospective employees that they can consult with an attorney and/or take time to review the specific provisions of the agreement.[9]

Further, the case of *Daitz v. ATR N.Y. LH, Inc.*, cited by Defendant as a purportedly analogous case where an arbitration agreement was enforced against the estate of a decedent, MTD at 13, is not truly analogous, as it involved an agreement that allowed the decedent to opt out of arbitration, *see Daitz v. ATR N.Y. LH, Inc.*, No. 25-CV-01591 (JMA) (LGD), 2025 WL 2733346,

---

[8] *See* Dkt. 19-3, Exhibit A to MTD (lacking any opt-out provision).
[9] *See id.* (lacking any such provisions).

at \*1 (E.D.N.Y. Sept. 25, 2025) ("The Arbitration Agreement states: '[t]his agreement is entered into voluntarily by the Parties and is not a prerequisite to residing at the Community or receiving services at the Community.'"). The lack of ability to opt out of arbitration here is additional evidence of unconscionability. *See Faith v. Khosrowshahi*, No. 21-CV-06913 (JMA) (JMW), 2023 WL 5278126, at \*8 (E.D.N.Y. Aug. 16, 2023) ("The ability to opt out of an arbitration provision is often a dispositive factor in rejecting procedural unconscionability challenges.").

The Court should consider the indicia of procedural unconscionability in their totality. *See, e.g.*, *Wolowitz*, 468 N.Y.S.2d at 145 ("In determining the conscionability of a contract, no set weight is to be given any one factor; each case must be decided on its own facts[.]"); *Brennan*, 198 F. Supp. 2d at 382 ("To determine whether a contract was validly formed, a court should focus on evidence of high pressure or deceptive tactics, the use of fine print in the contract, and any disparity in experience and education, *i.e.* bargaining power, between the parties."). Taken as a whole, these factors support a finding that the arbitration agreement in this case is procedurally unconscionable.

Second, the arbitration agreement that Annie signed at MongoDB is substantively unconscionable because it favors and carves out additional rights for MongoDB that do not exist for employees, including Annie. Specifically, the Company wrote into its agreement that the agreement is "intended to supplement, and not to supersede, any rights *the Company* may have in law or equity with respect to duties of its employees and the protection of its trade secrets," bolstering the matching carve-out from the arbitration provision for seeking "injunctive relief in court related to the improper use, disclosure or misappropriation of a party's private, proprietary, confidential or trade secret information." Ex. A, ¶¶ 20, 17 (emphasis added);[10] *see Brennan*, 198

---

[10] While the text of this carve-out in paragraph 17 is purportedly mutual, the text of paragraph 20 is explicitly and solely directed at protecting the rights of the Company, and other provisions throughout the agreement make clear that the primary purpose of these provisions is to protect the

17

F. Supp. 2d at 384 ("The EDRP is substantively unconscionable because its terms unreasonably favor Bally."). Thus, by its very terms, the arbitration agreement was written to benefit MongoDB, the drafter and substantially more powerful party, and disadvantage Annie, a young recent graduate without the ability to negotiate more favorable contract terms or opt out of arbitration—clear hallmarks of substantive unconscionability.

Because the arbitration agreement in this case is both procedurally and substantively unconscionable, it was not properly formed and cannot be enforced against Annie or her estate.

To the extent that questions of fact regarding the applicability of the arbitration clause to Annie's heirs and successors and/or procedural and substantive unconscionability persist, Plaintiffs request that the motion to compel arbitration be held in abeyance and limited discovery on these issues be granted. *See, e.g.*, *Legacy Cap. 26, LLC v. Chaldean Enter., LLC*, No. 22-CV-05758 (LJL), 2023 WL 5530307, at *1 (S.D.N.Y. Aug. 28, 2023) ("[I]n the Second Circuit, discovery on a motion to compel arbitration is appropriate 'when the party opposing arbitration comes forth with reliable evidence that is more than a naked assertion ... that it did not intend to be bound by the arbitration agreement, even though on the face of the pleadings it appears that it did.'"); *Dun Shipping Ltd. v. Amerada Hess Shipping Corp.*, 234 F. Supp. 2d 291, 296 (S.D.N.Y. 2002) ("Limited discovery may help determine whether or not Hovensa had actual knowledge of and acquiesced in the terms of the Charter Party and, therefore, perhaps should be bound by its arbitration provision."). This is especially appropriate where, as here, one of the parties to the arbitration agreement is deceased.

3. *There is No Basis to Stay Plaintiffs' Non-Arbitrable Claims Pending Arbitration*

As described above, Counts 7–9 are not subject to dismissal. *See supra* Argument Section

---

Company's interests in protecting confidential information and trade secrets, not those of prospective employees. *See, e.g.*, Ex. A, ¶¶ 1, 8, 20.

A. Additionally, Counts 7–9 cannot be compelled to arbitration, despite Defendant's offhand remark that referring Counts 7 & 8 to arbitration could be an alternative to dismissal. *See* MTD at 5 n.3.

First, Karen Connolly's claim for negligent infliction of emotional distress (Count 9) belongs to her in her individual capacity, and is undisputably not subject to any arbitration agreement. *See Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989) ("[T]he FAA does not require parties to arbitrate when they have not agreed to do so[.]"). Second, the wrongful death claim (Count 7) belongs to the administrators of Annie's estate, not to Annie herself, so it is also clearly not subject to any arbitration agreement. N.Y. EST. POWERS & TRUSTS LAW § 5-4.1 (McKinney 2003); *Marinos v. Brahaj*, 237 N.Y.S.3d 627, 632–33 (N.Y. App. Div. 2025) ("The law of this State is clear that a wrongful death cause of action is a separate and distinct cause of action to redress the injuries suffered by a decedent's distributees as a result of the decedent's death. . . . The plaintiffs, individually, never agreed to arbitrate any claims with Revel and now cannot be forced to do so."). While, the conscious pain and suffering count (Count 8) is brought on behalf of Annie's estate, for the reasons discussed above, the arbitration provision does not clearly apply to Annie's heirs and successors and is procedurally and substantively unconscionable, so it cannot serve as a basis for forcing Count 8 into arbitration.

Defendant did not request a stay of Counts 7–9 in the event that Counts 1–6 are referred to arbitration, seemingly based on Defendant's belief that Counts 7–9 should be dismissed. *See* MTD at 16. However, even if this Court were considering a discretionary request to stay non-arbitrable claims, it would be appropriate to deny such a request and allow the parties to proceed with litigating non-arbitrable claims before this Court. *See, e.g.*, *Doe v. Trump Corp.*, No. 18 Civ. 9936 (LGS), 2020 WL 2538400, at *6 (S.D.N.Y. May 18, 2020) (denying motions to stay when

19

defendants were unlikely to succeed on merits of compelling arbitration of claims for which there was no arbitration agreement and plaintiffs would experience substantial injury from delay to the resolution of their claims); *Cordius Tr. v. Kummerfeld*, No. 99 Civ. 3200(DLC), 2010 WL 234823, at \*2 (S.D.N.Y. Jan. 21, 2010) (denying motion for stay and noting "the aphorism that 'justice delayed is justice denied' aptly applies"); *see also OMG Fid., Inc. v. Sirius Techs., Inc.*, 239 F.R.D. 300, 306 (N.D.N.Y. 2006) ("[T]he interjection of delay into litigation for the mere sake of delay serves no useful purpose.").

Annie's family has been without her for a year-and-a-half now. This past December marked what should have been her thirtieth birthday. They deserve to proceed with their claims to reach resolution and find closure. Accordingly, Counts 7–9 should be permitted to move forward in Court regardless of the disposition of Defendant's motion to compel Counts 1–6 to arbitration.

## CONCLUSION

This case involves serious allegations and devastating consequences. MongoDB's motion seeks to remove this case from judicial consideration in an attempt to limit its accountability and scrutiny of its unlawful acts. For all the foregoing reasons, Defendant's motion should be denied in full.

Dated: March 18, 2026

Respectfully submitted,

*/s/ Christine Dunn*
Christine Dunn\*
Shannon Henris\*
**SANFORD HEISLER SHARP MCKNIGHT, LLP**
700 Pennsylvania Avenue SE, Suite 300
Washington, DC 20003
Telephone: (202) 499-5214
cdunn@sanfordheisler.com
shenris@sanfordheisler.com

20

Kate MacMullin, NY Bar No. 5693882
**SANFORD HEISLER SHARP**
**MCKNIGHT, LLP**
17 State Street, 37th Floor
New York, NY 10004
Telephone: (646) 768-7054
kmacmullin@sanfordheisler.com

*Attorneys for Plaintiffs*

*Admitted *pro hac vice*

21

## CERTIFICATION OF COUNSEL PURSUANT TO RULE 7.1(C)

I, Christine Dunn, hereby certify in accordance with Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rules") the foregoing response brief contains 6,566 words (exclusive of the caption, table of contents, table of authorities, and signature block), and complies with the applicable word count limit set forth at Local Rule 7.1(c).

In accordance with Local Rule 7.1(c), I have relied upon the word processing system's word count function in preparing this certification.

*/s/ Christine Dunn*

Christine Dunn