UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANNA SURMAN, by and through the Administrators of her Estate, GREGORY SURMAN and KAREN CONNOLLY; and KAREN CONNOLLY, in her individual capacity,<br><br>     Plaintiffs,<br><br>        -against-<br><br>MONGODB, INC,<br><br>     Defendant. | Case No. 1:26-cv-00166-JLR |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S MOTION TO DISMISS COUNTS 7-9 AND TO COMPEL COUNTS 1-6 TO ARBITRATION**

Rebecca Goldstein, Esq.
Matthew D. Holmes, Esq.
Littler Mendelson P.C.
900 Third Avenue – 8th Floor
New York, NY 10022
212.583.9600
Attorneys for Defendant

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT.......................................................................................... 1

ARGUMENT ................................................................................................................... 2

    A.    THE WORKERS' COMPENSATION EXCLUSIVITY DOCTRINE
          BARRED A NEARLY IDENTICAL WRONGFUL DEATH CLAIM................ 2

    B.    THE COMPLAINT FORECLOSES MS. CONNOLLY'S NIED CLAIM........... 4

    C.    THE ARBITRATION AGREEMENT IS NEITHER AMBIGUOUS NOR
          UNCONSCIONABLE. ............................................................................... 6

          1.    Plaintiffs Search for Ambiguity That Does Not Exist. ............................. 7

          2.    Plaintiffs' Unconscionability Arguments Are Meritless............................ 8

                a.    Plaintiffs' Procedural Unconscionability Arguments Are
                    Meritless.......................................................................................... 8

                b.    Plaintiff's Substantive Unconscionability Argument is
                    Equally Meritless .......................................................................... 10

CONCLUSION............................................................................................................. 11

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Acevedo v. Con. Edison Co. of N.Y.*,
189 A.D.2d 497 (1st Dep't 1993)................................................................................................. 4

*Chen-Oster v. Goldman-Sachs & Co.*,
449 F. Supp. 3d (S.D.N.Y. 2020) ............................................................................................... 9

*Costello v. Paramount Glob., Inc.*,
2024 U.S. Dist. LEXIS 17502 (S.D.N.Y. Feb. 1, 2024)............................................................. 9

*DeBlase v. Hill*,
239 N.Y.S.3d 770 (Sup. Ct., N.Y. Cnty. 2025)......................................................................... 6

*Desiderio v. National Ass'n of Securities Dealers*,
191 F.3d 198 (2d Cir. 1998) ...................................................................................................... 9

*Gilbert v. Indeed, Inc.*,
513 F. Supp. 3d 374 (S.D.N.Y. 2024) ....................................................................................... 9

*Gilmore v. Fam. Dollar*,
2024 U.S. Dist. LEXIS 111823 (W.D.N.Y. June 25, 2024)............................................. 4, 5, 6

*In re Koerner v. Orangetown Police Dep't*,
68 N.Y.2d 974 (1986)................................................................................................................. 2

*Kruger v. EMFT, LLC*,
930 N.Y.S.2d 11 (2d Dep't 2011) .............................................................................................. 3

*Lawrence v. N.Y.C. Med. Practice*,
2023 U.S. Dist. LEXIS 126558 (S.D.N.Y. July 21, 2023)......................................................... 9

*Miller v. Huntington Hosp.*,
15 A.D.3d 548 (2d Dep't 2005).................................................................................................. 3

*Mitchell v. Dewitt Rehab. & Nursing Ctr., Inc.*,
2020 N.Y. Misc. LEXIS 1175 (Sup. Ct., N.Y. Cnty., Mar. 8, 2020) ........................................ 7

*Molina v. Harvard Maint.*,
2021 U.S. Dist. LEXIS 220362 (S.D.N.Y. Nov. 11, 2021)........................................................ 7

*Molina v. Kaleo, Inc.*,
363 F. Supp. 3d 344 (S.D.N.Y. 2019) ................................................................................. 8, 10

*Mortise v. United States*,
102 F.3d 693 (2d Cir. 1996) ...................................................................................................... 6

*Nayal v. HIP Network Servs. IPA, Inc.*,
    620 F. Supp. 2d 566 (S.D.N.Y. 2009) ................................................................................ 9

*Plazza v. Airbnb, Inc.*,
    289 F. Supp. 3d 537 (S.D.N.Y. 2018) .............................................................................. 10

*Ragone v. Atl. Video at Manhattan Ctr.*,
    595 F.3d 115 (2d Cir. 2010) ........................................................................................... 8, 9

*Reinard v. Harsco Corp.*,
    2006 U.S. Dist. LEXIS 69022 (W.D.N.Y. Sept. 23, 2006) .............................................. 2, 3

*Victorio v. Sammy's Fishbox Realty Co., LLC*,
    2015 U.S. Dist. LEXIS 61421 (S.D.N.Y. May 6, 2015) ........................................................ 9

*Williams v. United States Info. Sys.*,
    2013 U.S. Dist. LEXIS 7812 (S.D.N.Y. Jan. 17, 2013) ........................................................ 5

*Zabar v. N.Y.C. Dep't of Educ.*,
    2024 U.S. Dist. LEXIS 173022 (S.D.N.Y. July 22, 2024) ..................................................... 6

*Ziccarelli v. NYU Hosps. Ctr.*,
    247 F. Supp. 3d 438 (S.D.N.Y. 2017) ................................................................................ 2

**Statutes**

New York Estates, Powers and Trust Law §§11-3.1 and 11-3.2 ..................................................... 8

## PRELIMINARY STATEMENT

As set forth in MongoDB's Motion to Dismiss Counts 7-9 and Compel Counts 1-6 to Arbitration (the "Motion"),[1] Counts 7 and 8 of Plaintiffs' Complaint are barred by the workers' compensation exclusivity doctrine, Count 9 fails to state a cause of action, and Counts 1-6 should be compelled to arbitration.

Plaintiffs' arguments in opposition miss the mark and lack a fundamental understanding of the law.  First, they apply too narrow a lens on the workers' compensation exclusivity doctrine, ignore that it has been applied to a case involving almost identical facts, and disregard the admissions made in their pleading.  Second, Plaintiffs argue to apply a theory of liability to the NIED claim that requires observation of the death or serious injury of a family member – which simply did not happen here.  Alternatively, Plaintiffs for the first time raise new factual allegations that appear nowhere in their pleading and are insufficient to save the NIED claim from dismissal. Third, there are no ambiguities in the Arbitration Agreement relevant to this case, and Plaintiffs' unsupported assertion that such agreement is unconscionable has no basis in law or fact.

For these reasons and those stated in the Motion, the Court should grant MongoDB's Motion dismissing Counts 7-9 and compelling Counts 1-6 to arbitration.

---

[1] This brief adopts and incorporates all abbreviations and definitions set forth in the Motion (ECF No. 19-1).  Plaintiffs' Memorandum of Law submitted in opposition (ECF No. 20) is hereinafter referred to as the "Opposition" or "Opp.".

## ARGUMENT

### A.   THE WORKERS' COMPENSATION EXCLUSIVITY DOCTRINE BARRED A NEARLY IDENTICAL WRONGFUL DEATH CLAIM.

As explained in the Motion, Counts 7 and 8 cannot proceed before this Court because the exclusive remedy for such claims, if any exists, lies within New York's Workers' Compensation system.  Motion, p. 5-8.  In a sadly similar case, *Reinard v. Harsco Corp.*, 2006 U.S. Dist. LEXIS 69022, at *3-4 (W.D.N.Y. Sept. 23, 2006), the Court dismissed a wrongful death claim brought by a former employee's wife against his former employer after he died by suicide after his employment was terminated.  *Id.*; *compare* ECF No. 1, ¶¶66-81.  The Court in *Reinard* found the workers' compensation exclusivity doctrine precluded certain claims because it could not be said, based on the allegations in the Complaint, that the former employer terminated the deceased's employment "**with the intention or desire to bring about his suicide.**"   Motion, p. 13-14; *Reinard*, 2006 U.S. Dist. LEXIS 69022, at *4.  Here, the same conclusion results.

To try to distance themselves from *Reinard*, Plaintiffs direct the Court to inapposite cases involving injuries that led to surgery to repair a fracture and rotator cuff tear, *Ziccarelli v. NYU Hosps. Ctr.*, 247 F. Supp. 3d 438, 443 (S.D.N.Y. 2017) (Opp., p. 14)*,* and the death of a police officer from his wife accidentally discharging his gun.  *See In re Koerner v. Orangetown Police Dep't*, 68 N.Y.2d 974, 975 (1986) (Opp., p. 14-15).  Plaintiffs further cite to cases that involved commuting-related injuries.  Opp., p. 15.  Frankly, attempting to draw a parallel between an elbow injury from scanning a parking garage pass and a tragic suicide is insulting to Plaintiffs.  The fact is that none of the cases cited in the Opposition are relevant here.[2]

---

[2] The fact that some of the claims in *Reinard* were untimely is of no relevance as the wrongful death claim was timely.  2006 U.S. Dist. LEXIS 69022, at *3-4.  Plaintiffs' other point that the

Plaintiffs further assert that the intentional injury exception to the workers' compensation exclusivity doctrine applies. As explained in the Motion, this argument fails, as Plaintiffs do not allege that MongoDB intended to cause the harm Ms. Surman suffered – the taking of her own life. Motion, p. 11-14; *see Miller v. Huntington Hosp.*, 15 A.D.3d 548, 550 (2d Dep't 2005). The *Kruger* case relied on in the Opposition is inapposite as it involved a supervisor who, while an employee was unconscious on the ground after a fall at work, directed workers to (1) awaken him by throwing buckets of cold water on him, and (2) not to take him to the hospital because he was undocumented, which resulted in the plaintiff later sustaining a traumatic brain injury. *Kruger v. EMFT, LLC,* 930 N.Y.S.2d 11, 13 (2d Dep't 2011). The Court in *Kruger* found that the plaintiff provided a basis to overcome the workers' compensation exclusivity doctrine because throwing buckets of cold water on him was an actual battery and his supervisor instructing not to take him to the hospital plausibly falls within the intentional injury exception. *Id.* The facts alleged here are inapposite as they concern the termination of Ms. Surman's employment after giving notice that such termination would occur if she did not return to work. ECF No. 1, ¶¶60-61.[3] Moreover, using the word "intentional" to describe the alleged discrimination does not demonstrate that MongoDB engaged in "an intentional or deliberate act by the employer directed at causing harm [Ms. Surman]." Motion, p. 18; *see Acevedo v. Con. Edison Co. of N.Y.*, 189 A.D.2d 497, 500-01

suicide in *Reinard* took place one day after the termination of employment has no impact on the application of the workers' compensation exclusivity doctrine. *See* Opp., p. 15 and n. 4. The reality is that here, like in *Reinard*, this doctrine applies to bar the wrongful death-related claims (Counts 7 and 8) from proceeding before this Court. Motion, p. 11-14.

[3] Neither the *Schuster* nor *Bartolone* decisions cited in the Opposition involved the workers' exclusivity doctrine nor the intentional injury exception. *See* Opp., p. 18.

(1st Dep't 1993); Opp. p. 18.[4]

Plaintiffs cannot ignore clear legal precedent that applies the workers' compensation exclusivity doctrine to the instant set of facts.  Therefore, the Court should dismiss Counts 7 and 8.

### B.    THE COMPLAINT FORECLOSES MS. CONNOLLY'S NIED CLAIM.

"Duty of care" is an essential element of a NIED claim.  Motion, p. 15.  Courts applying New York law have identified three theories that can establish a duty of care: "(i) the bystander theory, (ii) the 'zone of danger' theory, [and] (iii) the direct duty theory." *Gilmore v. Fam. Dollar*, 2024 U.S. Dist. LEXIS 111823, *3-4 (W.D.N.Y. June 25, 2024) (citing cases).  As explained in the Motion, Plaintiffs have not established, and cannot establish, that MongoDB owed Ms. Connolly any duty of care, and thus, her NIED claim should be dismissed. Motion, p. 14-15.

In response, Plaintiffs claim that Ms. Connolly is pursuing a NIED claim under the "bystander theory", which Plaintiffs also refer to as the "zone of danger" theory.  Opp., p. 10.  In support of their position, Plaintiffs argue that MongoDB placed Ms. Connolly in a "zone of danger" when she was near Ms. Surman as she was "laying out the medications" that she took five weeks later to end her life not in Ms. Connolly's presence.  ECF No. 1, ¶70; Opp., p. 10-11. Plaintiffs also, somewhat incredulously, claim for the first time that Ms. Connolly could have been at risk of a physical altercation with Ms. Surman if she had to physically stop Ms. Surman from

---

[4] Plaintiffs also contend that MongoDB had notice that its actions would lead to Ms. Surman taking her own life.  Opp., p. 17.  Not so.  None of the allegations cited by Plaintiffs state that Plaintiffs told MongoDB that Ms. Surman would take her own life if MongoDB moved forward with termination.

ingesting the medications (even though there is nothing in the Complaint surmising that Ms. Surman displayed signs of aggression or a physical struggle) and could have touched or inhaled the medications.[5]  *Id.*, ¶69; Opp., p. 12.  But these assertions, along with the allegations in the Complaint, do not save the NIED claim from dismissal as they do not involve a "bystander" or "zone of danger".

Plaintiffs refer to the "bystander" and "zone of danger" theories as though they are one and the same.  Plaintiffs are wrong.  A plaintiff may recover for emotional injuries resulting from a defendant's negligence under the "bystander" theory if "(a) [she] witnessed the death or serious injury of a family member due to the defendant's actions, and (b) the defendant's actions also threatened [her] with physical injury."  *Gilmore*, 2024 U.S. Dist. LEXIS 111823, at \*3-4 (citation omitted).  The bystander theory cannot apply as Ms. Connolly did not witness a death or serious injury – the only action she witnessed was Ms. Surman laying out "medications" on August 8, 2024.  ECF No. 1, ¶68.  Five weeks later and after in and out-patient treatments, Ms. Surman took her own life outside of Ms. Connolly's presence.  ECF No. 1, ¶¶71, 77-81.  These facts alone disprove the bystander theory.  Moreover, there is nothing in the Complaint that suggests that MongoDB threatened Ms. Connolly with physical injury.

Under the "zone of danger" theory, a plaintiff's claim would "**<u>arise out of similar facts</u>** [as the bystander theory], where [the] defendant's actions posed an actual risk to [the] plaintiff's

---

[5] These assertions, along with those concerning sodium nitrate being present when Ms. Surman attempted to die by suicide on August 8, 2024, are not alleged in the Complaint and thus should not be considered in deciding the Motion.  *Williams v. United States Info. Sys.*, 2013 U.S. Dist. LEXIS 7812, \*14 and n. 4 (S.D.N.Y. Jan. 17, 2013).

physical safety, or caused [her] to fear for [her]. . . own physical safety." *Gilmore*, 2024 U.S. Dist. LEXIS 111823, at *3-4 (other citation omitted) (emphasis added).  Plaintiffs' "zone of danger" theory does not pass muster as nothing in the Complaint suggests that MongoDB's actions posed a risk to Ms. Connolly.  *See DeBlase v. Hill*, 239 N.Y.S.3d 770, 793 (Sup. Ct., N.Y. Cnty. 2025) (motion to dismiss granted when plaintiff was not present for the incident that killed his dog). There is also nothing in the Complaint to suggest that the mere presence around the medications created an actual risk to Ms. Connolly's physical safety or that caused her to fear for her safety, and merely being present around an event or injury does not make one entitled to relief under any NIED theory.  *Mortise v. United States*, 102 F.3d 693, 696-97 (2d Cir. 1996) (no NIED claim under "bystander" theory for wife who witnessed attack on husband because her own life was never threatened and she did not see her husband suffer a physical injury).  As such, the "zone of danger" theory cannot apply.

For all these reasons and those stated in the Motion, Ms. Connolly cannot establish NIED on any theory of liability and Count 9 should be dismissed.

### C.    THE ARBITRATION AGREEMENT IS NEITHER AMBIGUOUS NOR UNCONSCIONABLE.

Plaintiffs bring Counts 1-6 of the Complaint as if they were standing in the shoes of Ms. Surman.  ECF No. 1, ¶16; *see Zabar v. N.Y.C. Dep't of Educ.*, 2024 U.S. Dist. LEXIS 173022, at *28 (S.D.N.Y. July 22, 2024) (ADA, NYSHRL, and NYCHRL claims survive the plaintiff's death).   In response, MongoDB highlighted the Arbitration Agreement, which clearly and unambiguously states that "the rights and obligations of the parties hereunder … will bind and benefit the parties and their respective successors, heirs, executors, administrators, and legal representatives."  ECF No. 19-3, p. 7; *see also Mitchell v. Dewitt Rehab. & Nursing Ctr., Inc.*, 2020 N.Y. Misc. LEXIS 1175, at *6 (Sup. Ct., N.Y. Cnty., Mar. 8, 2020) (arbitration clause

binding on estate).  MongoDB sought to compel the estate to arbitrate Ms. Surman's claims that she would have had to arbitrate if she were alive.  Upon hearing this, Plaintiffs decided that they no longer want to stand in Ms. Surman's shoes for this purpose, as doing so would bind them by the Arbitration Agreement.  They cannot have it both ways.  As explained below, Plaintiffs' arguments regarding the enforceability of the Arbitration Agreement are meritless.

### 1.      Plaintiffs Search for Ambiguity That Does Not Exist.

The Opposition unsuccessfully attempts to create an ambiguity with respect to the application of Paragraph 24 of the Arbitration Agreement, which discusses the "obligations" that will "bind and benefit" the parties' "executors, administrators, and legal representatives" – which in this case are Ms. Surman's parents as representatives of her estate.  ECF No. 19-3, p. 7; ECF No. 1, ¶16.  Plaintiffs cite to several cases that have nothing to do with arbitration provisions and fail to identify a single case where an arbitration agreement was found to be ambiguous.  *See* Opp., p. 21.  Plaintiffs also argue that Paragraph 17 applies only to the "parties" because it does not say anything about Ms. Surman's "executors, administrators, and legal representatives."  Opp., p. 20-21.  This position, however, ignores New York's well-established rules of contract interpretation.

Under New York law, (1) a contract must be read as a whole to ensure undue emphasis is not placed upon particular words or phrases; (2) a court should construe a contract so as to give full meaning and effect to its material provisions; (3) a reading of the contract should not render any portion meaningless and (4) the contract should be read as a whole, with every part interpreted with reference to the whole.  *Molina v. Harvard Maint.*, 2021 U.S. Dist. LEXIS 220362, *6 (S.D.N.Y. Nov. 11, 2021) (internal citations omitted).  Applying those principles to the Arbitration Agreement leads to the conclusion that Plaintiffs, who are the appointed legal representatives of Ms. Surman's estate and are seeking to pursue discrimination and accommodation claims relating to Ms. Surman's employment, must be compelled to arbitrate said claims.  *See* Motion, p. 20-22;

ECF No. 19-3, p. 6-7 ("The parties agree to submit to mandatory binding arbitration any and all claims arising out of or related to my employment with the Company and the termination thereof…").

The fact that Paragraph 24 states that Ms. Surman could not assign her rights by operation of law except with the prior written consent of MongoDB does not change the outcome.  Plaintiffs ignore that Ms. Surman did not assign her rights to Counts 1-6.  Instead, Mr. Surman and Ms. Connolly, by virtue of their being administrators of Ms. Surman's estate (ECF No. 1, ¶16), were given authority under the New York Estates, Powers and Trust Law, §§11-3.1 and 3.2, to maintain Counts 1-6 as if they were brought by Ms. Surman.  Adopting Plaintiffs' position would eliminate Paragraph 24 in its entirety – a position that is inconsistent with the law noted above.

For these reasons, there is no ambiguity in the Arbitration Agreement, and the Court should enforce the same by compelling Counts 1-6 to arbitration.

### 2.      Plaintiffs' Unconscionability Arguments Are Meritless

Plaintiffs' final effort to avoid their obligations under the Arbitration Agreement is to allege procedural and substantive unconscionability based on unfounded and unsupported assertions.  In New York, to be unconscionable, a contract must be "so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforceable according to its literal terms." *Molina v. Kaleo, Inc.*, 363 F. Supp. 3d 344, 349 (S.D.N.Y. 2019) (quotation omitted).  "Generally, there must be a showing that such a contract is both procedurally and substantially unconscionable [when made]." *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 121 (2d Cir. 2010).  Here, Plaintiffs have no basis to assert either procedural or substantive unconscionability.

#### a.      Plaintiffs' Procedural Unconscionability Arguments Are Meritless

From the procedural standpoint, Plaintiffs focus on the purported disparity in bargaining

power, the "take-it-or-leave-it" nature of the agreement, the inability to opt-out, and the lack of provision advising that employees can consult with an attorney and/or take time to review the agreement. Opp., p. 21-23. None of these points have merit.

First, it is well established that generalized employer-employee "inequality" in bargaining power is insufficient by itself to find unconscionability. *See Lawrence v. N.Y.C. Med. Practice*, 2023 U.S. Dist. LEXIS 126558, at *34-35 (S.D.N.Y. July 21, 2023). Absent any specific facts tying the relative power in the employer-employee relationship to the signing of the agreement, the Arbitration Agreement is not procedurally unconscionable. *See Chen-Oster v. Goldman-Sachs & Co.*, 449 F. Supp. 3d, 216, 265-66 (S.D.N.Y. 2020) (collecting cases); *see also Desiderio v. National Ass'n of Securities Dealers,* 191 F.3d 198 (2d Cir. 1998).

Second, even if the Arbitration Agreement was presented as a take-it-or-leave-it agreement (which has not been alleged nor established), there are no facts demonstrating that Ms. Surman was not without discretion over whether to accept the terms, and the law is clear that an agreement being take-it-or-leave-it "is not sufficient under New York law to render the provision procedurally unconscionable." *Nayal v. HIP Network Servs. IPA, Inc.*, 620 F. Supp. 2d 566, 571 (S.D.N.Y. 2009); *see also, Costello v. Paramount Glob., Inc.*, 2024 U.S. Dist. LEXIS 17502, at *8 (S.D.N.Y. Feb. 1, 2024); *Gilbert v. Indeed, Inc.*, 513 F. Supp. 3d 374, 409 (S.D.N.Y. 2024); *Ragone*, 595 F.3d at 121 (the FAA does not preclude contracts which make employment conditioned on an employee's acceptance of mandatory arbitration). The mere fact that an agreement to arbitrate was a condition of employment is insufficient to invalidate an arbitration agreement. *See Victorio v. Sammy's Fishbox Realty Co., LLC*, 2015 U.S. Dist. LEXIS 61421, at *33 (S.D.N.Y. May 6, 2015) (citing cases). Moreover, the absence of language directing Ms. Surman to consult with an attorney or take time to review the Arbitration Agreement does not mean she was precluded from asking

9

questions, taking it home, or engaging an attorney.  Plaintiffs offer nothing to suggest that Ms. Surman was deprived of meaningful choice in the decision to sign the Arbitration Agreement.

In sum, Plaintiffs do not identify any coercion or deception used by MongoDB in connection with the Arbitration Agreement, they ignore case law holding that arbitration agreements like this one are regularly enforced, and their procedural unconscionability arguments are meritless.

**b.      Plaintiff's Substantive Unconscionability Argument is Equally Meritless**

Plaintiffs next argue that because some terms contained in the Arbitration Agreement, including those relating to MongoDB protecting its trade secrets, favor MongoDB, this makes the entire agreement unfair.  Opp., p. 23-24.  This is nonsensical and defies legal precedent.  An arbitration agreement is not unconscionable because it carves out rights for an employer.  *Molina v. Kaleo, Inc.*, 363 F. Supp. 3d 344, 349-52 (S.D.N.Y. 2019) (carve out for defendant to pursue injunctive relief not unconscionable); *Plazza v. Airbnb, Inc.*, 289 F. Supp. 3d 537, 559 (S.D.N.Y. 2018).  Additionally, here, both parties are required to arbitrate claims, including claims relating to the improper use of confidential or trade secret information.  ECF No. 19-3, p. 6.  Both parties are also allowed to seek injunctive relief relating to claims arising from the improper use of said information.  *Id*.  In addition, Paragraph 17 states that Ms. Surman (and now her estate) has the right to file administrative claims before a governmental agency.  *Id*.  The plain language of the Arbitration Agreement disproves any assertion that it is one-sided.

For the reasons set forth above and in the Motion, the Court should compel Counts 1-6 to arbitration.  The limited discovery proposed by Plaintiffs would be a waste of time and resources. The key source of discovery would be from Ms. Surman, as only she could testify as to her intentions when signing the Arbitration Agreement, which is an impossibility.  Nor would such

10

inquiry be appropriate as Plaintiffs have not offered any evidence showing that Ms. Surman did not intend to be bound by the Arbitration Agreement.

## CONCLUSION

Based on the foregoing and the reasons stated in the Motion, the Court should dismiss Counts 7-9, compel Counts 1-6 to arbitration, and order such other and further relief as the Court deems just and proper.

Dated:  April 1, 2026
New York, New York                                    **LITTLER MENDELSON, P.C.**

By: */s/ Rebecca Goldstein*
Rebecca Goldstein
Matthew D. Holmes
900 Third Avenue
New York, New York 10022.3298
Telephone: 212.583.9600
Facsimile: 212.832.2719
RGoldstein@littler.com
MDHolmes@littler.com

*Attorneys for Defendant*
*MongoDB, Inc.*

11

## CERTIFICATION OF COUNSEL PURSUANT TO LOCAL RULE 7.1(C)

I, Rebecca Goldstein, hereby certify in accordance with Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rules") the foregoing reply memorandum of law contains 3,499 words (exclusive of the caption, table of contents, table of authorities, and signature block), and complies with the applicable word count limit set forth at Local Rule 7.1(c).

In accordance with Local Rule 7.1(c), I have relied upon the word processing system's word count function in preparing this certification.

/s/ *Rebecca Goldstein*
Rebecca Goldstein

12