UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANNA SURMAN, by and through the Administrators of her Estate, GREGORY SURMAN and KAREN CONNOLLY; and KAREN CONNOLLY, in her individual capacity,

Plaintiffs,

-against-

MONGODB, INC.,

Defendant.

Case No. 1:26-cv-00166 (JLR)

**OPINION AND ORDER**

JENNIFER L. ROCHON, United States District Judge:

On September 13, 2024, recently fired from her job at Defendant MongoDB ("MongoDB"), Annie Surman drafted a suicide note, ingested a course of lethal drugs, and died. Her parents, Gregory Surman and Karen Connolly, are now the administrators of her estate; in that capacity, they (the "Estate") filed this action, asserting employment-discrimination and tort claims against MongoDB. Karen Connolly ("Ms. Connolly" and, together with the Estate, "Plaintiffs") also brings a tort claim against MongoDB in her individual capacity. Currently before the Court is MongoDB's motion to compel arbitration of some of these claims and dismiss the others. For the following reasons, that motion is GRANTED in part and DENIED in part.

## BACKGROUND

### I. Relevant Facts[1]

Annie Surman graduated from Columbia University in 2018. Dkt. 1-1 (the "Complaint," or "Compl.") ¶ 20. While studying at Columbia, Annie spent three summers working at NASA's Jet Propulsion Lab and lent project management support to "the recently launched SPHEREx mission." *Id.* ¶ 19. Following graduation, she continued to work in project management for several years, and, in July 2021, MongoDB hired her as a Technical Program Manager. *Id.* ¶¶ 3, 20.

According to Plaintiffs, the job at MongoDB was extremely stressful. In April 2024, Annie went on disability leave to address the "mental health struggles, including anxiety and depression," that this "extreme work stress" had brought on. *Id.* ¶ 22. Even while she was away from work, however, Annie could not leave bed for days at a time, often could not "complete daily functions like . . . brushing her teeth or attending social gatherings," and routinely felt a "desire to die." *Id.* ¶¶ 23-24. Because of these ongoing "debilitating mental health struggles," Annie advised MongoDB in "numerous exchanges" that she needed to extend her leave. *Id.* ¶ 26.

In May 2024, Annie requested an extension of her leave to "at least" July 8, 2024; then, on June 20, 2024, she advised that the leave would need to continue beyond July 8; and finally, in July 2024, she informed MongoDB that her provider had recommended that she stay on leave until September 2024. *Id.* ¶¶ 27-29. These extension requests were well received. Christian Leocata, MongoDB's Leave Coordinator, offered to help Annie switch from short- to long-term

[1] The Court draws these facts from the Complaint and accepts them as true for purposes of this motion. *See Milan v. Wertheimer*, 808 F.3d 961, 963 (2d Cir. 2015). Because Plaintiffs refer to the decedent as "Annie," rather than "Ms. Surman," the Court will do the same.

disability, wished her well in recovery, and advised her to modify her out-of-office message so that it omitted any return-to-work date. *Id.* ¶¶ 27-30. Based on these interactions with Leocata, Annie believed that MongoDB had approved her most recent request to stay on leave through the end of September 2024. *Id.* ¶ 31. Accordingly, Annie "decided to begin ketamine treatment" for her depression, which would begin with four infusions between August 6 and 14, 2024. *Id.* ¶¶ 33, 35.

Nevertheless, on July 29, 2024, a doctor working with MongoDB's long-term disability provider informed Annie's mental health provider, by letter, that he had determined Annie could return to work. *Id.* ¶¶ 28, 38. The letter sought a response in ten days, but Annie's provider requested additional time. *Id.* ¶ 39. Meanwhile, on July 31, 2024, MongoDB's Employee Experience Senior Manager Meghan Wall sent Annie an email advising her that she must return to work by August 8, 2024, or be fired. *Id.* ¶ 40. The same day, and without providing any notice to Annie, MongoDB canceled her health benefits. *Id.* ¶ 44.

On August 6, 2024, two days before the return-to-work date MongoDB had imposed, Annie emailed MongoDB to request a "delay of her termination and extension of her accommodation of unpaid leave" so that she could receive her scheduled ketamine treatment and attend an appointment with her providers in mid-August. *Id.* ¶ 48. She ascribed the lateness of her reply to her "condition," which "ha[d] made it difficult for [her] to function lately." *Id.* ¶ 49. She also asked MongoDB to "engage in discussions with her about alternative reasonable accommodations" following her doctor's appointment in mid-August. *Id.* ¶ 51. The next morning, however, MongoDB responded to inform her that she would be fired if she did not return to work on August 8, and that "any discussion about reasonable accommodation would need to occur by" close of business. *Id.* ¶ 53. Also on August 7, 2024, Annie's mental health provider "sent documentation to MongoDB outlining the impossibility" of her returning to work

the next day; however, the Estate alleges "upon information and belief" that MongoDB "completely disregarded" that documentation. *Id.* ¶ 56.

On August 8, 2024, MongoDB fired Annie. *Id.* ¶ 60. The same day, Ms. Connolly called MongoDB and spoke with Wall, warning her that firing Annie "would have catastrophic consequences for Annie's well-being." *Id.* ¶ 60. In a follow-up email, Ms. Connolly warned further "that this is the direst of circumstances," and that there was only "a small window (hours) to avoid possible tragedy and for your company to avoid litigation." *Id.* ¶ 63. MongoDB did not change course. *Id.* ¶ 64. That evening, after "explicitly and repeatedly citing the shame she felt at being fired," Annie attempted suicide, but Ms. Connolly successfully intervened. *Id.* ¶¶ 66, 69. Ms. Connolly demanded that Annie seek inpatient mental health treatment, and Annie, though she acquiesced, nevertheless told Ms. Connolly that "she would carry out her plan to take her own life" as soon as that treatment had ended. *Id.* ¶ 71.

MongoDB's August 8, 2024 termination email stated that Annie's health benefits would continue through the end of the month, but, as previously noted, MongoDB had already canceled those benefits; Annie and Ms. Connolly therefore had to pay for COBRA coverage to afford Annie's inpatient treatment. *Id.* ¶¶ 74-76. During that treatment, "Annie identifie[d] 'signing up for COBRA' as a trigger for her suicidal ideation." *Id.* ¶ 77. On September 13, 2024, after her release from treatment, Annie attempted suicide again. *Id.* ¶ 80-81. She took "lethal drugs" that evening and, "as [they] took effect," "called 9-1-1 to report her own impending death." *Id.* ¶¶ 81-82. Paramedics responding to the scene "broke through the door of her apartment" and found Annie "still breathing," but she "went into cardiac arrest" on the way to the hospital. *Id.* ¶ 85. She was pronounced dead at 10:48 p.m. *Id.* ¶ 86.

On July 2, 2021, before Annie commenced her employment, she and MongoDB signed an Employee Invention Assignment, Confidentiality and Arbitration Agreement. *See* Dkt. 19-2

¶ 4; *see also* Dkt. 19-3 (the "Agreement"). The Agreement contains an arbitration clause, which provides that "[t]he parties agree to submit to mandatory binding arbitration any and all claims arising out of or related to [Annie's] employment with [MongoDB] and the termination thereof, including, but not limited to, . . . wrongful termination, torts, . . . and/or discrimination based upon any federal, state or local ordinance, statute, regulation or constitutional provision." Agreement ¶ 17 (the "Arbitration Clause"). The Agreement further provides that, "[e]xcept as otherwise provided in this Agreement, this Agreement, and the rights and obligations of the parties hereunder, will bind and benefit the parties and their respective successors, assigns, heirs, executors, administrators, and legal representatives. . . . [Annie] understand[s] that [she] will not be entitled to assign or delegate this Agreement or any of [her] rights or obligations hereunder, whether voluntarily or by operation of law, except with the prior written consent of [MongoDB]." *Id.* ¶ 24 (the "Assignment Clause"). Finally, the Agreement provides that it will be governed by "the laws of the state in which [Annie's] initial employment is based," *id.* ¶ 20, which was New York, *see* Compl. ¶ 17.[2]

## II. Procedural History

Plaintiffs filed this action in New York Supreme Court, New York County, on December 18, 2025. *See* Compl. The Estate asserted eight claims against MongoDB: failure to accommodate and wrongful termination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112 (Counts I and IV); failure to accommodate, disability discrimination, and

[2] The Complaint does not explicitly allege the geographical location of Annie's workplace, but it alleges that MongoDB is based in New York. Compl. ¶ 17. In their briefs, the parties both exclusively cite New York law in their arguments concerning the Agreement. The Court therefore presumes that New York law applies to the Agreement because Annie's employment with MongoDB was based there. *See Arch Ins. Co. v. Precision Stone, Inc.*, 584 F.3d 33, 39, (2d Cir. 2009) (holding that where "[t]he parties' briefs assume that New York substantive law governs the issues," "such implied consent is . . . sufficient to establish the applicable choice of law" (quoting *Golden Pac. Bancorp v. FDIC*, 273 F.3d 509, 514 n.4 (2d Cir. 2001)).

wrongful termination under the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 296, and New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107(15) (Counts II-III & V-VI); wrongful death under New York Estates, Powers and Trusts Law ("EPT") § 5-4.1 (Count VII); and conscious pain and suffering under EPT § 11-3.2(b) (Count VIII). Ms. Connolly, in her individual capacity, asserted a single claim against MongoDB for negligent infliction of emotional distress (Count IX).

On January 8, 2026, MongoDB removed the action to this Court, *see* Dkt. 1, and on February 16, 2026, moved to dismiss Counts VII-IX of the Complaint and to compel arbitration of Counts I-VI, *see* Dkt. 19; Dkt. 19-1 ("Br."); Dkt. 19-2; Agreement. Plaintiffs filed an opposition brief on March 18, 2026. *See* Dkt. 20 ("Opp"). MongoDB filed a reply on April 1, 2026. *See* Dkt. 21 ("Reply"). The motion is fully briefed.

**LEGAL STANDARD**

When both a motion to dismiss and a motion to compel arbitration are before the Court, the Court "should generally rule on [the] motion to compel arbitration before proceeding to [the] merits-based motion to dismiss." *Harris v. TD Ameritrade Inc.*, 338 F. Supp. 3d 170, 181 (S.D.N.Y. 2018), *aff'd*, 837 F. App'x 841 (2d Cir. 2021) (summary order); *accord Patel v. Fan Duel, Inc.*, No. 24-cv-07402 (VSB), 2026 WL 1256838, at *5 (S.D.N.Y. May 7, 2026); *see also Rosehoff Ltd. v. Cataclean Ams. LLC*, No. 12-cv-01143, 2013 WL 2389725, at *10 (W.D.N.Y. May 30, 2013) (explaining that reaching the merits would be "unnecessary and contrary to judicial economy" if case must be stayed or dismissed in favor of arbitration). Therefore, the Court will first address MongoDB's motion to compel arbitration of Counts I-VI.

When considering a motion to compel arbitration under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, courts "ordinarily answer four questions . . .: (1) whether the parties agreed to arbitrate; (2) the 'scope' of the arbitration agreement; (3) whether the plaintiff's

federal statutory claims are 'nonarbitrable'; and (4) if some, but not all of the claims in the case are arbitrable, whether to stay the balance of the proceedings pending arbitration." *Abdullayeva v. Attending Homecare Servs. LLC*, 928 F.3d 218, 221-22 (2d Cir. 2019) (quoting *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 169 (2d Cir. 2004)). In conducting this four-part inquiry, the Court "appl[ies] a 'standard similar to that applicable for a motion for summary judgment,' drawing all reasonable inferences in favor of the non-moving party." *Id.* at 221 (quoting *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016)). Thus, "the Court must grant a motion to compel arbitration if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law." *Ryan v. JPMorgan Chase & Co.*, 924 F. Supp. 2d 559, 561-62 (S.D.N.Y. 2013). If the facts in the record are undisputed and "require the matter of arbitrability to be decided against one side or the other as a matter of law," the Court "may rule on the basis of that legal issue and avoid the need for further court proceedings." *Zachman v. Hudson Valley Fed. Credit Union*, 49 F.4th 95, 101 (2d Cir. 2022) (quoting *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017)).

## DISCUSSION

For purposes of MongoDB's motion to compel arbitration, there are two pertinent provisions in the Agreement: the Arbitration Clause and the Assignment Clause. The Arbitration Clause states that "[t]he parties agree to submit to mandatory binding arbitration any and all claims arising out of or related to [Annie's] employment with [MongoDB] and the termination thereof, including, but not limited to, . . . wrongful termination, torts, . . . and/or discrimination based upon any federal, state or local ordinance, statute, regulation or constitutional provision." Agreement ¶ 17. The Assignment Clause states that "the rights and obligations of the parties hereunder[] will bind and benefit the parties and their respective successors, assigns, heirs,

executors, administrators, and legal representatives," "[e]xcept as otherwise provided in this Agreement." *Id.* ¶ 24.

In support of its motion, MongoDB argues that Annie entered into a valid arbitration agreement, that Counts I-VI (all brought by the Estate) fall within the scope of that agreement, and that these federal, state, and city statutory causes of action are arbitrable. Br. at 13-16. The Estate contends that the Assignment Clause is ambiguous and does not clearly apply the Arbitration Clause to the Estate, and that the Arbitration Clause is unconscionable. Opp. at 14-18. Because both arguments address whether the arbitration agreement here is "inapplicable or invalid," *Zachman*, 49 F.4th at 102 (quoting *Harrington v. Atl. Sounding Co.*, 602 F.3d 113, 124 (2d Cir. 2010)), the Court evaluates them as part of the threshold question of whether the parties agreed to arbitrate, *see id.* at 101 ("Only if the court concludes an agreement to arbitrate exists does it determine [the next three questions of scope, arbitrability, and propriety of a stay].").

## I. Whether the Parties Agreed to Arbitrate

In determining whether parties have agreed to arbitrate, courts "look to 'state contract law principles,'" which, in New York, provide that "[t]he terms of an agreement provide the best evidence of what the parties intend, and 'a written agreement that is complete, clear, and unambiguous on its face must be enforced according to the plain meaning of its terms.'" *Abdullayeva*, 928 F.3d at 222 (alteration adopted) (first quoting *Nicosia*, 834 F.3d at 229; and then quoting *Greenfield v. Philles Recs., Inc.*, 780 N.E.2d 166, 170 (N.Y. 2002)). On this question, it is the moving party's burden to show "only that an agreement to arbitrate existed"; once that burden is met, the burden "shifts to the party seeking to avoid arbitration to 'show the agreement to be inapplicable or invalid.'" *Zachman*, 49 F.4th at 102 (alteration adopted) (quoting *Harrington*, 602 F.3d at 124).

MongoDB has carried its initial burden by pointing to the Agreement and the Arbitration Clause it contains, *see* Br. at 13, the existence of which the Estate does not contest. Accordingly, the burden shifts to the Estate to show that the Arbitration Clause is inapplicable or invalid. The Estate fails to carry that burden.

**A. The Assignment Clause Unambiguously Applies to the Arbitration Clause**

The Estate first argues that the Assignment Clause is ambiguous and does not clearly modify the Arbitration Clause, and that such ambiguity must be construed against MongoDB as the drafter of the Agreement. Opp. at 14-15. As a result, the Estate concludes, the Arbitration Clause "does not clearly bind Annie's heirs or successors." *Id.* at 15. The Court disagrees.

The Assignment Clause plainly states that "the rights and obligations of the parties hereunder[] will bind and benefit the parties and their respective successors, assigns, heirs, executors, administrators, and legal representatives" "[e]xcept as otherwise provided in this Agreement." Agreement ¶ 24. By these plain terms, then, the entire Agreement binds the Estate, unless any Agreement provision explicitly states otherwise. The Estate does not point to any explicit statement carving the Arbitration Clause out from the rest of the Agreement for this purpose, nor can it: There is no such statement. Lacking any express carveout language, the Estate conclusorily states that the Arbitration Clause is "clearly intended to apply only to Annie." Opp. at 15. That assertion is not enough. *See In re September 11 Litig.*, 906 F. Supp. 2d 295, 302-03 (S.D.N.Y. 2012) ("Mere assertion by one that contract language means something to him, where it is otherwise clear, unequivocal and understandable when read in connection with the whole contract, is not in and of itself enough to raise a triable issue of fact." (alteration adopted) (quoting *Goldman v. Metro. Life Ins. Co.*, 841 N.E.2d 742, 746 (N.Y. 2005)), *aff'd sub nom. World Trade Ctr. Props. LLC v. QBE Int'l Ins. Ltd.*, 627 F. App'x 10 (2d Cir. 2015) (summary order).

The Estate further suggests that the Arbitration Clause is "limited just to Annie and MongoDB" because it refers only to "the parties." Opp. at 14-15. But the Arbitration Clause need not expressly refer to Annie's heirs or otherwise incorporate the Assignment Clause, because the Assignment Clause, by its own clear terms, applies to the entire Agreement. Indeed, courts have found similarly worded clauses sufficient to require arbitration. *See, e.g.*, *Productos Mercantiles E Industriales, S.A. v. Faberge USA, Inc.*, No. 92-cv-07916 (SWK), 1993 WL 362391, at *8 (S.D.N.Y. Sept. 14, 1993) (holding that parties' agreement providing that "[e]xcept as expressly provided herein, this agreement [including the arbitration provision] shall be binding upon and inure to the benefit of the parties hereto, *their successors and assigns*" made defendant's corporate acquirer "liable as a successor-in-interest" (second alteration in original)); *Burch v. 1412 Lansdowne Operating, LLC*, No. 18-cv-03000 (RPK) (ST), 2021 WL 4443768, at *5 (E.D.N.Y. Sept. 29, 2021) (finding claim against nursing home subject to arbitration clause even if plaintiff "entered the [a]greement with a prior owner of the facility," because "[t]he [a]greement expressly provides that it 'shall be binding and inure to the benefit of each of the undersigned parties and their respective heirs, personal representatives, successors and assigns'").

Finally, the Estate inexplicably points to the Assignment Clause's provision that "Annie could not 'assign or delegate any of her rights or obligations hereunder, whether voluntarily or by operation of law, except with the prior written consent of the Company.'" Opp. at 15 (quoting Agreement ¶ 24) (citation modified). To the extent the Estate means to suggest that Annie cannot assign her rights under the Agreement to the Estate without MongoDB's prior consent, and that therefore the Estate is not bound by the Arbitration Clause, the Court finds the suggestion unpersuasive. There has been no assignment here. The Assignment Clause, by its plain language, means that the Estate is bound automatically, without any need for transfer or

assignment. *See* Agreement ¶ 24 (providing that the Agreement "will bind and benefit the parties and their respective . . . heirs, executors, [and] administrators," and that Annie "will not be entitled to assign or delegate this Agreement"). Thus, the anti-assignment portion of the Assignment Clause is irrelevant for purposes of this motion. *Cf. Adstra, LLC v. Kinesso, LLC*, No. 24-cv-02639 (LJL), 2025 WL 552050, at *13-16 (S.D.N.Y. Feb. 19, 2025) (holding that, where contract permitted assignment to affiliates or successors but simultaneously prohibited "any assignment" without prior consent, "[t]he consent that is necessary for assignment to a successor or affiliate is that provided in the [contract] itself . . ., [and] no further consent is required," and that the anti-assignment provision applied only "to any assignment to which [plaintiff] has *not* already given consent" (emphasis added)), *appeal filed*, No. 25-512 (2d Cir. Mar. 5, 2025).

For all these reasons, the Court finds that there is no ambiguity in the Assignment Clause. It plainly applies to the Arbitration Clause, which, as a result of that applicability, binds the Estate.

**B. The Arbitration Clause is Not Unconscionable**

The Court turns next to the Estate's contention that the Arbitration Clause is unconscionable. *See* Opp. at 15-18. The Court disagrees with this argument as well.

Generally speaking, an arbitration clause may be set aside "upon such grounds as exist at law or in equity for the revocation of any contract," 9 U.S.C. § 2, and those grounds include unconscionability, *see Chen-Oster v. Goldman, Sachs & Co.*, 449 F. Supp. 3d 216, 246-47 (S.D.N.Y. 2020), *aff'd*, 2021 WL 4199912 (S.D.N.Y. Sept. 15, 2021). However, "a provision will be deemed unenforceable on unconscionability grounds only where it is 'both procedurally and substantively unconscionable when made.'" *NML Cap. v. Republic of Argentina*, 621 F.3d 230, 237 (2d Cir. 2010) (quoting *Gillman v. Chase Manhattan Bank, N.A.*, 534 N.E.2d 824, 828

(N.Y. 1988)), *certifying question to* 936 N.E.2d 455 (N.Y. 2010), and *certified question answered*, 952 N.E.2d 482 (N.Y. 2011). Procedural unconscionability "concerns the contract formation process and the alleged lack of meaningful choice" for one of the parties. *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 121-22 (2d Cir. 2010) (quoting *Nayal v. HIP Network Servs., IPA, Inc.*, 620 F. Supp. 2d 566, 571 (S.D.N.Y. 2009)); *accord Serifos Mar. Corp. v. Glencore Singapore Pte Ltd.*, No. 22-cv-08012 (LGS), 2023 WL 6317996, at *3 (S.D.N.Y. Sept. 28, 2023). Substantive unconscionability "looks to the content of the contract, per se," *Tsurenko v. WTA Tour, Inc.*, No. 24-cv-08518 (NRB), 2026 WL 820629, at *6 (S.D.N.Y. Mar. 25, 2026) (quoting *Zam & Zam Super Mkt., LLC v. Ignite Payments, LLC*, 736 F. App'x 274, 278 (2d Cir. 2018) (summary order)), to determine whether its terms are "unreasonably favorable" to one party, *Desiderio v. Nat'l Assoc. of Sec. Dealers, Inc.*, 19 F.3d 198, 207 (2d Cir. 1999); *accord Ragone*, 595 F.3d at 121-22.

The Estate argues that the Arbitration Clause is procedurally unconscionable because (1) the Agreement was "take-it-or-leave-it" and did not permit Annie to opt out of arbitration, (2) there was "considerable disparity in bargaining power between Annie . . . and MongoDB" when Annie signed the Agreement, and (3) the Agreement did not advise Annie that she could consult an attorney or "take time to review" the Agreement before signing it. Opp. at 16. The Estate further argues that the Agreement is substantively unconscionable because it carves out more rights for MongoDB than for Annie. *Id.* at 17-18. The Court is not persuaded by these arguments.

First, the Second Circuit has held that "it is plain" that the take-it-or-leave-it nature of an agreement "is not sufficient under New York law to render [that agreement's] arbitration provision procedurally unconscionable." *Ragone*, 595 F.3d at 122 (alteration adopted) (quoting *Nayal*, 620 F. Supp. 2d at 571); *see also Catz v. Precision Glob. Consulting*, No. 19-cv-07499

(ER), 2021 WL 1600097, at *6 (S.D.N.Y. 2021) (explaining that "it is not procedurally unconscionable for an employer to offer contract terms, like an arbitration provision, on a 'take it or leave it' basis," and holding that employee's contract and arbitration clause were not procedurally unconscionable where employer offered that contract to her "before she relocated [for the position] and before she began working"); *Keller v. About, Inc.*, No. 21-cv-00228 (JMF), 2021 WL 1783522, at *2 (S.D.N.Y. May 5, 2021) ("[N]either the FAA nor New York law precludes the enforcement of employment contracts 'which make employment conditional upon an employee's acceptance of mandatory arbitration.'" (quoting *Am. Fam. Life Assurance Co. v. Baker*, 778 F. App'x 24, 27 (2d Cir. 2019) (summary order))). And while the Estate contends that the lack of opt-out provision "is additional evidence of unconscionability," it provides no authority supporting that proposition. Opp. at 17. The Estate cites only *Faith v. Khosrowshahi*, No. 21-cv-06913 (JMA) (JMW), 2023 WL 5278126 (E.D.N.Y. Aug. 16, 2023), where the court noted that the *presence* of an opt-out clause "is often a dispositive factor in rejecting procedural unconscionability challenges," *id.* at *8, not that the *absence* of such a clause clinches (or even supports) such a challenge. The Court's own research did not yield cases in support of the latter theory. *See, e.g.*, *Stoll v. JPMorgan Chase Bank, N.A.*, No. 23-cv-04149 (CBA) (MMH), 2024 WL 4469174, at *6 n.7 (E.D.N.Y. July 16, 2024) ("[A]rbitration provisions do not need to contain an opt-out provision to be valid."); *Silva v. Schmidt Baking Distrib. LLC*, 732 F. Supp. 3d 194, 213 (D. Conn. 2024) ("While courts have found that an arbitration agreement with a clearly-stated opportunity to opt-out without retaliation is not procedurally unconscionable, [p]laintiffs cite no cases suggesting that the converse is true." (citation modified)), *vacated on other grounds*, 162 F.4th 354 (2d Cir. 2025).

Second, "[m]ere inequality in bargaining power between employers and employees is not alone sufficient to hold arbitration agreements unenforceable." *Gold v. Deutsche*

*Aktiengesellschaft*, 365 F.3d 144, 150 (2d Cir. 2004) (quoting *Desiderio*, 191 F.3d at 207). Rather, there must be some form of "high pressure and coercive tactics" accompanying that disparity, *De Jesus v. Gregorys Coffee Mgmt., LLC*, No. 20-cv-06305 (MKB), 2021 WL 5591026, at *6 (E.D.N.Y. Nov. 29, 2021), such as "pressuring the prospective employee to sign the agreement without reading it, refusing to let her review the agreement with an attorney, or deceiving her as to its content," *Cunningham v. CVS Health Corp.*, No. 23-cv-01328 (NSR), 2024 WL 2867303, at *9 (S.D.N.Y. June 4, 2024) (quoting *Clinton v. Oppenheimer & Co.*, 824 F. Supp. 2d 476, 483 (S.D.N.Y. 2011)). The Estate does not argue (or allege in the Complaint) that MongoDB used any of those tactics here, or that the disparity between Annie and MongoDB was greater than that which typically exists between employee and employer; accordingly, its procedural unconscionability argument based on unequal bargaining power lacks merit. *See Barrios-Contreras v. Big Fish Ent. LLC*, No. 23-cv-05821 (JGLC) (JLC), 2024 WL 3435854, at *5 (S.D.N.Y. July 17, 2024) (rejecting procedural unconscionability argument where plaintiff "d[id] not provide any evidence of duress or inappropriate pressure on the part of [employer] in negotiating the [a]greement"), *report and recommendation adopted*, 2024 WL 3834829 (S.D.N.Y. Aug. 15, 2024); *Reeves v. Safeguard Props. Mgmt., LLC*, No. 19-cv-10210 (VSB), 2021 WL 2403538, at *1, *5 (S.D.N.Y. June 10, 2021) ("Without more, Plaintiff['s] claim that [one party to the agreement] had less clout than [defendant] as a smaller contractor is insufficient to prove that the arbitration agreement was procedurally unconscionable.").

Third, while the Estate contends that the Agreement "lack[s] . . . any provision advising" Annie that she could "consult with an attorney and/or take time to review the specific provisions of the agreement," Opp. at 16, the Estate cites no authority holding that this provision is required in an employment contract. To the contrary, the obligation to read an employment contract rests with the prospective employee, even one with less education and experience than Annie had.

*Compare* Compl. ¶¶ 18-20 (alleging that Annie graduated from Columbia University, where she had been awarded "a prestigious" fellowship reserved for "the university's most promising science students" and had spent summers working "in planetary science and astrophysics at NASA's Jet Propulsion Lab," and thereafter "gained project management experience at multiple companies before being hired by MongoDB"), *with Ragone*, 595 F.3d at 122 (explaining that plaintiff's "legal obligation to read a document carefully before signing it" applied to her arbitration agreement even though she "d[id] not have a college degree [or] experience or background in business or human resources" (quoting *Gold*, 365 F.3d at 150)); *see also Cunningham*, 2024 WL 2867303, at *9 (rejecting arguments that "there was no discussion or opportunity to discuss the [p]olicy" and "no opportunity to take notes" before signing, and that plaintiffs "were 'not advised' to consult an attorney," because they were "conclusory statements . . . insufficient to establish procedural unconscionability" where plaintiffs did not allege they were *prohibited* from taking notes or meeting with counsel). As discussed above, while procedural unconscionability may arise from an employer *refusing* to allow the prospective employee time to review the contract with counsel, or pressuring her not to read it before signing it, *see Cunningham*, 2024 WL 2867303, at *9, that is not what the Estate alleges occurred here.

Moreover, the Agreement contains an "Acknowledgment" provision stating, "I certify and acknowledge that I have carefully read all of the provisions of this Agreement and that I understand and will fully and faithfully comply with this Agreement." Agreement ¶ 26. That provision appears four lines above Annie's signature. *See id.* at 6. Courts typically find similar certifications and acknowledgments significant in determining whether parties have agreed to arbitrate, even where (unlike here) the acknowledgment and arbitration clause are located in separate documents. *See, e.g.*, *Ahmed v. Domino's Pizza LLC*, No. 21-cv-03113 (CS), 2022 WL 2666005, at *5 (S.D.N.Y. July 11, 2022) ("Courts have routinely upheld arbitration agreements

contained in employee handbooks where the employee has signed an acknowledgment form." (quoting *Gil v. Bensusan*, No. 18-cv-10657 (VEC), 2019 WL 12334706, at *3 (S.D.N.Y. Oct. 30, 2019))); *Hegazy v. Halal Guys, Inc.*, No. 22-cv-01880 (JHR) (KHP), 2023 WL 8924092, at *4 (S.D.N.Y. Dec. 27, 2023) (finding that employer "ha[d] made a prima facie showing" of agreement to arbitrate where "[t]here is no dispute that [plaintiffs] were presented with and signed an [e]mployee [h]andbook that contained within it a written [a]rbitration [a]greement" and signed separate forms acknowledging their responsibility to abide by its terms), *modified on other grounds*, 2025 WL 1001184 (S.D.N.Y. Apr. 1, 2025); *Rosati v. E.M. Wings, LLC*, No. 09-cv-04680 (DRH) (ARL), 2011 WL 13305366, at *3 (E.D.N.Y. Apr. 12, 2011) ("An employee's signature acknowledging receipt of an employee handbook that contains an arbitration provision evinces the employee's 'intention to be bound' by that provision." (quoting *Brown v. St. Paul Travelers Cos.*, 559 F. Supp. 2d 288, 291 (W.D.N.Y. 2008), *aff'd*, 331 F. App'x 68 (2d Cir. 2009))).

Therefore, the Court finds that the Arbitration Clause is not procedurally unconscionable. For that reason alone, it is enforceable. *See Ragone*, 595 F.3d at 121-22 (requiring both procedural and substantive unconscionability to set aside arbitration agreement); *Lawrence v. NYC Med. Prac., P.C.*, No. 18-cv-08649 (GHW), 2023 WL 4706126, at *11 (S.D.N.Y. July 21, 2023) ("Because the arbitration agreements were not procedurally unconscionable, they are enforceable.").

"While there are some 'exceptional cases where a provision of a contract is so outrageous as to warrant holding it unenforceable on the ground of substantive unconscionability alone,' this is not such a case," *NML Cap.*, 621 F.3d at 237 (alteration adopted) (citation omitted) (quoting *Gillman*, 534 N.E.2d at 829), because the Arbitration Clause is also not substantively unconscionable.

On that point, the Estate argues unpersuasively that the Arbitration Clause disproportionately favors MongoDB because it excludes from arbitration any claims seeking injunctive relief for the misuse of MongoDB's trade secret information. Opp. at 17. As one court in this District has explained, however, such an exclusion "is easily harmonized" with otherwise mandatory arbitration "in view of the fact that temporary restraining orders and preliminary injunctions may be, and frequently are, granted in aid of arbitration claims where necessary to avoid irreparable injury." *Banus v. Citigroup Glob. Mkts., Inc.*, No. 09-cv-07128 (LAK), 2010 WL 1643780, at *8 (S.D.N.Y. Apr. 23, 2010), *aff'd*, 422 F. App'x 53 (2d Cir. 2011) (summary order). Even aside from that logic, a provision "allowing [MongoDB] to seek injunctive relief" with respect to one type of claim "does not reflect a broader lack of mutuality in [the] Agreement." *Molina v. Kaleo, Inc.*, 363 F. Supp. 3d 344, 352 (S.D.N.Y. 2019). And indeed, the Arbitration Clause generally binds both Annie and MongoDB to arbitration. *See McDougall v. Samsung Elecs. Am., Inc.*, No. 23-cv-00168 (LGS), 2023 WL 6445838, at *6 (S.D.N.Y. Oct. 2, 2023) ("The [a]rbitration [a]greement is not substantively unconscionable because its terms are not 'grossly unreasonable' or 'outrageous,' as they bind both parties equally to arbitration.").[3]

---

[3] Moreover, the Agreement contemplates that MongoDB's employees may have certain proprietary information of their own that would be subject to the injunctive relief carveout. *See* Agreement ¶ 4 ("Attached hereto as <u>Exhibit A</u> is a list describing all existing Inventions, if any, that may relate to [MongoDB]'s business or actual or demonstrably anticipated research or development and **that were made by me or acquired by me** prior to the Effective Date . . . and which are not to be assigned to [MongoDB] ('Excluded Inventions')." (emphasis added)). To be sure, Annie did not list any Excluded Inventions on Exhibit A to her Agreement. *See id.*, Ex. A. Presumably, however, a MongoDB employee could seek injunctive relief against MongoDB for the latter's misuse of the employee's Excluded Inventions, just as MongoDB can seek similar relief against the employee. *See id.* ¶ 17 ("**[E]ach party** may, at its, his or her option, seek injunctive relief in court related to the improper use, disclosure or misappropriation of **a party's** private, proprietary, confidential or trade secret information." (emphasis added)). In short, it is not clear to the Court, as the Estate argues, that this carveout applies to and benefits MongoDB alone.

Regardless, even if this carveout did reflect broader unevenness in the Arbitration Clause, "mutuality of remedy is not required in arbitration contracts." *Castillo v. Plaza Motors of Brooklyn, Inc.*, No. 20-cv-04337 (NGG) (PK), 2021 WL 8820236, at *5 (E.D.N.Y. Sept. 14, 2021) (agreeing that arbitration agreement's "injunctive relief provision is one-sided," but holding nevertheless that it is "not unconscionable"); *see also Cunningham*, 2024 WL 2867303, at *10 ("Even when an agreement 'concededly favors' the party requesting arbitration, the arbitration agreement will be upheld if the advantage is not 'grossly unreasonable.'" (quoting *Clinton*, 824 F. Supp. 2d at 484)). Therefore, the Court finds that the Arbitration Clause is not substantively unconscionable. This is an additional, independent reason to find that it is enforceable. *Ragone*, 595 F.3d at 121-22 ("[T]here must be a showing that . . . a [purportedly unconscionable] contract is both procedurally and substantively unconscionable." (citation omitted)).

For all the foregoing reasons, then, the Court finds that the parties have agreed to arbitrate, in satisfaction of the first prong of the motion to compel arbitration standard.

**C. The Scope of the Agreement and the Arbitrability of the Claims**

The Court turns next to the scope of the agreement to arbitrate, and the arbitrability of the claims at issue. MongoDB argues that Counts I-VI are indisputably within the scope of the Arbitration Clause, and that these claims are all subject to arbitration. *See* Br. at 14-16. The Estate does not respond to these arguments, and the Court takes that silence as a concession. *See In re UBS AG Sec. Litig.*, No. 07-cv-11225 (RJS), 2012 WL 4471265, at *11 (S.D.N.Y. Sept. 28, 2012) (holding that plaintiff had "concede[d] [an issue] through silence" in opposition papers), *aff'd sub. nom. City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173 (2d Cir. 2014); *see also Nance v. N.Y. Pub. Int'l Rsch. Grp. Fund, Inc.*, No. 23-cv-03030 (MKV), 2025 WL 965883, at *7 (S.D.N.Y. Mar. 31, 2025) ("It is well-established that a 'plaintiff

effectively concedes a defendant's arguments by his failure to respond to them.'" (quoting *Felske v. Hirschmann*, No. 10-cv-08899 (RMB), 2012 WL 716632, at *3 (S.D.N.Y. Mar. 1, 2012))). In any event, however, the Court agrees with MongoDB.

As to the scope of the Arbitration Clause, the FAA "establishes 'a liberal federal policy favoring arbitration agreements.'" *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 505 (2018) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). "[B]y its terms, the FAA leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Daly v. Citigroup Inc.*, 939 F.3d 415, 421 (2d Cir. 2019) (alteration adopted) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)). Here, as noted, the Arbitration Clause applies to "any and all claims arising out of or related to [Annie's] employment with [MongoDB] and the termination thereof, including . . . wrongful termination . . . and/or discrimination based on federal, state or local ordinance, statute, regulation, or constitutional provision." Agreement ¶ 17. Counts I-VI are claims for wrongful termination and discrimination based on federal, state, and city statutes, namely the ADA, NYSHRL, and NYCHRL, *see* Compl. ¶¶ 100-60, and they are therefore within the scope of the Arbitration Clause. Moreover, all these claims are arbitrable. *See, e.g.*, *Lawrence v. Sol G. Atlas Realty Co.*, 841 F.3d 81, 83 (2d Cir. 2016) ("Claims under . . . the NYSHRL . . . may be made subject to arbitration."); *Marciano v. DCH Auto Grp.*, 14 F. Supp. 3d 322, 339 n.7 (S.D.N.Y. 2014) (explaining that ADA and NYSHRL claims are arbitrable); *Chen-Oster*, 449 F. Supp. 3d at 244 (explaining that NYCHRL claims are arbitrable). Accordingly, the second and third prongs of the motion to compel arbitration standard are met here.

## II. Whether This Case Should Be Stayed

Finally, having determined that arbitration of Counts I-VI shall be compelled, the Court considers whether the balance of the matter should be stayed pending arbitration. *Abdullayeva*, 928 F.3d at 222. MongoDB contends that this question is irrelevant here because, it argues, Plaintiffs' remaining non-arbitrable claims are subject to dismissal on the merits; MongoDB therefore asks the Court to dismiss the Complaint outright after compelling arbitration, rather than impose a stay. *See* Br. at 16. Plaintiffs ask the Court not to impose a stay, so that they may continue to litigate their non-arbitrable claims. *See* Opp. at 18-20; *see also* Br. at 5-9 (moving to dismiss those non-arbitrable claims). In other words, the parties' stances on the imposition of a stay are both rooted in their opposing assumptions that they will prevail on MongoDB's motion to dismiss. The Court does not reach that motion here, however. For the reasons that follow, the Court will decline to exercise supplemental jurisdiction over the non-arbitrable claims and will stay this matter pending arbitration of Counts I-VI.

### A. The Non-Arbitrable Claims

The Court first addresses the remaining non-arbitrable claims (Counts VII-IX), which, as noted, MongoDB has moved to dismiss. *See* Br. at 5-10; Reply at 2-6. All three are state-law claims, and therefore the Court has jurisdiction over them, if at all, through supplemental jurisdiction. *See* 28 U.S.C. § 1367(a) (granting district courts "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy"). But the exercise of supplemental jurisdiction is not mandatory in all instances. Rather, the Court may decline such exercise if, among other reasons, "the claim[s] substantially predominate[] over the claim or claims over which the district court has original jurisdiction." *Id.* § 1367(c)(2).

Predominance may exist "in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966). Regarding the scope of the issues, "[t]he 'substantially predominates' standard is met if the 'state claim constitutes the real body of [the] case, to which the federal claim is only an appendage' and 'litigation of all claims in the district court can accurately be described as allowing a federal tail to wag what is in substance a state dog.'" *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 613 F. Supp. 2d 437, 443 (S.D.N.Y. 2009) (quoting *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 309 (3d Cir. 2003)). The standard is also met "where the factual or legal analyses governing the federal and state claims are unrelated." *SST Glob. Tech., LLC v. Chapman*, 270 F. Supp. 2d 444, 457 (S.D.N.Y. 2003). More generally, where "judicial economy, convenience and fairness to litigants . . . are not present[,] a federal court should hesitate to exercise jurisdiction over state claims, . . . [and] [n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties." *Gibbs*, 383 U.S. at 726.

In this action, the Court has original jurisdiction over only two claims: Counts I and IV, which allege employment actions in violation of the ADA. *See* Compl. ¶¶ 100-11, 138-45. The Court is referring both claims to arbitration, and the arbitrator will resolve their merits. *See Vaden v. Discovery Bank*, 556 U.S. 49, 63 (2009) (noting that the "very purpose" of seeking to compel arbitration "is to have an arbitrator, rather than a court, resolve the merits"); *Diaz-Roa v. Hermes Law, P.C.*, 757 F. Supp. 3d 498, 537-38 (S.D.N.Y. 2024) ("[A] motion to compel arbitration is designed to test who — a judge and jury or an arbitrator — is to decide the case on the merits. It goes to adjudicative capacity."); *Nichols v. Washington Mut. Bank*, No. 07-cv-03216 (JG) (VVP), 2007 WL 4198252, at *10 (E.D.N.Y. Nov. 21, 2007) (explaining that, upon referring federal claim to arbitration, "[t]he only action" the court could take on the claim

thereafter "would be to hear a motion to confirm, vacate, modify or correct the arbitrator's award, which would only allow [the court] a minimal opportunity to revisit the matter"). Plaintiffs' remaining state-law claims, then, predominate inasmuch as they are the only claims left for the Court's consideration, and it is prudent to decline supplemental jurisdiction over those claims. Courts in this Circuit have taken similar approaches. For example, in *CollegeStreet Import & Export (Tinajin) Co. v. Loyalist, LLC*, 824 F. Supp. 3d 432 (S.D.N.Y. 2026), the court declined to exercise supplemental jurisdiction over one plaintiff's state-law claims, because it had already referred the other plaintiff's claims to arbitration, and thus the "state-law claims predominate[d] and judicial economy dictate[d] that those claims be heard in state court." *Id.* at 443; *see also id.* at 441-43. The court then remanded those claims. *Id.* at 447. Similarly, in *Republic of Kazakhstan v. Chapman*, 585 F. Supp. 3d 597 (S.D.N.Y. 2022), the court noted that it had discretion to exercise supplemental jurisdiction over one plaintiff's state-law claims because it had original jurisdiction over the other plaintiff's claims; however, the court referred the latter claims to arbitration, "le[aving] only the non-federal claims . . . to proceed." *Id.* at 606. Reasoning that those state-law claims "would predominate and judicial economy dictate[d]" their resolution in state court, the court remanded them. *Id.* Finally, in *Nichols*, the court sent the plaintiff's federal claim against one defendant to arbitration and, noting that this claim was "a mere 'appendage' to her [remaining] state law claims" against two other defendants, declined to exercise supplemental jurisdiction over the state-law claims. 2007 WL 4198252, at *10. The Court will proceed in a similar manner here. Without Plaintiffs' federal claims before this Court for adjudication on the merits, the remaining state-law claims predominate, and a state court is better positioned to address them.

Moreover, these remaining state-law claims involve factual and legal analyses inapplicable to the Estate's federal employment discrimination claims, including questions of

causation, duty, and Ms. Connolly's exposure to risk. *See* Comp. ¶¶ 165, 172 (alleging, in connection with wrongful death and conscious pain and suffering claims, that "Annie's death was caused by the wrongful acts of MongoDB"); Opp. at 5 (arguing, in connection with Ms. Connolly's negligent infliction of emotional distress claim, that MongoDB "owe[d] Ms. Connolly a duty of care by virtue of placing her in the 'zone of danger'"); Compl. ¶ 185 (alleging, in connection with same claim, that "[Ms.] Connolly faced significant risk of physical injury and exposure to lethal substances while intervening to prevent Annie from dying by suicide"). Thus, these claims "cover a broader set of issues" than the Estate's ADA claim "and require factual and legal analyses unrelated to that federal claim, which a state court is in a better position to conduct." *VW Credit Leasing LTD. v. Runway Towing Corp.*, 757 F. Supp. 3d 271, 294 (E.D.N.Y. 2024); *cf. SCX Holdings, LLC v. Gjoka*, No. 25-cv-00020 (JAV), 2025 WL 1736518, at *5 (S.D.N.Y. June 20, 2025) (exercising supplemental jurisdiction over state-law claims "substantially intertwined with" federal claims). This factual and legal distinction between the federal and state claims provides an independent basis for the Court's determination that the state-law claims predominate over the federal ADA claim.

Accordingly, the Court declines to exercise supplemental jurisdiction over Plaintiffs' non-arbitrable state-law claims.

### B. The Court Will Impose a Stay

In light of the foregoing analysis, all that remains to decide is whether to dismiss or stay Counts I-VI pending arbitration. The Supreme Court has held that "[w]hen a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding." *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024); *see also Katz v. Cellco P'ship*, 794 F.3d 341, 345 (2d Cir. 2015) (holding, prior to *Spizzirri*, that "a stay of proceedings [is] necessary after all claims have been referred to

arbitration and a stay requested"). Notably, however, neither party has requested a stay here. In a single sentence introducing its arbitration argument, MongoDB says that the Court "should dismiss or stay" the Counts I-VI pending arbitration, *see* Br. at 13, but in the argument itself MongoDB stresses that "[c]ourts in this Circuit consistently dismiss complaints that are subject to an arbitration agreement" and expressly asks this Court to do the same, *id.* at 16. For their part, Plaintiffs object to a stay of their non-arbitrable claims, *see* Opp. at 19 (noting that MongoDB "did not request a stay of Counts 7-9 in the event that Counts 1-6 are referred to arbitration" and arguing that "it would be appropriate" not to impose such a stay), but they take no position on a stay in the event those claims are dismissed (or in the event, as here, that the Court declines to exercise supplemental jurisdiction over them).

In the absence of any request for a stay by the parties, the compulsory rule may not apply. *See Boustead Sec., LLC v. Leaping Grp. Co.*, 656 F. Supp. 3d 447, 452 (S.D.N.Y. 2023) ("A court may dismiss a case in favor of arbitration, however, if no party has requested a stay."); *accord Hawkins v. Synchrony Bank*, No. 23-cv-06583 (EK) (VMS), 2025 WL 890476, at *3 (E.D.N.Y. Mar. 24, 2025); *see also State Farm Mut. Auto. Ins. Co. v. Emuna Inc.*, 823 F. Supp. 3d 242, 253 (E.D.N.Y. 2026) ("As neither party requested a stay, the court dismisses the action."); *but see Pepaj v. Innovative Facility Serv.*, No. 23-cv-07159 (JPC) (BCM), 2024 WL 5146112, at *7 n.11 (S.D.N.Y. Dec. 17, 2024) (questioning "whether the 'don't ask, don't stay' exception has survived *Spizzirri*").

Even so, the Court will stay this matter pending arbitration of Counts I-VI, because a stay aligns with the policy goals of the FAA, promotes efficiency, and fits within the general practice of courts in this Circuit. *See Bissonette v. LePage Bakeries Park St., LLC*, 49 F.4th 655, 665 (2d Cir. 2022) (Jacobs, J. concurring) ("The text [of FAA § 3] does not contemplate (let alone require) a separate application to stay proceedings in the district court[, and] [r]eading Section 3

to require a stay pending arbitration regardless of whether a stay has been requested is consistent with the FAA's pro-arbitration posture." (citation omitted)), *vacated on other grounds*, 601 U.S. 246 (2024); *Olive Branch Enters., Inc. v. Amazon.com Servs., Inc.*, No. 25-cv-00240 (VSB) (RFT), 2026 WL 453583, at *6 (S.D.N.Y. Feb. 18, 2026) ("Although [d]efendant asks that this case be dismissed and no party has requested a stay, the [c]ourt is not required to dismiss the action; the [c]ourt may instead stay the case pending a decision in the arbitration. Because there is a chance — albeit in my view a remote one — that the arbitrator could conclude that this dispute is not arbitrable, or in the event that judicial intervention is needed for some other reason, it is more efficient to stay rather than dismiss this case." (citations omitted)); *Hawkins*, 2025 WL 890746, at *4 (staying case pending arbitration, rather than dismissing, where all claims were subject to arbitration and no party requested stay, because, among other reasons, a stay permits parties to "proceed directly to arbitration of [p]laintiff's claims" as opposed to being subject to immediate appeal); *Martinez v. Collins Building Servs., Inc.*, No. 24-cv-06433 (KPF), 2025 WL 3136822, at *5 (S.D.N.Y. Nov. 7, 2025) ("In general, courts in this Circuit favor granting a stay, even when a party requests dismissal of the case.").

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's motion to compel arbitration of Counts I-VI of the Complaint and STAYS this matter pending arbitration of those claims. The Court declines to exercise supplemental jurisdiction over Counts VII-IX of the Complaint and, thus, REMANDS those claims to New York State Supreme Court, New York County. MongoDB's motion to dismiss Claims VII-IX is therefore DENIED as moot.

The Clerk of Court is respectfully directed to terminate the motion at Dkt. 19 and to stay this matter pending the resolution of the arbitration. The parties shall file a joint letter advising the Court of the status of their arbitration on **October 5, 2026**, and every ninety days thereafter.

Dated: July 9, 2026
New York, New York

SO ORDERED.

Jennifer Rochon
JENNIFER L. ROCHON
United States District Judge